STROOCK & STROOCK & LAVAN LLP
Harold A. Olsen (HO-2886)
180 Maiden Lane
New York, New York 10038-4982
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*Counsel to Sotheby's, Inc. and*
*Sotheby's Financial Services, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re:                                              :    Chapter 11
                                                    :
                                                    :
SALANDER-O'REILLY GALLERIES LLC,                    :    Case No. 07-30005 (cgm)
                                                    :
                                                    :
                            Debtor.                 :
                                                    :
---------------------------------------------------------------x

**OBJECTION OF SOTHEBY'S, INC. AND SOTHEBY'S FINANCIAL SERVICES, INC. TO DEBTOR'S MOTION FOR AN ORDER (I) AUTHORIZING SECURED AND SUPERPRIORITY POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §364, (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. §363 AND (III) SCHEDULING A HEARING ON DEBTOR'S MOTION FOR A FINAL ORDER AUTHORIZING FINANCING PURSUANT TO 11 U.S.C. §364 PENDING THE FINAL HEARING**

Sotheby's, Inc. and Sotheby's Financial Services, Inc. ("SFS" and collectively with Sotheby's, Inc., "Sotheby's"), creditors and parties-in-interest herein, by their counsel Stroock & Stroock & Lavan LLP, as and for their objection to the Motion for an Order (I) Authorizing Secured and Superpriority Post-Petition Financing Pursuant to 11 U.S.C. §364, (II) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §363 and (IV) Scheduling a Hearing on Debtor's Motion for Final Order Authorizing Financing Pursuant to 11 U.S.C. §364 Pending the Final Hearing (the "Motion") filed by the above-captioned debtor (the "Debtor") in the above-captioned chapter 11 case (the "Case"), respectfully state as follows:

NY 71074901v1

**Preliminary Statement**

The motion is a catalog of objectionable DIP financing provisions, starting with an attempt to prime existing liens, including the perfected first priority prepetition lien of Sotheby's, without any showing of adequate protection as mandated by 11 U.S.C. §364(d)(1)(B). In addition to the priming lien with respect to the postpetition loan, the Motion appears to contemplate, in the "Payment Procedures" outlined in paragraph 24 of the Motion, repayment of both the postpetition financing and the entire prepetition claim (alleged to be nearly $26 million) of the DIP lender, First Republic Bank ("DIP Lender") from proceeds of liquidated collateral, before a cent goes to other creditors. No justification is advanced for the extraordinary payment of such a large prepetition claim outside of a chapter 11 plan. Other objectionable provisions include: (i) the Debtor's waiver of claims and the inordinately small Committee carveout, both designed to stifle any attempt to challenge the DIP Lender's claim or lien, (ii) the lien on avoidance actions, (iii) the extensive waivers and limitations applicable to the Debtor, and (iv) the request, without citation to any authority, for approval of a procedure to encumber non-estate assets on a nonconsensual basis. The Debtor seeks this sweeping relief on an interim basis with virtually no notice.[1]

The proposed financing is part of a package of first day relief that appears primarily designed to solidify the position of the DIP Lender. In exchange for this largesse, the DIP Lender will advance up to $1.5 million, primarily to be used to pay estate professionals (who will

---

[1] Accordingly, while Sotheby's opposes the Motion for all the reasons set forth herein, and requests that it be denied, at minimum there is no demonstration of the urgency requiring approval with no opportunity to take discovery and develop a factual record for or against the requested relief. Specifically, the weekly budget attached to the DIP loan term sheet discloses that the lion's share of the funds to be advanced in the interim period will be used for payment of estate professionals and consultants. This is not an operating business where emergency use of funds might be justified to preserve a going concern, but rather a non-operating liquidation where payment of professionals and consultants is simply not an emergency. See Fed. R. Bankr. P. 4001(c)(2) (authorizing interim relief only to the extent necessary to avoid immediate and irreparable harm to the estate).

2

not investigate or challenge the liens or claim of the DIP Lender) and a chief restructuring officer ("CRO") whose retention is completely unwarranted. This Case began as an involuntary chapter 7 filing, after numerous lawsuits were filed against the Debtor, and the seizure of the books and records of the Debtor and its principal by the District Attorney as part of a criminal investigation. As such, the Case cries out for the appointment of an independent trustee to oversee the prompt liquidation of estate assets while the market is advantageous, followed by an orderly and fair process to determine competing priorities and claims of ownership. For all of these reasons, the Motion should be denied.

**Background**

1.      Sotheby's, Inc. is a leading fine art auction house. Among its affiliated ancillary businesses is SFS, which provides, among other things, financing collateralized by fine art. Prior to the Petition Date, Sotheby's entered into two types of transactions with the Debtor, referred to herein as "Loan/Consignment Transactions" and "Equity Transactions."

