Alan D. Halperin (AH-8432)                          Hearing Date: November 28, 2007
Robert D. Raicht (RR-2370)                          Hearing Time: 11:00 a.m.
Walter Benzija (WB-0909)
**HALPERIN BATTAGLIA RAICHT, LLP**
Counsel to the
 Debtor and Debtor-in-Possession
555 Madison Avenue - 9th Floor
New York, New York 10022
(212) 765-9100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re:

SALANDER-O'REILLY GALLERIES LLC,    Chapter 11
                                    Case No. 07-30005 (CGM)


                        Debtor.
---------------------------------------------------------x

### DEBTOR'S OBJECTION TO MOTION BY KRAKEN INVESTMENTS LIMITED AND GOLCONDA FINE ART LTD. FOR RELIEF FROM THE AUTOMATIC STAY AND FOR AN ORDER OF SEIZURE

TO THE HONORABLE CECELIA G. MORRIS,
UNITED STATES BANKRUPTCY JUDGE:

Salander-O'Reilly Galleries LLC, the debtor and debtor-in-possession herein (the "Debtor"), as and for its objection (the "Objection") to the Motion for Relief From the Automatic Stay and For an Order of Seizure (the "Motion") of Kraken Investments Limited and Golconda Fine Art Ltd. (together, the "Movants"), respectfully represents and states in support of its Objection, as follows:

{00055494.2 / 0607-002}

## PRELIMINARY STATEMENT

1. By the Motion, Movants seek relief from the automatic stay and an order of seizure to permit them to take possession of the Artwork.[1] The Motion should be denied on any number of grounds, including that Movants have failed to state a *prima facie* case for stay relief pursuant to section 362(d)(1). Given the circumstances surrounding the filing of this case, the Motion is wholly premature and unduly burdens the Debtor's estate at a time when its time, energy and resources are properly directed to accounting for, securing, and preserving the estate's assets. As the Court is aware, the Debtor's chief restructuring officer (the "CRO") is in the process of obtaining access to its books and records, currently in the custody of the New York County District Attorney's Office. Moreover, as discussed below, the CRO is currently working to produce a comprehensive inventory of the estate's property as well as proposing an orderly claims identification and resolution process designed to efficiently address precisely the kinds of claims made by the Movants in their Motion.

2. It is respectfully submitted that consideration of the Motion at this time - - or motions seeking similar forms of stay relief - - are simply counter-productive from the standpoint of efficient case management and effective use of the Debtor's very limited resources. The Debtor's bankruptcy case was commenced to prevent precisely this kind of race to the gallery. At this critical early stage of its case, the Debtor should not be compelled to address such piecemeal lift stay litigation, particularly where the CRO does not currently have access to the Debtor's books and records and has at best imperfect information about the nature and extent of property of the Debtor's estate. Thus, even before any consideration is given to the merits of the Motion or similar motions, the Debtor submits that there are compelling circumstances as

---

[1] As defined in the Motion.

required under section 363(e) of the Bankruptcy Code to extend consideration of the Motion for more than the 30 days required under the Bankruptcy Code and its Rules.

3.  With respect to the merits of the instant Motion, the relief requested should be denied. As set forth herein, Movants have failed to allege a perfected consignment arrangement with the Debtor and, thus have not established any cause under section 362(d)(1) of the Bankruptcy Code to modify the automatic stay with respect to the Artwork.

4.  For all of the foregoing reasons and those that follow, the Debtor respectfully submits that the Motion should be denied with prejudice.

## BACKGROUND

5.  On November 1, 2007 (the "Petition Date"), an involuntary chapter 7 case was commenced against the Debtor in this District. The case was converted to one under Chapter 11 of the Bankruptcy Code on November 9, 2007. The Debtor has continued in the management and operation of its business and properties as a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

6.  By Notice of Appointment dated November 20, 2007, the Office of the United States Trustee for Region 2 appointed an official committee of unsecured creditors (the "Committee").

7.  The Debtor is a privately held limited liability company organized and existing under the laws of the State of New York. The Debtor currently operates its business from leased premises located at 22 East 71st Street, New York, New York 10021.

8. The Debtor is the owner and operator of an art gallery in New York City. The gallery exhibits and manages fine art from Renaissance to contemporary and represents living artists and artists' estates.

