**Hearing Date: February 14, 2008 at 10:30 a.m. prevailing Eastern time**
**Objection Deadline: February 11, 2008 at 4:00 p.m. prevailing Eastern time**

PACHULSKI STANG ZIEHL
    & JONES LLP
780 Third Avenue, 36th Floor
New York, NY  10017-2024
Telephone: 212/561-7700
Facsimile:  212/561-7777

Robert J. Feinstein (RF-2836)
Ilan D. Scharf (IS-3469)

Proposed Counsel for Official Committee of Unsecured
    Creditors of Salander-O'Reilly Galleries, LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SALANDER-O'REILLY GALLERIES, LLC, | ) | Case No. 07-30005 (CGM) |
| | ) | |
| Debtor. | ) | |

**NOTICE OF HEARING OF JOINT MOTION OF THE DEBTOR, THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND FIRST
REPUBLIC BANK FOR AN ORDER (I) APPROVING PROTOCOL FOR
ASSERTION AND RESOLUTION OF CLAIMS OF OWNERSHIP TO
ARTWORKS IN THE POSSESSION, CUSTODY OR CONTROL OF
SALANDER-O'REILLY GALLERIES, LLC, (II) APPROVING NOTICE
OF THE ART CLAIMS BAR DATE, AND (III) ESTABLISHING A
DEADLINE FOR ART CLAIMANTS TO MAKE ART CLAIMS**

     **PLEASE TAKE NOTICE** that a hearing (the "Hearing") on the attached Motion

(the "Motion") will be held before the Honorable Judge Cecelia G. Morris, United States

Bankruptcy Judge, on **February 14, 2008 at 10:30 am (prevailing Eastern time),** or as soon

thereafter as counsel can be heard, in the United States Bankruptcy Court for the Southern

District of New York, 355 Main Street, Poughkeepsie, NY 12601-3315.

     **PLEASE TAKE FURTHER NOTICE** that objections to the Motion, if any, must

comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the

United States Bankruptcy Court for the Southern District of New York, must be set forth in a writing describing the basis therefor and must be filed with the Court electronically in accordance with General Order M-242 (as amended by General Order M-269) by registered users of the Court's electronic case filing system and, by all other parties in interest, on a 3½ inch disk, preferably in Portable Document Format (PDF), Microsoft Word or any other windows-based word processing format (with a courtesy copy delivered directly to Chambers) and served in accordance with General Order M-242 (as amended by General Order M-269) and by first-class mail upon each of the following so as to be received no later than **February 11, 2008 at 4:00 pm (prevailing Eastern time)**:  (i) Pachulski, Stang, Ziehl & Jones LLP, 780 Third Avenue, 36th Floor, New York, New York 10017, Attn.: Robert J. Feinstein, Esq.; (ii) Office of the United States Trustee, 74 Chapel Street, Suite 200 Albany, NY 12207, Attn.: Eric J. Small, Esq.; (iii) Halperin Battaglia Raicht LLP, 555 Madison Avenue, 9th Floor, New York, NY 10022, Attn: Alan D. Halperin, Esq.; and (iv) White & Case LLP, 1155 Avenue of the Americas, New York, NY 10036, Attn: J. Christopher Shore.  Only those replies made in writing and timely filed and received will be considered at the Hearing.  Any such response must state with specificity the reason or reasons why the relief requested in the Motion should not be granted.

Dated: New York, New York
      February 1, 2008

PACHULSKI STANG ZIEHL & JONES LLP


_/s/ Robert J. Feinstein_____
Robert J. Feinstein (RF-2836)
Ilan D. Scharf (IS-3469)
780 Third Avenue, 36th Floor
New York, New York 10017-2024
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777

Counsel for the Official Committee
of Unsecured Creditors


HALPERIN BATTAGLIA RAICHT, LLP


_/s/ Robert D. Raicht_____ _
Robert D. Raicht (RR-2370)
Walter Benzija (WB-0909)
555 Madison Avenue, 9th Floor
New York, New York 10022
Telephone: (212) 765-9100
Facsimile:  (212) 765-0964

Counsel for the Debtor and Debtor in Possession


WHITE & CASE LLP


_/s/ J. Christopher Shore_____
J. Christopher Shore (JS-6031)
Avi Goldenberg (AG-6978)
1155 Avenue of the Americas
New York, New York
10036-2787
Telephone: (212) 819 8200
Facsimile:  (212) 354 8113

