Robert D. Raicht, Esq.  
Walter Benzija, Esq.  
**HALPERIN BATTAGLIA RAICHT, LLP**  
Counsel to the Debtor  
 and Debtor-in-Possession  
555 Madison Avenue - 9th Floor  
New York, New York 10022  
(212) 765-9100  

Hearing Date: May 27, 2008  
Hearing Time: 12:00 p.m.  

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
---------------------------------------------------------x  

In re:  

SALANDER-O'REILLY GALLERIES, LLC,  

               Debtor.  

Chapter 11  
Case No.  07-30005 (CGM)  

---------------------------------------------------------x  

**MOTION OF THE DEBTOR FOR AN ORDER  
PURSUANT TO 11 U.S.C. § 363(b) APPROVING THE  
TERMS OF A LETTER AGREEMENT WITH GURR JOHNS, INC.**

TO THE HONORABLE CECELIA G. MORRIS,  
UNITED STATES BANKRUPTCY JUDGE:

        Salander-O'Reilly Galleries, LLC, the debtor and debtor-in-possession herein (the "Debtor"), by its counsel, Halperin Battaglia Raicht, LLP, submits this motion (the "Motion") for entry of an order, pursuant to section 363(b) of title 11 of the United States Code (the "Bankruptcy Code") approving the terms of a letter agreement with Gurr Johns, Inc.  In support of the Motion, the Debtor respectfully represents:

**JURISDICTION AND VENUE**

        1.     This Court has jurisdiction over this application pursuant to 28 U.S.C. §1334 and the "Standing Order of Referral of Cases to Bankruptcy Judges" for the Southern District of New York, dated July 10, 1984 (Ward, acting C.J.).  This is a core

{00062441.2 / 0607-002}

proceeding pursuant to 28 U.S.C. §157(b). Venue of this proceeding and this application is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought are section 363(b) of the Bankruptcy Code.

## BACKGROUND

2. On November 1, 2007 (the "Petition Date"), an involuntary chapter 7 case was commenced against the Debtor in this District. The case was converted to one under Chapter 11 of the Bankruptcy Code on November 9, 2007. The Debtor has continued in the management and operation of its business and properties as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

3. On November 20, 2007, the Office of the United States Trustee for Region 2 appointed an official committee of unsecured creditors (the "Committee"), which retained the law firm of Pachulski Stang Ziehl & Jones LLP as its counsel.

4. The Debtor has historically been the owner and operator of an art gallery in New York City, exhibiting and managing fine art of the Renaissance period as well as contemporary art, and representing living artists and artists' estates.

5. As of the Petition Date, the Debtor's business is located at a premises located at 22 East 71st Street, New York, New York 10021 (the "Gallery Premises").

6. By orders dated November 15, 2007 and March 3, 2008 (the "Triax Order"), this Court approved the retention of Triax Capital Advisors LLC to provide certain management services to the Debtor and Joseph E. Sarachek (the "CRO") to serve as chief restructuring officer of the Debtor. Mr. Sarachek has assumed complete

{00062441.2 / 0607-002}    2

control of all aspects of the Debtor's business and financial affairs, including unfettered authority to make all managerial and operational decisions on behalf of the Debtor.

7.  The CRO's first order of business was to identify, protect and preserve the Debtor's assets. Since his appointment, the CRO has undertaken a comprehensive inventory of the Debtor's artwork at various locations. To date, the CRO has identified, catalogued and photographed approximately 4,000 pieces of artwork at various locations. There are currently over 3,000 pieces of artwork located at the Gallery Premises.

8.  By motion dated November 9, 2007, the Debtor sought approval of a $1.5 million debtor-in-possession financing facility (the "DIP Motion") through First Republic Bank ("FRB"). FRB asserts perfected senior liens and security interests on substantially all of the Debtor's assets. By orders dated November 16, 2007 and January 3, 2008, the Court approved the DIP Motion on a final basis.

9.  By stipulation and order dated March 14, 2008 (the "Landlord Settlement"), the Debtor, the Committee and FRB, on the one hand, and 20 East 71st Street, LLC (the "Landlord"), the landlord of the Gallery Premises, on the other, entered into a settlement of the Landlord's motion for relief from the automatic stay, together with related relief, pursuant to which the Debtor agreed to vacate the Gallery Premises by April 30, 2008. The Debtor has since vacated the Gallery Premises and the artwork located at the Gallery Premises has been moved to a bonded warehouse.[1]

---

[1] By order dated March 24, 2008, the Debtor was authorized to move the artwork from the Gallery Premises to a bonded warehouse. The Debtor was able to recover the seized books and records pursuant to orders entered by this Court and before the New York Criminal Court.

**THE DEBTOR'S FINE ART INSURANCE**

10.     Prior to the Petition Date, the Debtor's insurance policies, including its fine art insurance, were terminated for non-payment and certain other grounds. Because it asserted a collateral interest in the artwork located at the Gallery Premises, FRB, the Debtor's secured lender, secured a $50 million fine arts policy on behalf of the Debtor in the pre-petition period. The insurance policy was subsequently assigned by FRB to the Debtor's estate.

11.     Following the Petition Date, the insurance carrier requested that the Debtor, through the CRO, provide certain cost information as to each piece of artwork as a condition to continuing insurance coverage on the artwork. Although the CRO was able to provide cost information with respect to the vast majority of the artwork based upon the available information from the books and records,[2] there were approximately 1,300 pieces of artwork without cost information.

