UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re:

SALANDER-O'REILLY GALLERIES, LLC,

        Debtor.

Chapter 11
Case No. 07-30005 (cgm)

--------------------------------------------------------x

In re:

LAWRENCE B. SALANDER
and JULIE D. SALANDER
        Debtor.

Chapter 7
Case No. 07-36735 (cgm)

--------------------------------------------------------x

**JOINT MOTION IN SUPPORT OF ENTRY OF AN ORDER
APPROVING COMPROMISE AND SETTLEMENT
REGARDING THE STAIR GALLERIES AUCTION
PROCEEDS PURSUANT TO RULE 9019 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE**

TO THE HONORABLE CECELIA G. MORRIS,
UNITED STATES BANKRUPTCY JUDGE:

      Salander-O'Reilly Galleries, LLC, the debtor and debtor-in-possession herein (the "Debtor"), by its counsel, Halperin Battaglia Raicht, LLP, and Thomas Genova, as Chapter 7 Trustee (the "Salander Trustee") in the chapter 7 case captioned *In re Lawrence B. Salander and Julie D. Salander*, Case No. 07-36735 (cgm) (the "Salander Estate"), by his counsel, McCabe and Mack LLP makes this joint motion (the "Motion") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order approving the Stipulation and Order (the "Stipulation") dated as of June 10, 2009 among the Debtor, the Official Committee of Unsecured Creditors of the Debtor (the "Committee"), First Republic Bank ("FRB") and the Salander Trustee. The Stipulation resolves certain of the competing interests asserting to

the proceeds of an auction conducted by Stair Galleries & Restoration, Inc. ("Stair Galleries") pursuant to an Order of this Court. In support of its Motion, the Debtor and the Salander Trustee respectfully represent, as follows:

## BACKGROUND

1. On November 2, 2007, Lawrence B. Salander and Julie D. Salander (collectively, the "Salanders") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Case No. 07-36735 (cgm) (the "Salander Case").

2. By Motion dated March 7, 2008, the United States Trustee for Region 2 moved to convert or dismiss the Salander Case (the "Conversion Motion").[1]

3. By Order dated April 7, 2008, the Salander Case was converted to a case under Chapter 7 of the Bankruptcy Code and the Salander Trustee was appointed as chapter 7 trustee in the case.

4. On November 1, 2007, an involuntary chapter 7 case was commenced against the Debtor. The case was converted to one under Chapter 11 of the Bankruptcy Code on November 9, 2007. The Debtor has continued in the management and operation of its business and properties as a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

5. On November 20, 2007, the United States Trustee for Region 2 appointed the Committee, which retained the law firm of Pachulski Stang Ziehl & Jones LLP as its counsel and Bridge Associates LLC as its financial advisor and forensic accountant.

---

[1] Numerous parties, including the Committee joined in the Conversion Motion.

6. The Debtor has historically been the owner and operator of an art gallery located at 22 East 71st Street, New York, New York 10021 (the "Gallery Premises").

7. By Orders dated November 15, 2007 and March 3, 2008 (collectively, the "Triax Order"), this Court approved the retention of Triax Capital Advisors LLC to provide certain management services to the Debtor and Joseph E. Sarachek (the "CRO") to serve as chief restructuring officer of the Debtor.

8. The CRO's first order of business was to identify, protect and preserve the Debtor's assets. Since his appointment, the CRO has undertaken a comprehensive inventory of the Debtor's artwork at various locations. To date, the CRO has identified, catalogued and photographed approximately 4,000 pieces of artwork at various locations.

9. The CRO, in consultation with the Committee and FRB, undertook to sell certain non-core assets, including the (a) Debtor's collection of rare and first edition books and other reference materials concerning Renaissance, contemporary art and music, (the "Book Collection");[2] (b) approximately 400 rugs (the "Rugs");[3] and (c) furniture and garden assets.

10. By Order dated April 10, 2008 (the "Stair Retention Order"), the Debtor retained Stair Galleries & Restorations, Inc. ("Stair Galleries") to sell, at auction, certain furniture and garden assets (the "Stair Auction Property"). The auction by Stair

---

[2] The Debtor sold the Book Collection for the sum of $350,000, free and clear of all liens, subject to higher and better offers.

[3] The Debtor retained Tepper Galleries, Inc. ("Tepper") to sell the Rugs, at auction. The auction by Tepper was held on May 30, 2008 and resulted in auction proceeds of approximately $235,000.