2.      Pursuant to the Loan/Consignment Transactions, SFS agreed to extend loans to the Debtor in connection with the consignment of certain other works of art to Sotheby's for sale at auction (the "Consigned Works"). Lawrence Salander personally guaranteed the Debtor's obligations under these transactions.

3.      Pursuant to the Equity Transactions, Sotheby's agreed to purchase from the Debtor an undivided 50% interest in certain works of art (the "Equity Works") subject to the completion of due diligence to verify the Debtor's title to, and legal right to possess in the United

3

States, the Equity Works. The parties' agreement provided Sotheby's with certain rights to sell the Equity Works.[2]

4. In both the Equity Transactions and the Loan/Consignment Transactions, the Debtor represented and warranted that it had good title to the works of art identified in those agreements and that they were, and would remain, "free of all liens, claims and encumbrances." Sotheby's conducted extensive due diligence as to the accuracy of such representations, and where a lien was discovered, Sotheby's obtained and documented the lien holder's consent to subordinate its lien to those of Sotheby's. Not a single one of the Equity Works or Consigned Works has a lien (other than that of Sotheby's) against it that has not been subordinated. The security interests of SFS and Sotheby's have, with the exception of three lower value works of art left with the Debtor, been perfected. The Equity Works and Consigned Works are in Sotheby's possession.

5. The amount loaned or paid by Sotheby's to the Gallery that it has not recovered is $1,637,750, excluding more than $25,000 in interest, which continues to accrue at the rate of approximately $350 per day.

**Argument**

**The Debtor Makes No Showing of Adequate Protection of the SFS Lien**

6. Pursuant to 11 U.S.C. §364(d), the Court, after notice and a hearing, may authorizing postpetition financing secured by a lien senior or equal to an existing lien on property of the estate only if: (i) the trustee or debtor in possession is unable to obtain such credit otherwise, and (ii) there is adequate protection of the interest of the holder of the lien on estate

---

[2] In one instance, an Equity Work became the subject of a Loan/Consignment Agreement, with SFS loaning money to the Debtor secured by the Debtor's 50% interest in the work.

4

property on which such senior or equal lien is proposed to be granted. The trustee has the burden of proof on the issue of adequate protection.

7.  Here, the Debtor proposes to grant a priming lien on broad categories of assets, including all personal property of the Debtor (including goods and inventory). The Motion does not in any way address how Sotheby's would be adequately protected to the extent the Debtor seeks to prime its lien, as mandated by statute.

**The Relief Sought in the Motion is Inappropriate Under the Circumstances of This Case**

8.  The Debtor's Local Rule 1007-2 Affidavit discloses no less than twenty-one prepetition actions against the Debtor relating to the operation of its business. As the Affidavit further discloses, the Debtor's books and records have been seized by the New York County District Attorney, and the Debtor's business was shut down prepetition as a result of a preliminary injunction entered in New York Supreme Court. Under these circumstances, there is *no going business to reorganize*, which is the premise of the Debtor's first day motions including the Motion. Moreover, the financing contemplated by the Motion appears intended largely to pay the CRO and the Debtor's counsel. According to the CRO retention motion, the CRO intends to retain Mr. Salander as a consultant, when Mr. Salander's involvement is precisely what this case does not need.[3] Rather than a sweeping package of protections for the DIP Lender in exchange for providing a relatively small loan to finance an illusory reorganization, the estate would be better served by the appointment of a disinterested, independent trustee to oversee the liquidation of the assets of the estate and resolution of claims and interests.

---

[3] According to the Local Rule 1007-2 Affidavit, the "salaries for the Debtor's members for the thirty (30) day period following the commencement of the Chapter 11 case will total $50,000." See id., ¶29-30. It thus appears that a $50,000 per month salary for Mr. Salander is included in the budget attached to the Motion.

5

NY 71074901v1

**Reservation of Rights**

9. Sotheby's reserves its rights to file a supplemental or further objection in connection with any final hearing on the Motion, and to take appropriate discovery in support of its objections.

**Conclusion**

WHEREFORE, Sotheby's respectfully requests that this Court (i) deny the relief sought in the Motion, and (ii) grant such other and further relief as is just and proper.

Dated: New York, New York
November 12, 2007

STROOCK & STROOCK & LAVAN LLP

/s/ Harold A. Olsen
Harold A. Olsen (HO-2886)
180 Maiden Lane
New York, NY 10038-4982
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*Counsel to Sotheby's, Inc. and Sotheby's Financial Services, Inc.*