9. The Debtor's bankruptcy filing was precipitated by the continuing and mounting pressures of the various lawsuits facing the Debtor and in particular the deleterious effect of the preliminary injunction issued in one such action, which forced the shutdown of the Debtor's operations. These disputes interfered with the Debtor's efforts to operate its business. The Debtor sought the protection of the Bankruptcy Court to resolve these disputes and maximize asset values for the benefit of the estate.

10. By interim order dated November 15, 2007 (the "Interim CRO Order"), the Court authorized the Debtor to retain Triax Capital Advisors LLC ("Triax") to perform certain management services and Joseph E. Sarachek to serve as CRO of the Debtor, in accordance with a certain management agreement dated as of November 2, 2007 (the "Management Agreement"). Mr. Sarachek has assumed complete control of all aspects of the Debtor's business and financial affairs, including unfettered authority to make all managerial and operational decisions on behalf of the Debtor.

11. The CRO's first order of business has been to identify, protect and preserve the Debtor's assets, including a comprehensive and detailed inventory of the Debtor's assets including artwork wherever located. The CRO will also undertake any and all actions necessary to assemble the Debtor's books and records to enable the Debtor to once again conduct its business. Among the issues raised in a number of the litigations concerns the nature and extent of ownership rights asserted in various pieces of artwork. Absent a resolution of these competing interests to the Debtor's primary and most valuable assets, its ability to maximize

{00055494.2 / 0607-002}  4

asset values for the benefit of its creditors will be severely hampered. Thus, it is the CRO's intention to implement procedures necessary to efficiently address and resolve the competing ownership interests in the various pieces of artwork. Such procedures contemplate notice to the potential claimants, the establishment of deadlines for the assertion of competing claims, and the initiation of a claims resolution process before this Court.

## THE MOTION SHOULD BE DENIED

12.     While the Debtor believes that the Motion is wholly premature at this time, when considered on its merits, the relief requested by Movants should be denied with prejudice. Simply stated, the Movants have failed to establish any cause under section 362(d)(1) of the Bankruptcy Code to modify the protection of the automatic stay with respect to the subject Artwork.

13.     Section 362(d)(1) of the Bankruptcy Code provides, in pertinent

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay…(1) for cause including the lack of adequate protection of an interest in property of such party in interest…

11 U.S.C. § 362(d)(1). It is the Movants' burden to establish its *prima facie* case of its entitlement to relief on section 362(d)(1) grounds before the burden shifts to the Debtor to go forward with its proof. *Sonnax Indus., Inc. v. Tri Component Prods. Corp., (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990); *In re Keene Corp.*, 171 B.R. 180, 182 (Bankr. S.D.N.Y. 1994). In this case, the Movants must establish that (a) there is a debt owing from the Debtor to the Movants; (b) a valid security interest possessed by the Movants that secures the debt; and (c) a decline in the value of the collateral securing the debt combined with Debtor's failure to provide adequate protection of Movants' alleged interest. *In re Howery*, 275 B.R. 852,

854 (Bankr. S.D. Ohio 2002); *In re Elmira Litho, Inc.,* 174 B.R. 897, 904 (Bankr. S.D.N.Y. 1994). Although the Motion alleges that continuation of the automatic stay would "work real and irreparable harm to Movants and deprive them of the adequate protection to which they are entitled under 11 U.S.C. § 362 and 363 . . ." (Motion at p. 5), the Movants have not met their burden to establish that they have a right to adequate protection at all, much less that the lack of adequate protection is cause to modify the automatic stay.

        14.     In order to be entitled to adequate protection, the Movants must first demonstrate that they are secured creditors. *See In re Dairy Mart Convenience Stores*, 351 F.3d 86, 90 (2d Cir. 2003) ("[t]he adequate protection provision of 11 U.S.C. Section 361 protects only secured creditors"); *Pileckas v. Marcucio*, 156 B.R. 721, 725 (N.D.N.Y. 1993) (unperfected security interest constitutes an unsecured claim and "there is no express statutory requirement that the holders of unsecured claims be provided [the] 'adequate protection' of Section 361")(citing to *In re Southern Biotech, Inc.* 37 B.R. 318, 324 (Bankr. M.D. Fla. 1983); *In re Pioneer Commercial Funding Corp.*, 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990) ("the concepts of adequate protection of an interest in property and the existence of an equity interest in property do not apply to unsecured claims"). The Movants allege that the Artwork was delivered to the Debtor pursuant to consignment agreements with the Debtor. Article 9 of the New York Uniform Commercial Code (the "UCC") governs whether a consignment is valid and enforceable so as to be able to trump the security interest of any party claiming an interest in the property and the interest of the Debtor. Pursuant to section 9-102(a)(20) of the UCC, the term "consignment" is defined as :