Counsel for First Republic Bank, as DIP Lender


NY/14553

3

PACHULSKI STANG ZIEHL
    & JONES LLP
780 Third Avenue, 36th Floor
New York, NY 10017-2024
Telephone: 212/561-7700
Facsimile: 212/561-7777
Robert J. Feinstein (RF-2836)
Ilan D. Scharf (IS-3469)

Proposed Counsel for Official Committee of Unsecured
    Creditors of Salander-O'Reilly Galleries, LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| SALANDER-O'REILLY GALLERIES, LLC, | Case No. 07-30005 (CGM) |
| Debtor. | |

### JOINT MOTION OF THE DEBTOR, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND FIRST REPUBLIC BANK FOR AN ORDER (I) APPROVING PROTOCOL FOR ASSERTION AND RESOLUTION OF CLAIMS OF OWNERSHIP TO ARTWORKS IN THE POSSESSION, CUSTODY OR CONTROL OF SALANDER-O'REILLY GALLERIES, LLC, (II) APPROVING NOTICE OF THE ART CLAIMS BAR DATE, AND (III) ESTABLISHING A DEADLINE FOR ART CLAIMANTS TO MAKE ART CLAIMS

Salander-O'Reilly Galleries, LLC (the "Debtor"), the debtor and debtor in possession in

the above-captioned case (the "Bankruptcy Case") under chapter 11 of Title 11 of the United

States Code (the "Bankruptcy Code"), the Official Committee of Unsecured Creditors appointed

in the Bankruptcy Case (the "Committee") and First Republic Bank, as the provider of debtor in

possession financing to the Debtor (the "Bank," and collectively, with the Debtor and the

Committee, the "Moving Parties"), by and through their undersigned counsel, hereby move (the

"Motion") this Court, pursuant to sections 105(a), 363 and 541 of the Bankruptcy Code and

Rules 2002(l), 4001, 9007, 9008 and 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for entry of an order (i) approving the Protocol (the "Protocol") for

Assertion and Resolution of Claims of Ownership to Artworks in the Possession, Custody or

Control of Salander-O'Reilly Galleries, LLC, (ii) approving notice of the Art Claims Bar Date

(as defined below), and (iii) establishing the Art Claims Bar Date of May 9, 2008.  In support of

the Motion, the Moving Parties respectfully state as follows:

## I.  Preliminary Statement

1.      Prior to the Petition Date (as defined below), the Debtor operated an art

gallery.  The Debtor's chapter 11 case was commenced in the midst of swirling allegations of

fraud and questions regarding ownership of art and fine art (as defined in the Protocol,

"Artwork" or "Artworks") in the Debtor's possession, custody or control.  Various parties (as

defined in the Protocol, "Art Claimants") have asserted and may assert that certain Artwork is

not property of the Debtor's estate under section 541 of the Bankruptcy Code.  Potential claims

include assertions that a piece of Artwork is held by the Debtor (a) on consignment, (b) on sale

or return, (c) in trust for artists, their heirs or their personal representatives pursuant to Article 12

of the New York Arts and Cultural Affairs Law, and/or (d) some other contractual basis under

which the Artwork is not property of the Debtor's estate.  Thus, while the Debtor entered chapter

11 in possession of approximately 4,000 pieces of Artwork, it is not readily apparent which

Artworks are property of the Debtor's estate.

2.      If all Art Claimants were to assert ownership claims at this time without a

structure in place for resolving those claims, the Debtor's estate would be irreparably harmed

due to, inter alia, the distraction and cost of concurrently litigating numerous, often competing,

claims.  Moreover, the Debtor is not in a position to defend against such motions or adjudicate

such disputes because, inter alia, the Debtor's books and records were seized by the District

- 2 -

Attorney for the County of New York and the Debtor has not yet been able to gain access to

them.[1]  Further complicating the situation, the Debtor entered chapter 11 without any cash, and

therefore must sell Artwork in order to fund its chapter 11 case and provide recoveries for

creditors.  Indeed, as set forth below, the ability of the Debtor's estate to bear reorganization

costs is contingent on its ability to generate sale proceeds within a reasonable period of time.

Yet any efforts to sell Artwork will almost certainly be hampered by claims regarding ownership

of the Artwork.