12.     In order to comply with the conditions for continued fine art coverage, the Debtor, through the CRO, in consultation with the Committee and FRB, engaged the services of Gurr Johns, Inc. ("GJ"), a fine arts appraiser, to perform a desktop evaluation of approximately 1,300 specified objects (the "Property") of art located at the Gallery Premises (the "Evaluation"). In order to ensure continued insurance coverage, the Evaluation was conducted on an expedited basis without actual review of the Property by GJ and was undertaken solely to satisfy the requirements of the insurance carrier. Because the Evaluation does not reflect, and is not intended to reflect, a valuation of the Property for any other purpose other than satisfy certain conditions for

---

[2] As the Court is aware, the Debtor's books and records had been impounded by the New York County District Attorney's Office prior to the Petition Date.

{00062441.2 / 0607-002}                                4

continued insurance, the Debtor requested that GJ keep the results of the Evaluation in confidence.

13.     However, as a condition to providing the requested services, GJ required that the Debtor enter into a letter agreement containing its customary provisions (the "Letter Agreement"), a copy of which is annexed hereto as Exhibit A. The cost for the Evaluation will be approximately $45,000. The Letter Agreement also includes (a) a limited release in favor of in favor of GJ, its affiliated entities, officers, directors, employees, agents, and each of them from liability or damages arising out of or relating to the Evaluation (The release does not cover willful misconduct or gross negligence based on the standards reasonably applied to fine art appraisers); and (b) an agreement by the Debtor to indemnify and hold the released parties harmless from any claims, including reasonable attorneys' fees, incurred as a result of claims arising from the Evaluation provided by GJ.

14.     Given the Debtor's time table for vacating the Gallery Premises, the CRO required that GJ perform its services in advance of obtaining formal approval of the Letter Agreement. GJ in good faith acceded to the Debtor's requested to undertake the engagement immediately. GJ has since provided the services under the Letter Agreement and has provided the Evaluation to the Debtor's insurance carrier.

### RELIEF REQUESTED

15.     By the Motion, the Debtor seeks entry of an order, pursuant to section 363(b) of title 11 of the Bankruptcy Code approving the terms of the Letter Agreement. Section 363(b) of the Bankruptcy Code provides that a debtor-in-possession,

after notice and a hearing, may use, sell, or lease property of the estate other than in the ordinary course of business. In pertinent part, the section provides:

> (b)(1) The trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

See 11 U.S.C. § 363(b)(1).

16. In order for a court to approve a request for the use of property of the estate outside the ordinary course of business, the court must find that the proposed course of action is supported by sound business reasons. *See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1071 (2nd Cir. 1983); *see also In re Chateaugay Corp.,* 973 F.2d 141 (2d Cir. 1993); *Bartel v. Bar Harbor Airways, Inc.,* 196 B.R. 268, 273 (S.D.N.Y. 1996); *In re Caldor, Inc.- NY,* 193 B.R. 182, 187 (Bankr. S.D.N.Y. 1996); *In re Thomas McKinnon Securities, Inc.,* 120 B.R. 301 (Bankr. S.D.N.Y. 1990). In reviewing such proposed transactions, courts should give substantial deference to the business judgment of the debtor-in-possession. *See e.g., Esposito v. Title Inc. Co. of Pa. (In re Fernwood Mkts.),* 73 B.R. 616, 621 n.2 (Bankr. E.D. Pa. 1987).

17. The Debtor requests that the Court approve the terms of the Letter Agreement. As noted, the Debtor required the Evaluation in order to continue coverage from its insurance carrier. The Debtor's fine arts insurance is necessary to protect and preserve the artwork in the possession, custody and control of the estate. The services provided by GJ conferred a benefit to the estate. The Debtor believes that the proposed release and indemnity provisions in favor of GJ under the Letter Agreement are appropriately narrowly tailored to the services to be rendered under this engagement (the

Evaluation) and, thus, reasonable under the circumstances. The Committee and FRB have reviewed and approved the terms of the Letter Agreement.

18. For all of the foregoing reasons, the Debtor requests that the Court approve the terms of the Letter Agreement.

## NOTICE

19. The Debtor proposes to serve copies of this Motion upon (a) counsel to the Committee; (b) counsel to FRB; (c) any party having filed a Notice of Appearance in this case; and (d) the United States Trustee. The Debtor respectfully submits that no further or other notice need be provided under the circumstances of this case.

## WAIVER OF MEMORANDUM OF LAW

20. Because the relief requested herein does not raise any new or novel legal issues, the Debtor respectfully requests that the requirement of Local Bankruptcy Rule 9013-1(b) for the filing of a separate memorandum of law be waived.

**CONCLUSION**

**WHEREFORE**, the seeks entry of an order, substantially in the form annexed as Exhibit B hereto, for entry of an order, pursuant to section 363(b) of the Bankruptcy Code approving the terms of the Letter Agreement.

Dated: New York, New York
       May 13, 2008

**HALPERIN BATTAGLIA RAICHT, LLP**
Counsel for Debtor and Debtor-in-Possession

By:     */s/ Robert D. Raicht*
        Robert D. Raicht, Esq.
        Walter Benzija, Esq.
        555 Madison Avenue – 9th Floor
        New York, New York 10022
        212-765-9100