Galleries was held on June 7, 2008 and resulted in auction proceeds of approximately $1.3 million (the Stair Auction Proceeds").

11. The proceeds from sale of the Book Collection and the Rugs were used to fund, in part, a settlement with the landlord for the Gallery Premises. Pursuant to the Stair Retention Order, the Stair Auction Proceeds have been held in escrow pending resolution of any competing claims to the Stair Auction Property.

12. Prior to the entry of the Stair Retention Order, Salander Decorative Arts LLC ("SDA"),[4] an entity now under the control of the Salander Trustee,[5] and Renaissance Art Investors, LLP ("RAI") (as to specific pieces only)[6] asserted competing ownership interests and claims in and to the Stair Auction Property. Following entry of the Stair Retention Order, Donald S. Dowden ("Dowden"), the father of Julie Salander, asserted a "beneficial interest" in SDA and/or the Stair Auction Property based upon an alleged payment of $400,000 to SDA.[7] By letter dated May 30, 2008 filed with the Court, Dowden requested that the Court cancel the auction. By Order dated June 3, 2008, the Court overruled the objection and directed that the auction could proceed as scheduled. Additionally, FRB asserts perfected liens and security interests in and to the personal property and other assets of (a) the Debtor, (b) the Salander Estate, and (c) SDA, including the Stair Auction Property.

---

[4] The Salander Estate includes, among other things, the Salanders' ownership interests in SDA, which constitute 100% of the ownership interest of SDA. The Operating Agreement of Salander Decorative Arts, LLC, a New York Limited Liability Company, lists Julie Salander and Larry Salander as its sole members.

[5] As a result of his appointment in the chapter 7 case captioned *In re Lawrence B. Salander and Julie D. Salander*, Case No. 07-36735 (cgm), the Salander Trustee succeeds to the individual debtors' interest in SDA.

[6] RAI asserted potential ownership interests in the Stair Auction Property bearing Triax #'s 5174, 5175 and 5185. The Debtor, the Committee and FRB reserve their right to contest such asserted ownership interests.

[7] Dowden asserts that he acquired 20% of the Stair Auction Property in exchange for the alleged $400,000 payment.

13. By this Motion, the Debtor and the Salander Trustee are seeking approval of a settlement of certain of the competing claims to the Stair Auction Proceeds pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. If approved, after payment of the monetary settlements and maintenance of other amounts to be continued to be held in reserve, the Debtor, the Committee and FRB propose to use up to $1,000,000 of the Stair Auction Proceeds to fund the administration of the Chapter 11 case through confirmation of a plan in this case. A request to use a portion of the funds to pay for the costs of the administration in the Debtor's Chapter 11 case is being made by separate motion.

### THE TERMS OF THE SETTLEMENT

14. The parties have engaged in arms' length negotiations in an effort to resolve the competing interests to the Stair Auction Proceeds. The Stipulation settles certain of the competing interest and leaves others unaffected by its terms. At the same, the settlement frees up a source of funding to enable the estate to be administered through the confirmation of a plan in this case.

15. The salient terms of the Stipulation are summarized below, and a copy of the Stipulation is attached to this Motion as Exhibit A. The summary provided herein is not intended as a statement of all of the terms of the Stipulation, and parties are referred to the Stipulation itself for a complete statement of its terms.

16. The Stipulation provides as follows:

   a. Within five (5) business days following the Effective Date, the Debtor shall pay the sum of $125,000 to the Salander Trustee from the Stair Auction Proceeds in full and final settlement of the claims of SDA and the Salander Estate in and to the Stair Auction Proceeds, *provided, however*, that the funds shall remain subject to the liens and security interests asserted by FRB in SDA's assets;

b. The Debtor will continue to hold, and shall not disburse, the sum of $29,900, representing the proceeds from the sale of the property to which RAI asserted a potential ownership interest;[8]

c. Promptly following the approval of the Stipulation, the Debtor will deposit up to $1,000,000 of the Stair Auction Proceeds in a debtor-in-possession account to fund the costs of the administration of the Debtor's Chapter 11 case through confirmation of a plan in the Debtor's Chapter 11 case (the "Case Funding"). The Case Funding will constitute a consented to use of cash collateral by FRB, subject to entry of an Order by the Bankruptcy Court extending the terms of the Final DIP Order; and

d. The Debtor will deposit the balance of the Stair Auction Proceeds into a debtor-in-possession "confirmation account" to be held, subject to further Order of the Bankruptcy Court, to fund, in part, a post-confirmation litigation trust to be established upon the confirmation of a plan in the Debtor's Chapter 11 case.