> a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and:
>
> (A) the merchant:

      (i) deals in goods of that kind under a name other than the name of the person making delivery;
      (ii) is not an auctioneer; and
      (iii) is not generally known by its creditors to be substantially engaged in selling the goods of others;

  (B) with respect to each delivery, the aggregate value of the goods is $1,000 or more at the time of delivery;

  (C) the goods are not consumer goods immediately before delivery; and

  (D) the transaction does not create a security interest that secures an obligation.

15.    Significantly, a consignor perfects its consignment by filing a UCC financing statement describing the consigned goods, but if the debtor has already granted a security interest in its existing and after-acquired inventory, the consignor must also send notice to the secured party to have first priority. *See* §§ NY U.C.C. 9-322(a) and 9-324(b).

16.    The burden is on Movants as the party claiming to be protected by section 9-102 to establish that each of the attributes of a true consignment is satisfied. *In re G.S. Distribution, Inc.*, 331 B.R. 552, 561 (Bankr. S.D.N.Y. 2005). The Movants have made no affirmative showing that the subject transactions satisfy the conditions to be consignments under Article 9.

17.    Nevertheless, assuming *arguendo* that the transactions are consignments, for purposes of determining the relative rights of creditors, the Debtor as consignee and in possession of the subject goods is deemed to acquire all the rights and title that the consignor had if the consignor's security interest is unperfected. N.Y. U.C.C. § 9-319(a). As a result, creditors can obtain judgment liens and security interests in consigned goods in the possession of the Debtor. N.Y. U.C.C. § 9-319(b), Official Comment 2.; s*ee also In re Morgansen's Ltd.*, 302 B.R. 784 (Bankr. E.D.N.Y. 2003) (finding alleged consigned goods to be property of the estate

and subject to claims of creditors when alleged consignors failed to file financing statement and failed to satisfy burden of proof on whether there was a true consignment relationship between the parties); *In re Valley Media, Inc.*, 279 B.R. 105 (Bankr. D. Del. 2002.

19. Here, Movants have not produced financing statements evidencing that they have perfected their alleged consignments or any showing that they served the required notice of same to the Debtor's pre-petition secured lender, First Republic Bank (the "Bank"). Because the Movants have not perfected their consignment interest, they have no legal basis to obtain a modification of the automatic stay in order seize property that presumptively belongs to the estate. For this reason alone, the Motion should be denied.

19. Finally, even if the Movants had established a properly perfected consignment interest, they have not met their burden of demonstrating a lack of adequate protection of their alleged interest in the Artwork. *In re Elmira Litho, Inc.,* 174 B.R. at 903 ("[Secured creditor] must, therefore, prove [a] decline in value-or the threat of a decline -in order to establish a prima facie case [under section 362(d)(1) of the Bankruptcy Code]"), *citing In re Sun Valley Ranches, Inc.*, 823 F.2d 1373, 1376 (9th Cir. 1987); *In re Marion Street Partnership*, 108 B.R. 218, 225 (Bankr. D. Minn. 1989). In this case, no evidence has been proffered to demonstrate either an actual decline in value or a substantial threat of an imminent decline. To the contrary, to the extent the Debtor is in fact in possession of the Artwork (which can only be determined after the CRO has had a full and fair opportunity to inventory the Debtor's assets), such Artwork is being preserved and its value protected. Blanket assertions of the lack of adequate protection are not legally sufficient to satisfy the Movants' burden to show a lack of adequate protection. On this basis as well, the Motion should be denied as the Movants have not established a necessary element of their *prima facie* case under section 362(d)(1).

20. For all of the foregoing reasons, the Motion should be denied.

**WHEREFORE**, the Debtor requests entry of an order (a) denying the Motion; and (b) granting the Debtor such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 21, 2007

        **HALPERIN BATTAGLIA RAICHT, LLP**
        Attorneys for Debtor and Debtor-in-Possession

By: */s/ Robert D. Raicht*
    Alan D. Halperin (AH-8432)
    Robert D. Raicht (RR-2370)
    Walter Benzija (WB-0909)
    555 Madison Avenue, 9th Floor
    New York, New York 10022
    (212) 765-9100