　　　　3.　　　Against this backdrop, the Debtor, the Committee and the Bank each

recognized that it was imperative to quickly address the issue of which Artwork is not property

of the Debtor's estate.  Therefore, the Moving Parties, along with various potential Art

Claimants, negotiated the terms of the Protocol annexed hereto as <u>Exhibit A</u>.

　　　　4.　　　The purpose of the Protocol is to (i) identify all claims that Artworks

currently in the Debtor's possession, custody or control is not property of the Debtor's estate,

(ii) notify potential Art Claimants of the Artworks in the Debtor's possession, custody and

control, (iii) require Art Claimants to assert claims to specific Artworks by a deadline established

by this Court, (iv) allow parties to evaluate Art Claims, (v) to resolve disputed claims to Artwork

in a fair, orderly and efficient manner and (vi) to expedite the return of Artworks that are not

property of the Debtor's estate to their rightful owners.  The Protocol does not address the rights

of the Debtor or third parties related to or derived from Artwork that is not in the Debtor's

possession, custody or control, with regard to which all parties' rights are reserved.  Nor does the

protocol address the rights of any third parties to assert that the Artworks in the Debtor's

---

[1]　　　The District Attorney is currently copying the Debtor's books and records and has
informed the Debtor that the District Attorney will shortly provide a copy of the books
and records to the Debtor.

- 3 -

possession, custody or control are subject to perfected liens or claims of actual or constructive

trusts.  Finally, the Protocol does not require parties (other than the Bank) to file proofs of claim

(for example, general unsecured claims, priority claims, etc.), other than Art Claims, at this time.

Simply put, the limited purpose of the Protocol is to determine whether or not Artwork in the

Debtor's possession, custody or control clearly belongs to a third party.

5.    The Protocol will (a) provide an efficient mechanism for asserting and

resolving Art Claims, (b) expedite the return of Artwork that is not property of the Debtor's

estate, (c) allow the estate to begin the process of liquidating assets, (d) relieve the estate of the

burden of safeguarding non-estate assets and (e) provide for the orderly administration of the

Debtor's estate going forward.  As such, the Moving Parties respectfully request entry of an

order approving the Protocol, establishing a deadline by which parties must assert claims against

the Artwork (the "Art Claims Bar Date") and approving notice of the Art Claims Bar Date.

## II.  Relevant Facts

### A.    Background Facts

6.    The Debtor is the owner of an art gallery located in New York City that

exhibited and managed fine art and represented living artists and artists' estates.  On

November 1, 2007 (the "Petition Date"), three creditors of the Debtor filed an involuntary

petition against the Debtor under chapter 7 of the Bankruptcy Code.

7.    As of the Petition Date, the Debtor was a party to numerous lawsuits

alleging, inter alia, that the Debtor and/or Lawrence Salander, the Debtor's owner and manager,

misappropriated artwork belonging to various parties and engaged in fraud and other

misconduct.  In one or more of those cases, a court issued a preliminary injunction which, inter

alia, enjoined the disposition of any artwork at the Debtor's gallery.  As a result of this order, the

- 4 -

Debtor's gallery has been closed since approximately October 19, 2007.  In addition, the Debtor's books and records were impounded by law enforcement authorities.

8.      On November 2, 2007, Lawrence Salander and his wife, Julie Salander, commenced a joint voluntary case under chapter 11 of the Bankruptcy Code in this Court (Case No. 07-36735 (CGM)).

9.      On November 9, 2007, the Court entered an order converting the Debtor's case to one under chapter 11 of the Bankruptcy Code.  (Docket No. 25.)

10.     On November 15, 2007, the Court entered an order approving the appointment of Joseph E. Sarachek as the Debtor's Chief Restructuring Officer ("CRO") on an interim basis.  (Docket No. 67).

11.     On November 20, 2007, the United States Trustee (the "U.S. Trustee") appointed the Committee in this case.

**B.      The District Attorney Impounded the Debtor's Books and Records**

12.     Prior to the Petition Date, the District Attorney for the County of New York impounded the Debtor's books and records.  The District Attorney has agreed to copy the Debtor's books and records and provide copies thereof the Debtor.

13.     The Debtor's lack of access to its books and records and concern about the state of its books and records has left the Debtor and creditors in limbo regarding the ownership status of Artworks in the Debtor's possession, custody or control.  Thus, the Protocol requires Art Claimants to come forward and make their Art Claims, rather than require the Debtor to speculate in the dark about the status of the Artwork.