17. It is submitted that this settlement is in the best interests of the estates as well as their creditors, as there is significant risk and expense attendant to litigation of the asserted competing interests to the Stair Auction Proceeds. Indeed, there are a multitude of issues concerning such ownership rights and, even if the estate prevails on many of them, there is risk that the time frame required to address the various disputed issues would place the prospect of confirmation of a plan in the Debtor's case in serious jeopardy. Significantly, the settlement provides a much needed funding source to enable the Debtor's estate to be administered in Chapter 11 and to seek conformation of a plan in the near future.

## JURISDICTION

18. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Standing Order of Referral of Cases to Bankruptcy

---

[8] As noted above, RAI's asserted potential ownership interests is limited to Triax #'s 5174, 5175 and 5185 and the Debtor, the Committee and FRB reserve their right to contest such asserted ownership interests.

Court Judges of the District Court for the Southern District of New York. Consideration of this matter is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought is Bankruptcy Rule 9019(a).

## DISCUSSION

19. Compromises and settlements are a normal part of the bankruptcy process, whether in the context of an adversary proceeding or in the principal case. *See Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968), *reh'g denied,* 391 U.S. 909 (1968). The structure and provisions of the Bankruptcy Code promote negotiation and settlement for the benefit of creditors in accordance with "the policy of the law generally [which is] to encourage settlements." *In re Jackson Brewing Co,* 624 F.2d 599 (5th Cir. 1980). Resolution of claims and issues through settlement furthers the goal of bankruptcy administration to liquidate estate assets as rapidly as possible "consistent with obtaining the best of fruitless litigation." *In re Carla Leather, Inc.* 44 B.R. 457, 471 (Bankr. S.D.N.Y. 1984), *aff'd* 50 B.R. 764 (S.D.N.Y 1985).

20. Bankruptcy Rule 9019(a) permits this Court to approve settlements. The Rule provides:

> (a) On motion by the trustee and after notice and a hearing the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Neither Bankruptcy Rule 9019 nor any section of the Bankruptcy Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval. However, the standards for approval of settlements in bankruptcy cases are well

established by case law and focus on whether the proposed settlement is reasonable and in the best interests of creditors.

**(a) The Standard of Review**

21. In *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, *reh'g denied*, 391 U.S. 909 (1968), the Supreme Court concluded that the trial court must make an informed, independent judgment as to whether a settlement is fair and equitable stating:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all the facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expenses and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*Id.,* 309 U.S. 424 (citations omitted).

22. The United States Court of Appeals for the Second Circuit has stated that the responsibility of the judge is "not to decide the numerous questions of law and fact raised by appellants, but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983), *cert denied sub. nom. Cossoff v. Rodman,* 464 U.S. 822. *See In re Masters, Inc.,* 149 B.R. 289, 292 (E.D.N.Y. Dec 18, 1992); *In re Crowthers McCall Pattern, Inc.,* 120 B.R. 279, 287 (Bankr. S.D.N.Y 1990); *In re Carla Leather, Inc.,* 44 B.R. 457, 470 (Bankr. S.D.N.Y 1984), *aff'd,* 50 B.R. 764 (S.D.N.Y. 1984). The assessment of a settlement only requires identification of the issues in controversy "so that the bounds of reasonableness can be seen with some clarity." *Carla Leather,* 44 B.R. at 470.

23. In considering a proposed settlement, the court is guided by a lenient standard consistent with the theory that little would be saved by the settlement process if bankruptcy courts had to conduct an exhaustive investigation and determination of the underlying claims in order to approve a settlement. In *In re Thomas Van Riper, Inc.*, 1999 WL 184111 (E.D.N.Y. 1999), the Court held that the "reviewing court need not decide the numerous questions of law and fact raised by appellants but rather canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Id* at *3 (internal citations omitted).

24. In evaluating the propriety of a settlement, a court need not conduct a trial or even a "mini-trial" on the merits to resolve the exact factual and legal issues raised by the settlement. Rather, the court must simply consider whether against the background of those issues, the settlement is reasonable. *See Newman v. Stein,* 464 F.2d 689,692 (2d Cir. 1972), *cert denied sub nom. Benson v. Newman,* 409 U.S. 1039 (1972). *See generally In re WorldCom, Inc.,* 347 B.R. 123 (Bankr. S.D.N.Y. 2006); *In re International Distribution Centers Inc.,* 103 B.R. 420, 423 (S.D.N.Y. 1991); *In re Drexel Burnham Lambert Group, Inc.,* 134 B.R. 493 (Bankr. S.D.N.Y. 1991) (hereinafter "Drexel I"). In so doing, the court may consider the settlement in the context of its familiarity with the history of the case, the complexity of the claims alleged, the parties, and the context in which the claims and the settlement arose. *See Anderson,* 390 U.S. at 444; *International Distribution Centers,* 103 B.R. at 423.