C.    **DIP Financing**

14.    By motion (the "DIP Motion") dated November 9, 2007, the Debtor

sought approval of a $1.5 million debtor in possession financing facility (the "DIP Loan") from

the Bank, the Debtor's prepetition lender (the "DIP Facility").  By Order dated November 16,

2007, the Court authorized the Debtor, on an interim basis, to obtain advances, on a secured

basis, from the Bank in an amount not to exceed $630,000.  By order dated January 3, 2008 (the

"Final DIP Order"), the Court approved the DIP Motion on a final basis and, _inter alia_,

authorized the Debtor to borrow up to an additional $870,000 from the Bank (Docket No. 229).

Under the terms of the Final DIP Order, the requirement that the Bank make any advances to the

Debtor in excess of $1,080,000 is conditioned on entry of an order providing for, _inter alia_, (i)

establishment of a protocol to determine claims that property in the possession, custody or

control of the Debtor is not an asset of the Debtor's estate, (ii) adjourning motions for relief from

the stay regarding such claims, (iii) authorizing such claimants to remove property only upon

posting of an undertaking and (iv) allowing such claimants to consent to a charge against their

claimed assets or to reimburse the Debtor and the Bank for costs of preserving such assets (Final

DIP Order at ¶14).  The Protocol is designed to comply with this provision of the Final DIP

Order.

D.    **Prior Litigation**

15.    At least four parties have moved for relief from the automatic stay to sell

or recover artwork.  One of those motions (by Sotheby's, Inc. and Sotheby's Financial Services,

Inc. ("Sotheby's")) generated four objections asserting ownership claims in the art that the

movant sought to sell.  (See Docket Nos. 109, 120, 126, 127 and 128.)  Sotheby's withdrew its

motion after the objections were filed.  (Docket No. 142.)  In addition, on November 11, 2007,

Kraken Investments Limited and Golconda Fine Art Ltd. (collectively, "Kraken") filed a motion for relief from the automatic stay and an order of seizure of artwork. (Docket No. 65.) The Debtor and Committee opposed Kraken's motion. On December 6, 2007, the Court entered an order denying Kraken's motion without prejudice, based largely on procedural grounds. (Docket No. 65.) In addition, on November 28, 2007, Nella Longari S.r.l. ("Nella") filed its motion for relief from the automatic stay and an order of seizure of artwork. (Docket No. 101.) On December 10, 2007, at the Committee's urging, Nella withdrew its motion. (Docket No. 173.) Finally, on December 20, 2007, Bennucci 8.5.1. ("Bennucci") filed its motion for return of artwork pursuant to sections 105(a) and 541 of the Bankruptcy Code. (Docket No. 214.) Bennucci adjourned its motion to March 13, 2008 in anticipation of the Protocol.

16.        On information and belief numerous other parties have not filed similar motions because of the Moving Parties' efforts to draft a Protocol with input from potential claimants. Thus, it is in the best interests of all parties – including estate parties and claimants – to establish an orderly process to deal with ownership claims. The Protocol establishes such a process.

### III.  The Protocol

17.        The Protocol establishes an orderly process for (i) identification and of Artworks in the Debtor's possession, custody or control, (ii) notice of Artworks in the Debtor's possession custody or control, (iii) assertion of Art Claims, (iv) evaluation of Art Claims, (v) resolution of Art Claims and (vi) return of Artworks that are not property of the Debtor's estate. The salient terms of the Protocol are as follows:[2]

---

[2] To the extent there is any discrepancy between the description of the Protocol herein and the Protocol, the terms of the Protocol shall govern.

**A.    Identification of Artworks in the Debtor's Possession, Custody or Control**

18.    The CRO has taken efforts to identify, photograph and catalogue (a) all Artworks in the Debtor's possession, custody and control, (b) all Artworks that are located in or were removed by the CRO from Lawrence and Julie Salander's residences in Millbrook, New York and New York, New York, (c) any other Artwork recovered by the Debtor and (d) all Artworks known to, or believed by, the CRO to be property of the Debtor's estate, but are not in the possession, custody or control of the Debtor.  On an ongoing basis, the CRO has been publishing on a website a list of such Artworks (as defined in the Protocol, the "Inventory List"), which is available at www.triaxcapitaladvisors.com/salander (the "Website").  The Website is password protected, and the CRO will promptly provide a unique password to each party in interest that requests access to the Website, including all Art Claimants.