25. The settlement evaluation process is not designed to substitute the court's judgment for that of the trustee or the debtor. *Carla Leather*, 44 B.R. at 465. While a court is not expected to "rubber stamp" a proposed settlement, *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), the court should give considerable weight to a trustee's or debtor's informed judgment that a compromise is fair and

equitable. *Anderson*, 390 U.S. at 444; *International Distribution Centers*, 103 B.R. at 423; *Drexel I*, 134 B.R. at 496; *Carla Leather*, 44 B.R. at 472. As articulated by the district court in *International Distribution Centers*, the court should give weight to the support of not only the trustee but of other counsel to a settlement in determining the wisdom of the compromise. *Id.* at 423. Therefore, a court should consider both the proponents' opinions and independently evaluate the arguments for and against the settlement to determine whether the settlement should be approved.

26. In deciding whether a settlement should be approved, courts in the Second Circuit have reviewed proposed settlements based upon a consideration of some or all of the following factors:

(i) the relative benefits to be received by creditors under the proposed settlement;

(ii) the likelihood of success in the litigation compared to the present and future benefits offered by the proposed settlement;

(iii) the prospect of complex and protracted litigation if settlement is not approved;

(iv) the attendant expense, inconvenience and delay of litigation;

(v) the competency and experience of counsel who support the proposed settlement;

(vi) the extent to which the settlement is the product of arm's length bargaining, and not the product of fraud or collusion; and

(vii) the nature and breadth of any releases to be issued as a result of the proposed settlement.

*See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974); *In re Ionosphere Clubs, Inc.,* 156 B.R. 414, 427 (S.D.N.Y. 1993): *Purofied Down Products,* 150 B.R. at 522; *International Distribution Centers,* 103 B.R. at 422; *In re Fugazy,* 150 B.R. 103, 106 (Bankr. S.D.N.Y. 1993); *Drexel I,* 134 B.R. at 497; *In re Drexel Burnham Lambert Group, Inc.,* 134 B.R. 499, 506 (Bankr. S.D.N.Y. 1991); *Crowthers McCall,* 120 B.R. at

287; *Texaco,* 84 B.R. at 901; *In re Lion Capital Group, Inc.,* 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985); *Carla Leather,* 44 B.R. at 466. *Marshall,* 33 B.R. at 43; *In re W.T. Grant Co.,* 4 B.R. 53, 69 (Bankr. S.D.N.Y.), *aff'd* 20 B.R. 186 (S.D.N.Y. 1982), *aff'd,* 699 F.2d 599 (2d Cir. 1983), *cert. denied sub nom. Cosoff v. Rodman,* 464 U.S. 822 (1983). *See also In re Jackson Brewing Co.,* 624 F.2d 599, 602 (5th Cir. 1980); *Drexel v. Loomis,* 35 F.2d 800, 808 (8th Cir. 1929). See 10 COLLIER ON BANKRUPTCY, ¶9019.02 at p. 9019-3 (15th Ed. Revised 2005).

**(b) The Stipulation Satisfies the Standards Set Forth in this Circuit and Should be Approved**

27. The Stipulation amply satisfies the standards discussed above. The Debtor's records reflect that the vast majority of the Stair Auction Property was purchased and paid for by the Debtor out of an auction in London in or about 2005.[9] The records do not reflect that the Stair Auction Property was thereafter transferred to SDA or, significantly, that SDA gave any consideration to the Debtor in exchange for any purported transfer of the property. As such, the Debtor believes that its estate holds legal title to the Stair Auction Property.

28. In any event, the litigation of the competing claims between the estates would involve a potential trial over the events and surrounding circumstances of which neither the Debtor, through the CRO, nor the Salander Trustee have personal knowledge. As such, the time and expense necessary to address these potential asserted claims are believed to be fairly quantified in the proposed settlement of the claim.

---

[9] Annexed as Exhibit B are documents obtained from the Debtor's books and records regarding its acquisition of the Stair Auction Property.