**B.    Notice of Artworks in the Debtor's Possession, Custody or Control**

19.    After completing the Inventory List, the CRO will transmit a written notice (the "Art Claims Bar Date Notice") to all known parties who may potentially have claims against or interest in any of the Artwork.  The CRO will also publish the Art Claims Bar Date Notice in the manner set forth below.

20.    The Debtor will notify parties of the Art Claims Bar Date and the Protocol by serving a copy of an Art Claims Bar Date Notice in a form substantially in the form annexed here to as Exhibit B, together with a copy of this Protocol, on all parties known to the CRO that may assert a claim against or an interest in any of the Artworks in the Debtor's possession, custody or control, including, (a) all parties that are entitled to notice pursuant to Fed. R. Bankr. P. 2002, (b) all creditors of the Debtor known to the CRO, (c) all artists who are known to the CRO, based on the Debtor's books and records to the extent available to the CRO at the time the

CRO provides notice under this paragraph (the "Books and Records"), the docket of the Bankruptcy Case or otherwise, to have consigned or delivered Artworks to the Debtor, (d) all heirs or personal representatives of artists known to the CRO, based on the Books and Records, the docket of the Bankruptcy Case or otherwise, to have consigned or delivered Artworks to the Debtor, (e) all other parties who are known to the CRO, based on the Books and Records, the docket of the Bankruptcy Case or otherwise, to have consigned or delivered Artworks to the Debtor, (f) the Committee, (g) the Bank, (h) Renaissance Art Investors LLC, (i) Lawrence Salander, (j) Julie Salander, (k) counsel to the bankruptcy estate of Lawrence and Julie Salander and any trustee(s) appointed in their bankruptcy case, (l) counsel to the Official Committee of Unsecured Creditors of Lawrence and Julie Salander, and (m) any other party that the CRO reasonably believes may assert any claim or interest in any Artworks in the Debtor's possession, custody or control (collectively the "Notice Parties").

21.     In light of the size and complexity of the Debtor's business and the allegations of fraud surrounding the Debtor, potential Art Claimants may exist who are not included in the list of the Notice Parties and whose identity is not now or may never become known to the Debtor.  Accordingly, the Moving Parties believe that it is necessary to provide publication notice of the Art Claims Bar Date to entities whose names and addresses are unknown to the Debtor and it is advisable to provide supplemental notice to all potential Art Claimants.  Therefore, pursuant to Bankruptcy Rules 2002(l),[3] 9007[4] and 9008,[5] the Moving

---

[3]     Bankruptcy Rule 2002(l) provides that "[t]he court may order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."

[4]     Bankruptcy Rule 9007 provides that "the court shall designate… the time within which, the entities to whom, and the form and manner in which notice shall be given."

Parties request authority for the Debtor to publish notice of the Art Claims Bar Date substantially in the form of annexed hereto as <u>Exhibit C</u> (the "Publication Notice") one time, in three of the following national news and trade publications: the New York Times, ARTnews, Maine Antique Digest, the New Criterion and Art in America.  The Moving Parties believe these Publications will be reviewed by the greatest number of parties that are likely to assert Art Claims and that notice in this form and manner satisfies the Debtor's obligations to provide notice to all Art Claimants of the need and opportunity to file an Art Claim.

**C.**      **<u>Assertion of Art Claims</u>**

22.      Under the Protocol, any Art Claimant asserting an Art Claim must (i) file its Art Claim with the Court and (ii) submit its Art Claim to the Debtor by the Art Claims Bar Date or forever be barred from asserting such Art Claim.  Each Art Claim must (a) be made under penalty of perjury, (b) be executed by the Art Claimant or its authorized agent, (c) specifically identify the Artwork at issue by the unique identification number affixed to the Artwork by the CRO, (d) sufficiently describe in detail the nature of the Art Claimant's Art Claim and the factual bases for such assertion, (e) include a copy of any and all agreements, documents, instruments and other writings on which the Art Claim is based, and (f) be accompanied by evidence, if any, that any security interest asserted by the Art Claimant has been perfected.  The Debtor will provide copies of the Art Claims to each of the Committee, the Bank and the Art Representative.