29. Even were SDA to establish an ownership interest, FRB asserts perfected liens and security interest in SDA's assets.[10] Consequently, the Stipulation provides that the $125,000 to be paid to the Salander Trustee will remain subject to the liens and security interests asserted by FRB in SDA's assets. For these reasons, it is submitted that the proposed settlement is reasonable and appropriate under the circumstances.

30. The settlement does not address the competing claims asserted by RAI with respect to 3 pieces of property sold by Stair at the auction. However, the proceeds from the sale of those 3 pieces aggregate $29,900. The Debtor will continue to hold the funds so that RAI's asserted rights will be unaffected by the proposed settlement.

31. The settlement will make possible a continued administration of the Debtor's case in Chapter 11. As this Court is well aware, the Debtor's estate has been without funding since November 2008. The Debtor, the Committee and FRB have negotiated the terms of an agreement, in principle, which will resolve disputed issues between the Committee and FRB through the confirmation of a consensual plan in the Debtor's Chapter 11 case. The settlement proposes to dedicate up to $1,000,000 of the Stair Auction Proceeds to bring current accrued unpaid obligations of the Debtor's estate and provide a source of funding to enable the parties to confirm a plan in the Debtor's Chapter 11 case.

**(c) Any Objection to Approval of the Stipulation by Dowden Should be Overruled**

32. Notice of the Motion is being provided to Dowden with the recognition that he may oppose approval of the Stipulation. However, it is submitted that

---

[10] Annexed as Exhibit C are documents evidencing FRB's security interest in the assets of SDA.

his asserted claims to the Stair Auction Property are without merit and any objection filed by him should be overruled.

33. As noted above, after entry of the Stair Retention Order, Dowden asserted, albeit informally, a "beneficial interest" in SDA and/or the Stair Auction Property based upon his alleged payment of $400,000 to SDA. As previously stated, (a) the Debtor paid for the Stair Auction Property, (b) no records reflect a transfer of the Stair Auction Property by the Debtor to SDA, and (c) no consideration was given by SDA to the Debtor in exchange for any such alleged transfer. Thus, Dowden's alleged payment of $400,000 to SDA does not, and cannot, give rise to an interest in the Stair Auction Property.

34. In any event, FRB asserts perfected liens and security interest in SDA's assets. Even were title to the subject property held by SDA and Dowden was able to establish a direct investment in such property, such unperfected interest would be junior to FRB's senior liens in the Stair Auction Property. Any objection to the Motion by Dowden should be overruled.[11]

35. For all of the reasons stated herein, and based upon the record in these cases, the Debtor and the Salander Trustee submit that the Stipulation falls well within the range of reasonableness contemplated by Bankruptcy Rule 9019 and the attendant case law, and should be approved.

## NOTICE

36. The Debtor and the Salander Trustee propose to serve copies of this Motion upon (a) the Parties (as defined in the proposed Stipulation) or their counsel, (b)

---

[11] If the Court determines that Dowden is able to assert a *prima facie* claim against the Debtor's estate, the parties are prepared to escrow 20% of the Stair Auction Proceeds pending a determination on the merits of such claim.

Dowden, (c) counsel to RAI; (d) the debtors in the Salander Estate, (e) any party having filed a Notice of Appearance in the Debtor's case and the Salander Case; and (f) the United States Trustee. It is respectfully submitted that no further or other notice need be provided under the circumstances.

### WAIVER OF MEMORANDUM OF LAW

37. Pursuant to Local Bankruptcy Rule 9013-1(b), because there are no novel issues of law presented herein, the Debtor and the Salander Trustee respectfully request that the Court waive the requirement that a memorandum of law accompany this Motion.

**WHEREFORE**, the Debtor and the Salander Trustee respectfully request that the Court (a) approve the Stipulation; and (b) grant such other and further relief as may be just and proper.

Dated: New York, New York
       June 10, 2009

           **HALPERIN BATTAGLIA RAICHT, LLP**
           Counsel for Debtor and Debtor-in-Possession

           By: /s/ Robert D. Raicht
               Robert D. Raicht, Esq.
               Walter Benzija, Esq.
               555 Madison Avenue – 9th Floor
               New York, New York 10022
               212-765-9100

Dated: Poughkeepsie, New York
       June 10, 2009

           **MCCABE & MACK LLP**
           Counsel for Thomas Genova, as Chapter 7 Trustee

           By: /s/ Lance Portman
               Lance Portman, Esq.
               63 Washington Street
               Post Office Box 509
               Poughkeepsie, NY 12602-0509
               845- 486-6872