---

(continued)
[5]      Bankruptcy Rule 9008 provides that "[w]henever these rules require or authorize service or notice by publication, the court shall… determine the form and manner thereof, including the newspaper or other medium to be used and the number of publications."

D.    **Evaluation of Claims**

23.    Within ten (10) business days after the Art Claims Bar Date, (i) a representative of the Debtor, (ii) representative(s) of the Committee, (iii) a person not affiliated with the Committee, the Debtor or the Bank proposed by one or more Art Claimants and approved by the Bankruptcy Court to represent the interests of Art Claimants (the "Artist Representative"), and (iv) a representative of the Bank (the "Working Group") shall convene and review the data from the Art Claims filed and submitted to the Debtor.  To the greatest extent possible, the Working Group shall seek to determine on an informal and consensual basis whether each piece of Artwork that is subject to an Art Claim is property of the Debtor's estate pursuant to section 541 of the Bankruptcy Code.

24.    The retention and compensation, if any, of the Artist Representative will be subject to further order(s) of the Court.

25.    No later than ten (10) business days after the Working Group concludes its analysis of the Art Claims, the Debtor shall notify each Art Claimant, via First Class Mail, whether there is or is not an objection to its Art Claim(s) with respect to particular Artwork.  Any Artwork that the Working Group unanimously agrees is not property of the Debtor's estate will be made available for return to the Art Claimant pursuant to the procedures set forth in the Protocol and below.  If any member of the Working Group believes that Artwork is property of the Debtor's estate or subject to the claim or security interest of any other creditor, the basis for such a determination shall be described on the Inventory List and in the objection sent to the Art Claimant.  The Debtor will not release any Artwork that is claimed by two or more Art Claimants absent further order of the Court.

**E.**    **Resolution of Competing Claims**

26.    There shall be a non-binding mediation process (the "Mediation")

implemented as soon as practicable, but in no event more than sixty (60) days after the Art

Claims Bar Date, to resolve any unresolved Art Claims and Artworks listed as Claimed Estate

Assets.  Such mediation process shall include the Debtor, the Committee, the Bank and, with

respect to any particular Artworks to be addressed in any particular Mediation session, the

individual Art Claimant(s) who asserted an Art Claim with respect to such Artworks

(collectively the "Mediation Parties").  Parties may only seek adjudication of their Art Claims

after availing themselves of the Mediation process.  However, nothing in the Protocol shall be

deemed to prevent any Art Claimant from seeking emergency relief from the Court with respect

to its purported rights with respect to any Artwork, including the right to seek to lift the

automatic stay upon a showing of extraordinary cause by the movant.

27.    Once there has been a final determination that the Artwork is not property

of the Debtor's estate, the Art Claimant may retrieve such Artwork in a time and manner to be

reasonably determined by such Art Claimant and the CRO.  The owner of any Artwork that is

not property of the estate shall arrange and be responsible for all tasks, costs and activities

related to removal of the Artwork from the Debtor's possession, custody and control, including,

but not limited to, (a) packing and handling the Artwork, (b) removing the Artwork from the

Debtor's possession, custody, or control, (c) payment of all packing, handling and shipping costs,

and (d) for providing and paying for insurance following removal of such Artwork from the

Debtor's possession, custody or control.

**IV.    Establishing an Art Claims Bar Date**

28.    The Moving Parties anticipate the Debtor will serve and publish the Art

Claims Bar Date Notice within seven (7) days of entry of the order requested pursuant to this

Motion.  Based on that schedule, the Moving Parties propose that each Art Claim must be properly executed, completed, and delivered to the Debtor's counsel in accordance with the terms of the Protocol no later than 5:00 p.m. prevailing Eastern Time on May 9, 2008, which is approximately 75 days after the proposed date for the Debtor to serve the Art Claims Bar Date Notice and publish the Publication Notice.

### V.  <u>Jurisdiction and Venue</u>

29.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b).  Jurisdiction is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

### VI.  <u>Relief Requested</u>

30.     By this Motion, the Movants seek entry of an order, pursuant to sections 105(a), 363 and 541 of the Bankruptcy Code and Bankruptcy Rules 2002(l), 4001, 9007, 9008 and 9019, (i) approving the terms of the Protocol, (ii) establishing the Art Claims Bar Date at 5:00 p.m. prevailing Eastern Time May 9, 2008, (iii) approving notice of the Art Claims Bar Date and (iv) authorizing the mediation process described in the Protocol and above.  For the sake of clarity, the Moving Parties do not request that this Court adjudicate or take jurisdiction over claims between third parties regarding the Artwork.

31.     The Movants respectfully request that the Court establish the Protocol as the sole and exclusive method permitted for the resolution of competing claims to ownership of the Artwork.  The Movants further request that all creditors and parties in interest be prohibited from seeking any other treatment for their individual claims to the Artwork other than as permitted by the Protocol, except upon a showing of extraordinary cause.

## VII.  Discussion

32.     As noted above, prior to the Petition Date, the Debtor was named as a

defendant in numerous lawsuits pending in various jurisdictions across the country.  A common

allegation in those lawsuits involved competing ownership claims to particular pieces of

Artwork.  Indeed, one of the principal reasons underlying the Debtor's bankruptcy filing was to

utilize the bankruptcy process to obtain relief from the pressures of such lawsuits and address the

claims raised therein in a centralized forum through an orderly and fair process rather than

engaging in costly legal battles in numerous jurisdictions.

33.     In order to properly and efficiently administer the estate, the Debtor must

resolve competing claims with respect to the ownership of Artwork, including claims asserted by

alleged consignors and artists that certain of the Artwork held by the Debtor is not property of

the estate within the meaning of Section 541(a) of the Bankruptcy Code.[6]  Given the nature of

these claims, the Moving Parties believe that such competing claims must be resolved at the

earliest possible time.  The Moving Parties respectfully submit that absent an effective process

that enables all parties to address potential competing property rights in the Artwork, the

Debtor's estate will be unable to effectively administer the case and, most importantly, realize

value for its assets for the benefit of the estate's creditors.  The funding under the DIP Facility is

limited in amount and duration, and it is unclear at this time whether a new DIP Facility will be

available upon expiry of the current DIP Facility absent significant increased visibility into the

nature and extent of the Debtor's interest in the Artwork.  As such, it is imperative that the

_____

[6]      Section 541 of the Bankruptcy Code provides, in pertinent part, as follows:

> The commencement of a case under section 301, 302, or 303 of this title
> creates an estate.  Such estate is comprised of all the following property,
> wherever located and by whomever held:  (1)…all legal or equitable
> interests of the debtor in property as of the commencement of the case.

Debtor take immediate affirmative steps to obtain much needed liquidity through asset sales.
The normal claims process is simply not adequate in a case such as this one as the estate does not
have the luxury of time and is faced with potential issues that call into question what is or is not
property of the estate – an impediment to addressing liquidity issues and maximizing assets value
for the benefit of the estate's creditors.

34.     Section 105(a) of the Bankruptcy Code provides that the Court "may issue
any order, process, or judgment that is necessary or appropriate to carry out the provisions of this
title." 11 U.S.C. § 105(a).  The Protocol will further one of the fundamental goals of bankruptcy:
claim identification and resolution.  The Moving Parties submit that the Protocol will enable
them to move the case forward in terms of resolution of disputes and maximization of value in a
way that would not otherwise be possible.  As contemplated, the Protocol will allow the Debtor
to identify and begin to market its assets in approximately three (3) months, as well as resolve
disputed claims within approximately six (6) months.  The Protocol will thus allow the Debtor to
sell Artwork that is free of ownership claims and, thereby fund its chapter 11 case and maximize
the chances of providing a recovery to creditors.

35.     In addition, pursuant to Bankruptcy Rule 9019(b), after notice and a
hearing, the court may authorize the Debtor, as a debtor-in-possession to compromise or settle
controversies without further hearing or notice.  The Protocol provides a mechanism for return of
pieces of Artwork worth less than $250,000 that the Working Group determines are not property
of the Debtor's estate on negative notice.  In addition, the Protocol provides that with respect to
settlements disputed Artwork agreed to be worth less than $250,000 may be sought by omnibus
motion.  This process will minimize the burden and cost on the Debtor, its estate, creditors and
the Court, and provides an efficient method to notify parties in interest of settlements.

- 15 -

36.    Absent the relief requested, both the Debtor and Art Claimants will be forced to expend substantial time and resources, neither of which is in great supply, to address claims to the Artwork in a piecemeal fashion.  Thus, establishing and implementing the Protocol is a sound exercise of the Debtor's business judgment and is necessary and appropriate to carry out the provisions of the Bankruptcy Code and enable the Debtor to effectively administer its estate.  The Moving Parties further believe that the Protocol will give creditors and parties in interest comfort that their claims will be addressed in short order and will thus facilitate consensual resolutions of otherwise extremely contentious claims.

37.    Moreover, the Protocol is designed to avoid unnecessary and costs litigation costs which will ultimately inure to the benefit of the estate and its creditors.  Accordingly, the Debtor and the Committee believe that the Protocol is in the best interests of the Debtor, its estate and creditors.

38.    Accordingly, by this Motion, the Moving Parties seek approval of Protocol, in order to (a) establish procedures for the assertion and resolution of ownership claims to the Artwork held by the Debtor and (b) impose protections and restriction to facilitate the implementation of the Protocol on an efficient and effective basis.  The Protocol seeks to establish an orderly process pursuant to which (a) the Debtor provides actual and constructive notice to all parties in interest who may assert an ownership claim or other interest in the Artwork identified in the inventory of the Artwork undertaken by the CRO; (b) a deadline for the assertion of Art Claims, (c) such Art Claimants will be required to provide documentary proof in support of their ownership claims and/or other interest in Artwork, (d) the estate and other parties in interest will be afforded an opportunity to evaluate any asserted ownership claims and endeavored to reconcile them based upon the Debtor's books and records; and (e) the estate, the

Bank and the parties asserting such ownership claims will submit to mandatory, non-binding

mediation with respect to any disputed ownership claims.

39.    Although the Protocol is unique, the relief sought is not without precedent.

Similar processes, whether formal or informal, have been successfully established and

implemented in bankruptcy cases involving art galleries including In re Berry-Hill Galleries,

Inc., Case no. 05-60170 (REG).  Thus, the Moving Parties respectfully submit that based on such

successful precedent, there is ample support for the relief request.

### VIII.  Notice

40.    Notice of this Application has been given to (i) the United States Trustee,

(ii) all parties entitled to notice under Fed. R. Bankr. P. 2002 and (iii) all known Notice Parties.

In light of the nature of the relief requested, the Moving Parties submit that no further notice is

required.

### IX.  No Prior Request

41.    No previous application for the relief sought herein has been made to this

Court or any other court.

### X.  Waiver of Memorandum of Law

42.    Pursuant to Local Rule 9013-1(b), because there are no novel issues of law

presented herein, the Moving Parties respectfully request that the Court waive the requirement

that the Moving Parties file a memorandum of law in support of this Motion.

**[Remainder of page intentionally left blank.]**

**WHEREFORE**, the Moving Parties respectfully request that the Court (i) enter an order

(a) approving the Protocol, (b) establishing 5:00 p.m. prevailing Eastern Time on May 9, 2008 as

the Art Claims Bar Date and (c) approving notice of the Art Claims Bar Date and (ii) grant any

other or further relief as is just and proper.

Dated: New York, New York      PACHULSKI STANG ZIEHL & JONES LLP
       February 1, 2008

                         */s/ Robert J. Feinstein*_____
                         Robert J. Feinstein (RF-2836)
                         Ilan D. Scharf (IS-3469)
                         780 Third Avenue, 36th Floor
                         New York, New York 10017-2024
                         Telephone:  (212) 561-7700
                         Facsimile:  (212) 561-7777

                         Counsel for the Official Committee
                         of Unsecured Creditors


                         HALPERIN BATTAGLIA RAICHT, LLP


                         */s/ Robert D. Raicht*_____
                         Robert D. Raicht (RR-2370)
                         Walter Benzija (WB-0909)
                         555 Madison Avenue, 9th Floor
                         New York, New York 10022
                         Telephone: (212) 765-9100
                         Facsimile:  (212) 765-0964

                         Counsel for the Debtor and Debtor in Possession


                         WHITE & CASE LLP


                         */s/  J. Christopher Shore*_____
                         J. Christopher Shore (JS-6031)
                         Avi Goldenberg (AG-6978)
                         1155 Avenue of the Americas
                         New York, New York
                         10036-2787
                         Telephone: (212) 819 8200
                         Facsimile:  (212) 354 8113

                         Counsel for First Republic Bank, as DIP Lender

NY/14531