**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | : |
| | : |
| SALANDER-O'REILLY GALLERIES, LLC, | : Case No. 07-30005 (CGM) |
| | : |
| Debtor. | : Chapter 11 |
| | : |
| | : |

## ~~MODIFIED~~ THIRD AMENDED JOINT PLAN OF LIQUIDATION PROPOSED BY SALANDER-O'REILLY GALLERIES, LLC, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND FIRST REPUBLIC BANK

HALPERIN BATTAGLIA RAICHT, LLP
Alan Halperin, Esquire
Robert D. Raicht, Esquire
Walter Benzija, Esquire
555 Madison Avenue, 9th Floor
New York, NY 10022
(212) 765-9100

Counsel for Salander-O'Reilly
Galleries, LLC

PACHULSKI STANG ZIEHL & JONES LLP
Robert J. Feinstein, Esquire
Ilan D. Scharf, Esquire
780 Third Avenue, 36th Floor
New York, New York 10017
(212) 561-7700

Counsel for the Official Committee of
Unsecured Creditors

WHITE & CASE LLP
Alan Gover, Esquire
J. Christopher Shore, Esquire
Avi Goldenberg, Esquire
1155 Avenue of the Americas
New York, New York 10036
(212) 819-8200

Counsel for First Republic Bank, a division
of Bank of America, N.A.

Dated: New York, New York
       January ~~11,~~13, 2010

# TABLE OF CONTENTS

Page

I. DEFINITIONS .................................................................................................................. 2

II. RULES OF INTERPRETATION ................................................................................... 15

III. PLAN OBJECTIVES...................................................................................................... 16

IV. METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS; GENERAL
PROVISIONS ................................................................................................................ 16

    A.      General Rules of Classification ............................................................................ 16
    B.      Holder of Claims Entitled to Vote ...................................................................... 17
    C.      Acceptances by Impaired Classes......................................................................... 17
    D.      Non-Consensual Confirmation ............................................................................ 17
    E.      Administrative Claims, Priority Tax Claims, and Fee Claims........................... 17

V. TREATMENT OF CLAIMS AND INTERESTS ................................................................ 18

    A.      Allowance of Unclassified Claims (Administrative Claims, Priority Tax
             Claims, and Professional Fee Claims) ................................................................. 18
    B.      Allowed Administrative Expense Claims............................................................ 19
             1.      Allowed Professional Fee Claims........................................................... 19
             2.      Allowed Priority Tax Claims................................................................... 19
    C.      Treatment of Unclassified Claims (Administrative and Priority Tax
             Claims)................................................................................................................. 20
             1.      Administrative Expense Claims (including DIP Facility Claims
                   and Allowed Professional Fee Claims).................................................. 20
             2.      Priority Tax Claims................................................................................... 21
    D.      Classification and Treatment of FRB Secured Claim (Class 1) .......................... 21
    E.      Classification and Treatment of Other Secured Claims (Class 2) ...................... 23
    F.      Classification and Treatment of Other Priority Claims (Class 3)........................ 24
    G.      Classification of General Unsecured Claims (Class 4)........................................ 25
    H.      Classification and Treatment of Interests (Class 5) ............................................ 27
             1.      Membership Interests (Class 5) ............................................................... 27
    I.      No Effect on Art Claims ....................................................................................... 27

VI. ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE
OR MORE CLASSES OF CLAIMS OR INTERESTS ................................................. 27

    A.      Impaired Classes to Vote ...................................................................................... 27
    B.      Holders of Administrative Expense Claims and Priority Claims ........................ 27
    C.      Acceptance by Class of Creditors ........................................................................ 28
    D.      Cramdown............................................................................................................. 28

VII. MEANS FOR IMPLEMENTATION OF THE PLAN ...................................................... 28

    A.      The SOG Liquidation Trust .................................................................................. 28
             1.      Formation of the SOG Liquidation Trust............................................... 28

|   | 2. | Federal Income Tax Treatment of the SOG Liquidation Trust for the SOG Liquidation Trust Assets | 30 |
|---|----|----|----|
|   | 3. | SOG Liquidation Trust Assets Treated as Owned by Holders of Allowed Claims | 31 |
|   | 4. | Tax Reporting | 31 |
|   | 5. | Termination of SOG Liquidation Trust | 33 |
|   | 6. | Vesting and Transfer of Assets to the SOG Liquidation Trust | 34 |
|   | 7. | Appointment of the Liquidation Trustee | 34 |
|   | 8. | Powers and Authority of Liquidation Trustee | 35 |
| B. | Termination of the CRO | | 38 |
| C. | Liquidation Trustee | | 38 |
|   | 1. | Identity | 38 |
|   | 2. | Responsibilities of Liquidation Trustee | 38 |
|   | 3. | Powers and Authority of Liquidation Trustee | 39 |
|   | 4. | Retention and Compensation of Professionals | 42 |
|   | 5. | Compensation of Liquidation Trustee | 42 |
|   | 6. | Liquidation Trustee and Professional Compensation Procedures | 43 |
|   | 7. | Removal of Liquidation Trustee | 44 |
|   | 8. | Successor Liquidation Trustee | 44 |
|   | 9. | Termination | 44 |
|   | 10. | Records | 45 |
|   | 11. | The Oversight Committee | 45 |
|   | 12. | Liability of the Liquidation Trustee | 46 |
|   | 13. | Indemnification | 46 |
| D. | The Source of Distributions | | 48 |
| E. | Provision for Treatment of Disputed Claims | | 48 |
| F. | Distribution of Property Under the Plan | | 49 |
|   | 1. | Manner of Cash Payments | 49 |
|   | 2. | Setoff and Recoupment | 49 |
|   | 3. | No *De Minimis* Distributions | 49 |
|   | 4. | No Distributions With Respect to Disputed Claims | 50 |
|   | 5. | Undeliverable, Unclaimed Non-Negotiated Distributions | 50 |
|   | 6. | Contemporaneous Distributions | 51 |

**VIII. LITIGATION** ... 51

| A. | Preservation of Causes of Action | 51 |
|---|----|----|

**IX. EXCULPATION AND RELEASE** ... 54

| A. | Limitation of Liability in Connection with the Chapter 11 Case, the Plan, Disclosure Statement and Related Documents | | 54 |
|---|----|----|----|
| B. | Release of Debtor's Claims Against the Bank, the Creditors' Committee and Members of the Creditors' Committee | | 55 |
|   | 1. | Debtor's Release | 55 |
|   | 2. | Third Party Release | 56 |
|   | 3. | Injunction | 58 |
|   | 4. | Releases and Injunction Pursuant to the RAI Settlement Agreement | 60 |

X. OTHER PLAN PROVISIONS ............................................................................................ 62

    A.     The Effective Date ................................................................................. 62
    B.     Termination of Creditors' Committee ................................................... 63
    C.     Executory Contracts and Unexpired Leases ......................................... 63
          1.      Rejection of Executory Contracts and Unexpired Leases ...................... 63
          2.      Bar Date for Rejection Damage Claims .................................... 64
    D.     Entry of a Final Decree ......................................................................... 64
    E.     United States Trustee Fees and Reports ................................................ 64
    F.     Post-Effective Date Effect of Evidences of Claims ............................. 65
    G.     Cancellation of Interests ....................................................................... 65
    H.     Nondischarge of the Debtor .................................................................. 65
    I.      No Recourse ........................................................................................... 65
    J.      No Admissions ...................................................................................... 66
    K.     Revocation of the Plan .......................................................................... 66
    L.     Severability of Plan Provisions ............................................................ 66
    M.     Governing Law ..................................................................................... 67
    N.     Retention of Jurisdiction ....................................................................... 67
    O.     Successors and Assigns ......................................................................... 69
    P.     Saturday, Sunday, or Legal Holiday ..................................................... 69

XI. CONFIRMATION ....................................................................................................... 69

    A.     Plan Modification .................................................................................. 69
    B.     Nonconsensual Confirmation ................................................................ 69

XII. RECOMMENDATIONS AND CONCLUSION ............................................................. 70

3

Exhibit 1      SOG Liquidation Trust Agreement

Exhibit 2      RAI Settlement Agreement

3

Salander-O'Reilly Galleries, LLC, the Official Committee of Unsecured Creditors of Salander-O'Reilly Galleries, LLC and First Republic Bank, a division of Bank of America, N.A. hereby propose the following Third Amended Plan of Liquidation for the Debtor (the "Plan")[1] pursuant to section 1121(a) of the "Bankruptcy Code".  The Plan Proponents are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the Disclosure Statement for this Plan for a discussion of the Debtor's history, businesses, assets, the Chapter 11 Case, risk factors, summary and analysis of the Plan, and certain other related matters.

Subject to the restrictions or modifications set forth in section 1127 of the Bankruptcy Code and those restrictions on modification set forth in Article of XI of the Plan, the Plan Proponents reserve the right to amend, alter or modify the Plan one or more times before its substantial consummation.

---

[1] Capitalized terms not defined in this introductory section are as defined in Article I herein.

# I.

## DEFINITIONS

The following terms (which appear in this Plan as capitalized terms), when used in this Plan, have the meanings set forth below:

**"Administrative Bar Date"** means the date set by the Bankruptcy Court whereby all parties, other than Professionals and the Bank, asserting outstanding Administrative Expense Claims incurred since the Commencement Date must timely file a claim or forever be barred for asserting any such claims.

**"Administrative Expense Claim"** means any Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(1) of the Bankruptcy Code, including, without limitation, all of the Debtor's obligations under the DIP Facility, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation or reimbursement of expenses allowed by the Bankruptcy Court under Section 330 or 503 of the Bankruptcy Code, including without limitation all amounts awarded under Section 503(b)(3) and (4) of the Bankruptcy Code based upon a substantial contribution to the Chapter 11 Case.

**"Administrative Expense Claims Fund"** means Cash sufficient to pay (a) the Allowed Professional Fee Claims Amount, (b) Allowed Administrative Claims, and (c) the Allowed DIP Facility Claim.

**"Administrative Tax Claim"** means a Claim that is not an Allowed Secured Claim and that a government unit asserts against the Debtor either for taxes or for related interest or penalties for any tax period that, in whole or in part, falls within the period beginning on the Petition Date and ending on the Effective Date.

**"Allowed Administrative Expense Claim"** means an Administrative Expense Claim that is allowed as set forth in Article V.A.

**"Allowed Claim or Allowed Interest"** means, with respect to any Claim or Interest or portion thereof (i) for which proof thereof was filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Bankruptcy Rule 3003(c)(3), and as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, shall have been interposed within the applicable limitations period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, (ii) for which no proof thereof was filed, to the extent that such Claim has been listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent, (iii) which arises from the recovery of property under section 550 or 553 of the Bankruptcy Code, (iv) which is allowed under the Plan, (v) which is allowed as set forth in any contract, instrument or agreement entered into or assumed by the Debtor in connection with this Plan, or (vi) which is allowed by a Final Order; provided, however, that Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" hereunder. Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Claim" or "Allowed Claim" shall not, for any purpose under this Plan, include interest on such Administrative Claim or Claim from and after the Petition Date.

**"Allowed Class '**' Claim"** means an Allowed Claim in the particular class described.

**"Allowed DIP Facility Claim"** means the sum of all outstanding amounts due to the Bank under the DIP Facility (including without limitation (a) principal, (b) interest, (c) legal fees of the Bank incurred in connection with the DIP Facility up to the amount of $2.0 million, and (d) documented expenses of the Bank incurred in connection with the preservation of its collateral).

**"Allowed Professional Fee Claim Amount"** shall mean the aggregate amount of any Allowed Professional Fee Claim less 10%.

**"Allowed Secured Claim"** means an Allowed Claim to the extent it is a secured claim.

**"Artwork"** means works of art and fine art, including but not limited to, paintings, drawings, sculptures, reliefs, furniture, decorative art, tapestries, etchings, pictures, statues,

photographs, frescoes, murals, prints, manuscripts, antiques, bronzes, glassware, sculptures, and other works of art.

**"Assets"** means (i) any and all real or personal property of the Debtor of any nature, including, without limitation, any Cash, Artwork, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, works in process, accounts receivable, tax refunds, chattel paper, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Causes of Action, and any other general intangibles of any nature whatsoever, including the "property of the estate" pursuant to section 541 of the Bankruptcy Code; and (ii) proceeds, products, rents and profits of any and all of the foregoing.

**"Available Cash"** means all Cash held by the SOG Liquidation Trust on and after the Effective Date after appropriate provision is made for the Plan Reserves. Available Cash shall not include the Cash in any of the Plan Reserve Accounts.

**"Avoidance Action"** means any claim or right under Bankruptcy Code sections 542, 543, 544, 547, 548, 549, 550, 551, 552, and 553; all fraudulent-conveyance and fraudulent-transfer laws; all non-bankruptcy laws vesting in creditors rights to avoid, rescind, or recover on account of transfers, including but not limited to, claims relating to illegal dividends or distributions; all preference laws; the Uniform Fraudulent Transfer Act (as it may have been codified in any particular Jurisdiction); the Uniform Fraudulent Conveyance Act; all similar laws and statutes; and the New York Debtor & Creditor Law.

**"Ballot"** means the Ballot for accepting or rejecting the Plan.

**"Ballot Date"** means the date set by the Bankruptcy Court by which all Ballots with respect to the Plan must be received.

**"Bank" or "FRB"** means First Republic Bank, a division of Bank of America, N.A., as successor in interest to Merrill Lynch Bank & Trust Co., FSB.

**"Bank Residual Fund"** means Cash in the amount of $3,000,000.

**"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

**"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Southern District of New York, or such other court having jurisdiction over the Chapter 11 Case or any proceeding within, or appeal an order entered in the Chapter 11 Case.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as amended from time to time, promulgated by the United States Supreme Court pursuant to 28 U.S.C. § 2075.

**"Bankruptcy Schedules"** means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor, as the same may have been amended from time to time.

**"Bar Date Order"** means the Order of the Bankruptcy Court establishing the Claims Bar Date.

**"Beneficiaries"** means holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims and holders of Allowed Claims in Classes 1, 2, 3 and 4 entitled to receive distributions under the Plan.

**"Business Day"** means any day other than a Saturday, Sunday or a legal holiday (as defined in Bankruptcy Rule 9006(a)) or day on which banks are required or authorized by law to be closed in the City of New York.

**"Cash"** means legal tender of the United States of America and Cash equivalents, including, but not limited to, bank deposits, checks or other similar items.

**"Causes of Action"** means any and all claims, demands, rights, actions, causes of action and suits of the Debtor or the Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, matured or unmatured, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity or under any other theory of law, of the Debtor or the Debtor's Estate, including but not limited to (1) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law; (2) the right to object to claims or interests; (3) claims pursuant to section 362 of the Bankruptcy Code; (4) such claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all Avoidance Actions; (6) claims for tax refunds; (7) any other

claims which may be asserted against third parties or Insiders and; (8) any claim that the debts of any party are not dischargeable as to the Debtor pursuant to section 523 of the Bankruptcy Code.

**"Chapter 11 Case"** means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the United States Bankruptcy Court for the Southern District of New York and bearing Case Number 07-30005 (CGM).

**"Claim"** means a claim as that term is defined in Bankruptcy Code section 101(5). A Claim does not include an Art Claim (as defined in the Protocol).

**"Claims Bar Date"** means August 15, 2008, which was the last date for filing Claims against the Estate pursuant to the Court's Order entered on June 17, 2008.

**"Class"** means a group of Claims or Interests as classified in Article V.

"**Confirmation**" means the entry of an Order by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

**"Confirmation Hearing"** means the hearing regarding Plan confirmation.

**"Confirmation Hearing Date"** means the first date on which the Bankruptcy Court holds the Confirmation Hearing.

**"Confirmation Order"** means the Bankruptcy Court order confirming this Plan under Bankruptcy Code section 1129.

**"Consenting General Unsecured Claim"** means any General Unsecured Claim which is held by a Holder that has voted in favor of the Plan and consented to the Release.

**"Creditor"** has the meaning ascribed to the term in section 101(10) of the Bankruptcy Code.

**"Creditors' Committee"** means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Case.

**"CRO"** means Joseph E. Sarachek, the Debtor's Chief Restructuring Officer.

6

**"Debtor"** means Salander-O'Reilly Galleries, LLC, a New York limited liability company.

**"DIP Facility"** means the financing provided to the Debtor by the Bank pursuant to the DIP Financing Order.

"**DIP Facility/Administrative Claims Fund**" means an amount sufficient to repay the Allowed DIP Facility Claim and all Allowed Administrative Claims.

**"DIP Financing Order"** means the Order Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 105 and Fed. R. Bankr. P. 4001 and 6004 Granting Final Approval of Debtor in Possession Financing and Use of Cash Collateral, dated January 3, 2008, as amended from time to time.

**"Disallowed Claim"** means (i) a Claim, or any portion thereof, that has been disallowed by a Final Order; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law.

**"Disclosure Statement"** means the Disclosure Statement Relating to the Joint Plan of Liquidation Proposed by Salander-O'Reilly Galleries, LLC, the Official Committee of Unsecured Creditors and First Republic Park dated as of the date hereof, as it may be amended.

"**Disclosure Statement Order**" means the Order entered by the Bankruptcy Court approving the Disclosure Statement.

**"Disputed Claim or Interest"** means a Claim or Interest:

      (a)      As to which a proof of claim is filed or is deemed filed under Bankruptcy Rule 3003(b)(1) or a proof of interest was filed or deemed filed under Bankruptcy Rule 3003(b)(2); and

(b)    As to which an objection: (1) has been timely filed; and (2) has neither been overruled nor been denied by a Final Order and has not been withdrawn.

**"Distribution"** means any transfer under the Plan of Cash or other property or instruments to either a Holder of an Administrative Expense Claim or a Holder of an Allowed Claim.

**"Effective Date"** has the meaning set forth in Article X.A of the Plan.

**"Estate"** means the bankruptcy estate created in the Chapter 11 Case under Bankruptcy Code section 541.

**"Final Order"** means an order or judgment of a court of competent jurisdiction entered on such court's official docket:

(a)    That has not been reversed, rescinded, stayed, modified, or amended;

(b)    That is in full force and effect; and

(c)    With respect to which: (1) the time to appeal or to seek review, remand, rehearing, or a *writ of certiorari* has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or *writ of certiorari* is pending; or (2) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a *writ of certiorari* was sought.

**"FRB Secured Claim"** means the Claim of the Bank in respect of the pre-petition loans extended by the Bank to the Debtor secured by substantially all of the Debtor's Assets.

**"FRH"** means F.R. Holdings, Inc.

**"FRH Equity Interest"** means the capital investment in RAI owned by FRH as a Class A Member, as defined in the RAI Transaction Documents.

**"General Unsecured Claim"** means a Claim that is not an Administrative Expense Claim, a Priority Tax Claim, a Priority Claim, or a Secured Claim asserted against the Estate.

8

**"Governmental Unit"** has the meaning set forth in section 101(27) of the Bankruptcy Code.

**"Governmental Unit Claims Bar Date"** means the date set by the Bankruptcy Court whereby all Governmental Units must assert outstanding claims by Governmental Units or forever be barred from asserting such claims.

**"Holder"** means the holder of a Claim against or Interest in the Debtor.

**"Insider"** means an insider as that term is defined in Bankruptcy Code section 101(31).

**"Interest"** means the interest, as that term is defined in Bankruptcy Code section 101(17), of any Person who holds an equity security in a Debtor no matter how held, including, but not limited to, issued and outstanding shares of common stock, preferred stock, stock options, warrants, membership interests, or other evidence of interests in securities of the Debtor.

**"Interest Holder"** means a holder of an Interest.

**"Lien"** means any charge against on interest in property to secure payment or performance of a Claim, debt or obligation.

**"Liquidation Trustee"** means the Liquidation Trustee, or any successor Liquidation Trustee, who is appointed as trustee of the SOG Liquidation Trust pursuant to the terms of the Plan. The Liquidation Trustee's specific responsibilities are set forth in Article VII.C of this Plan and the SOG Liquidation Trust Agreement annexed to this Plan as Exhibit 1.

**"Local Rules"** means the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, as now in effect or hereafter amended and applicable to the Chapter 11 Case.

**"OMP"** means Old Masters Properties, LLC.

**"Other Priority Claim"** means a Priority Claim other than a Priority Tax Claim.

**"Oversight Committee"** means the committee Persons established pursuant to Article VII of this Plan to oversee the Liquidation Trustee's performance of his duties and otherwise serve the functions described in this Plan.

**"Oversight Committee Members Fee"** means the sum of $1,000 per month, or any other amount reasonably agreed upon unanimously by the Oversight Committee and the Liquidation Trustee; provided, however, that any sum in excess of $1,000 per month shall be upon notice to the Post-Confirmation Service List.

**"Person"** has the meaning set forth in section 101(41) of the Bankruptcy Code.

**"Petition Date"** means November 1, 2007.

**"Plan"** means this *Third Amended Joint Plan of Liquidation Proposed by Salander-O'Reilly Galleries, LLC, the Official Committee of Unsecured Creditors and First Republic Bank,* as it may be amended by unanimous consent of the Plan Proponents from time to time.

**"Plan Proponents"** means the Debtor, the Creditors' Committee and the Bank.

**"Plan Reserve Accounts"** means all accounts to be established by the SOG Liquidation Trust through the Liquidation Trustee to hold the various Plan Reserves as the Liquidation Trustee deems appropriate, subject to approval of the Oversight Committee.

**"Plan Reserves"** means all reserves of assets of the SOG Liquidation Trust to be established by the Liquidation Trustee on the Effective Date (or as soon as reasonably practicable thereafter) including, but not limited to, the Post-Effective Date Trust Expense Reserve, the Professional Fee Claim Reserve, and reserves for payment of Disputed Administrative Expenses Claims, Disputed Priority Tax Claims, Disputed Other Priority Claims and Disputed General Unsecured Claims as of the date of any contemplated distribution.

**"Post-Confirmation Litigation"** means all claims reserved under Article VIII, including, but not limited to: (a) Causes of Action; (b) any rights to object to, settle, compromise, or resolve Claims or Interests and (c) any rights of equitable subordination or disallowance.

**"Post-Confirmation Service List"** means the Office of the United States Trustee, the Bank, holders of allowed and unpaid Administrative Expense Claims and Priority Claims and any other party in interest in the Case that specifically requests in writing that the Liquidation Trustee add such party's name to the list.

**"Post-Effective Date Trust Expense Reserve"** means a reserve from the assets of the SOG Liquidation Trust established by, and at the discretion of, the Liquidation Trustee in consultation with the Oversight Committee, to pay any and all Trust Expenses including, without limitation, professional fees of the SOG Liquidation Trust, quarterly fees payable to the United States Trustee, and premiums to purchase the Liquidation Trustee's bond, likely to arise after the Effective Date.

**"Post-petition"** means the time after the Petition Date.

"**Preservation Expenses"** means any expenses incurred by the Bank as a cost of preserving the value of any collateral securing the DIP Facility and/or the Bank's Secured Claim.

**"Priority Claims"** means claims that are referred to in sections 507(a)(3), (4), (5), (6), and (7) of the Bankruptcy Code which are required to be placed in classes.

**"Priority Tax Claim"** means a Claim entitled to priority against the Estate under Bankruptcy Code section 507(a)(8).

**"Priority Claim Payment Amount"** means the aggregate payments made by the SOG Liquidation Trust on account of Allowed Priority Tax Claims and Allowed Other Priority Claims.

**"Priority Claim Payment Fund"** means the funds available to pay Allowed Priority Tax Claims and Allowed Other Priority Claims after the establishment of appropriate Plan Reserve Accounts (for, among other things, the Post-Effective Date Expense Reserve, Disputed Priority Tax Claims and Disputed Other Priority Claims)

**"Pro Rata"** means proportionately so that the ratio of (a) the amount of consideration distributed on account of an Allowed Claim to (b) the amount of the Allowed Claim is the same as the ratio of (x) the amount of consideration available for distribution on account of all Allowed Claims in the Class in which that Allowed Claim is included to (y) the amount of all Allowed Claims in that Class.

**"Professionals"** means the professionals (attorneys, accountants, appraisers, financial advisors, etc.) employed by the Debtor or the Creditors' Committee at the expense of the Estate pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code.

**"Professional Fee Claim"** means a Claim under Bankruptcy Code sections 326, 327, 328, 330, 331, 503(b), or 1103 for compensation for services rendered or expenses incurred by any of the Professionals prior to the Effective Date.

"**Protocol"** means the Protocol for Assertion and Resolution of Claims of Ownership to Artwork in the Possession, Custody or Control of the Debtor approved by an order of the Bankruptcy Court entered on March 11, 2008.

**"RAI"** means Renaissance Art Investors, LLC.

**"RAI Claim"** means any Claim filed by RAI against the Debtor.

**"RAI Group"** means RAI, OMP, SGI and TSM, collectively..

**"RAI Indebtedness"** means that certain $15 million in financing provided by the Bank to the RAI Group in connection with RAI's Acquisition of OMP and OMP's subsequent purchases of Renaissance Art.

**"RAI Settlement Agreement"** means the settlement agreement between and among the RAI Group, the Debtor and the Committee attached to this Plan as Exhibit 2 and made a part hereof.

**"RAI Transaction"** means the transaction between OMP and the Debtor pursuant to which, among other things, OMP purported to purchase all of the Renaissance Art in the Debtor's possession as of January 1, 2006 and consigned such Renaissance Art to the Debtor for sale.

**"RAI Transaction Documents"** means the documents pursuant to which the RAI Transaction was consummated, including the Operating Agreement of Renaissance Art Investors executed as of January 1, 2006 and the Consignment Agreement between the Debtor and RAI as of January 1, 2006.

"**Related Parties**" means with respect to any Person, all of such person or entity's subsidiaries, partnerships, management companies, current or former corporations, staff, shareholders, legal representatives, attorneys, insurers, heirs, executors, administrators, partners, guarantors, investors, trustees, parents, subsidiaries, successors, assigns, managers, affiliates, employees, members, contractors, consultants, agents, officers and directors, all and each in their respective personal and corporate capacities.

"**Rejection Damage Claim**" means a Claim for rent, other obligations, or damages arising under an unexpired real-property or personal-property lease or executory contract that the Debtor rejects under Bankruptcy Code section 365 or pursuant to the terms of this Plan.

"**Renaissance Art**" means any "old master" paintings, drawings, sculptures, reliefs, tapestries and other objects of art created in Europe during or after the 12th century A.D. by artists born or in prior to the year 1725.

"**Residual Fund Amount**" means the sum of Cash available to fund both the Unsecured Creditors Residual Fund and the Bank Residual Fund.

"**Schedules**" means the schedules of assets and liabilities and Statement of Financial Affairs of the Debtor filed pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, including any supplements or amendments thereto through the Confirmation Date.

"**Schupak Group Claim**" means any Claims asserted by SGI against the Debtor.

"**Secured Claim**" means, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is secured by a valid, perfected and unavoidable lien against property in which the Estate has an interest or that is subject to setoff under Bankruptcy Code section 553. A Claim is a Secured Claim only to the extent of the value of the claimholder's interest in the collateral securing the Claim or to the extent of the amount subject to setoff, whichever is applicable, and as determined under Bankruptcy Code section 506(a).

"**SGI**" means The Schupak Group, Inc.

**"SOG Liquidation Trust"** means the Salander-O'Reilly Galleries, LLC Liquidation Trust described in Article VII of the Plan that will succeed to all of the assets and liabilities of the Debtor and the Estate as of the Effective Date.

**"SOG Liquidation Trust Agreement"** means the agreement annexed hereto as <u>Exhibit 1</u> establishing and delineating the terms and conditions of the SOG Liquidation Trust.

"**Trust Assets"** means all assets vested in the SOG Liquidation Trust pursuant to Article VII of the Plan, including without limitation all Assets of the Estate.

**"Trust Expenses"** means the expenses incurred by the SOG Liquidation Trust following the Effective Date (including the fees and costs of attorneys and other professionals) for the purpose of (i) prosecuting or otherwise attempting to collect or realize upon the Causes of Action; (ii) selling or collecting upon any of the Trust Assets (including Artwork) or otherwise incurred following the Effective Date in connection with generating Available Cash; (iii) resolving Disputed Claims and effectuating distributions to Creditors under the Plan; or (iv) otherwise implementing the Plan and closing the Chapter 11 Case, including, but not limited to post-Effective Date taxes (such as for income in the Plan Reserve Accounts) and wind-down expenses (such as document storage). Trust Expenses shall also include reimbursement of the reasonable out-of-pocket expenses of the members of the Oversight Committee, the reasonable fees of legal counsel engaged under Article VII to advise the Oversight Committee with respect to the performance of its duties under Article VII.C.

**"TSM"** means Triple S Management LLC.

**"Unclaimed Property"** means any Cash or other property which is unclaimed for one hundred and eighty days after the Distribution.

"**Unsecured Creditors Fund"** means $2.5 million less the Priority Claim Payment Amount.

**"Unsecured Creditors Residual Fund"** a dollar amount equal to the Priority Claim Payment Amount.

**"U.S. Trustee"** means the Office of the United States Trustee.

# II.

## RULES OF INTERPRETATION

1.      The rules of construction in Bankruptcy Code section 102 apply to this Plan to the extent not inconsistent with any other provision in this Article II.

2.      Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) applies when computing any time period under the Plan.

3.      A term that is used in this Plan and that is not defined in this Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

4.      The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code, the Bankruptcy Rules or the Disclosure Statement.

5.      Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

6.      Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms. No material change to the form or terms may be made after the Confirmation Date without the consent of any party materially affected.

7.      Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

8.      Unless otherwise indicated, the phrase "under the Plan" and the words "herein" and "hereto" and similar words or phrases refer to this Plan in its entirety rather than to only a particular portion of the Plan.

9.      Unless otherwise specified, all references to articles, sections, clauses or exhibits are references to this Plan's articles, sections, clauses or exhibits.

10.      Section captions and headings are used only as convenient references and do not affect the Plan's meaning.

15

3

### III.

### PLAN OBJECTIVES

The Plan provides for the establishment on the Effective Date of the SOG Liquidation Trust for the purpose of (a) administering and monetizing the Assets of the SOG Liquidation Trust, including by the sale of Artwork and pursuit of Causes of Action, (b) resolving all Claims, and (c) making all Distributions provided for under the Plan. The SOG Liquidation Trust shall be under the direction and control of the Liquidation Trustee, as trustee of the SOG Liquidation Trust. The Liquidation Trustee shall be subject to the oversight of the Oversight Committee. On the Effective Date, all of the Estate's Assets, which are principally the Artwork and the Causes of Action, shall vest in the SOG Liquidation Trust. The Plan contemplates the monetization of these Assets and the distribution of the net proceeds thereof to creditors in order of their priority as prescribed by this Plan in satisfaction of the Debtor's obligations hereunder.

### IV.

### METHOD OF CLASSIFICATION OF CLAIMS
### AND INTERESTS; GENERAL PROVISIONS

#### A.  General Rules of Classification

The Plan divides creditors and holders of Interests into Classes based on their legal rights and interests, and provides for the satisfaction of Claims and Interests from the remaining Assets in the Estate. This Section classifies Claims and Interests, except for Administrative Expense Claims, Priority Tax Claims, and Professional Fee Claims, which are not classified, for all purposes, including voting, confirmation, and distributions under the Plan. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description. To the extent that part of the Claim or Interest falls within a different Class description, the Claim or Interest is classified in that different Class.

A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the

description of such different Class. A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

**B.      Holder of Claims Entitled to Vote**

Each holder of an Allowed Claim and each holder of a Claim that has been temporarily allowed for voting purposes by order under Bankruptcy Rule 3018(a), which Claim is in an Impaired Class of Claims, shall be entitled to vote separately to accept or reject the Plan as provided by the Solicitation Procedures Order. Any Unimpaired Class of Claims shall be deemed to have accepted the Plan.

**C.      Acceptances by Impaired Classes**

An Impaired Class of Claims shall have accepted the Plan if all of the necessary conditions of the Bankruptcy Code and the Bankruptcy Rules have been satisfied.

**D.      Non-Consensual Confirmation**

To the extent necessary, the Proponents hereby request that the Bankruptcy Court confirm the Plan in accordance with Bankruptcy Code Section 1129(b). Subject to Bankruptcy Code Section 1127 and the terms of this Plan, the Proponents reserve the right to modify the Plan to the extent that confirm pursuant to Bankruptcy Code Section 1129(b) requires modifications, provided such modifications are consistent with Section XI of the Plan and the applicable provisions of the Bankruptcy Code.

**E.      Administrative Claims, Priority Tax Claims, and Fee Claims**

Administrative Claims, Priority Tax Claims, and Professional Fee Claims have not been classified and are excluded from the Classes set forth in Section V of the Plan in accordance with Bankruptcy Code Section 1123(a)(1).

3

**V.**

**TREATMENT OF CLAIMS AND INTERESTS**

The following table summarizes the classification and treatment of the Classes of Claims and Interests under this Plan.

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|---|---|---|---|
| Class 1 | FRB Secured Claim | Impaired | Voting |
| Class 2 | Other Secured Claims | Impaired | Voting |
| Class 3 | Other Priority Claims | Impaired | Voting |
| Class 4 | General Unsecured Claims | Impaired | Voting |
| Class 5 | Membership Interests | Impaired | Deemed to Reject |

The treatment in this Plan is in full and complete satisfaction of all of the legal, contractual, and equitable rights that each Holder of an Allowed Claim or an Allowed Interest may have in or against the Debtor or its property. This treatment supersedes and replaces any agreements or rights those Holders have in or against the Debtor or its property. All distributions under the Plan will be tendered to the entity holding the Allowed Claim. **EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.**

A. **Allowance of Unclassified Claims (Administrative Claims, Priority Tax Claims, and Professional Fee Claims)**

Entities that hold Administrative Expense Claims and that do not timely file and serve a motion or application seeking payment in accordance with this Article V will be forever barred from asserting those Administrative Expense Claims against the Debtor, its Estate or the SOG Liquidation Trust.

3

B.    **Allowed Administrative Expense Claims**

To be eligible to receive distributions under the Plan on account of an Administrative Expense Claim (other than a Professional Fee Claim, the DIP Facility Claim or statutory fees due to the United States Trustee) that is not otherwise allowed by the Plan, a proof of Administrative Expense Claim must be filed with the Bankruptcy Court so as to be received on or before the Administrative Claims Bar Date, or such other date as may be agreed to by the SOG Liquidation Trust.  Any holder of an Administrative Claim that does not assert such Claim in accordance with this Article V shall have its Claim be deemed Disallowed under this Plan and be forever barred from asserting such Claim against any of the Estate, the SOG Liquidation Trust, or any of their Assets or property.  Any such Claim shall be Disallowed and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

1.    **Allowed Professional Fee Claims**

A Professional Fee Claim for the period from the Petition Date through the Effective Date for services rendered on behalf of the Debtor's Estate will be allowed only if (a) the Professional requesting compensation files and serves a properly noticed fee application by no later than forty-five (45) days after the Effective Date; and (b) the Bankruptcy Court allows the Claim pursuant to a Final Order.

2.    **Allowed Priority Tax Claims**

To be eligible to receive distributions under the Plan on account of a Priority Tax Claim, a proof of Claim must be filed with the Bankruptcy Court so as to be received on or before the Governmental Unit Claims Bar Date, or such other date as may be agreed to by the SOG Liquidation Trust.  Any holder of a Priority Tax Claim that does not assert such Claim in accordance with Article V of the Plan shall have its Claim be deemed Disallowed under this Plan and be forever barred from asserting such Claim against the Estate, the SOG Liquidation Trust, or any of their Assets or property.  Any such Claim shall be Disallowed and the holder thereof

19

shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

### C. Treatment of Unclassified Claims (Administrative and Priority Tax Claims)

#### 1. Administrative Expense Claims (including DIP Facility Claims and Allowed Professional Fee Claims)

On the later to occur of (i) the Effective Date (or as soon as reasonably practicable thereafter) (ii) the date on which such Claim shall become an Allowed Administrative Expense Claim, and (iii) the date that Allowed Priority Tax Claims and Allowed Other Priority Claims have been paid in full or appropriate Plan Reserve Accounts have been established therefor by the SOG Liquidation Trust and the Unsecured Creditors Fund has been fully funded, the Liquidation Trustee on behalf of the SOG Liquidation Trust shall (a) pay to each Holder of an Allowed Administrative Expense Claim its Pro Rata share of the DIP Facility/Administrative Claims Fund or (b) satisfy and discharge such Administrative Expense Claim in accordance with such other and less favorable terms as may be agreed upon by and between the Holder thereof and the Liquidation Trustee, subject to the consent of the Oversight Committee. After the Effective Date and as often as reasonable in the Liquidation Trustee's discretion (in consultation with the Oversight Committee), after the establishment or maintenance of appropriate Plan Reserve Accounts, the Liquidation Trustee on behalf of the SOG Liquidation Trust shall make additional periodic Cash distributions to Holders of Allowed Administrative Expense Claims from Available Cash on a Pro Rata basis until the earlier of the date that (i) such Claims are paid in full and (ii) all Estate assets have been exhausted. The failure to object to confirmation of this Plan by a Holder of an Administrative Expense Claim shall be deemed to be such Holder's agreement to receive treatment for such Claim that is different from that set forth in 11 U.S.C. § 1129(a)(9).

#### 2. Priority Tax Claims

On the later to occur of (i) the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the date on which such Claim shall become an Allowed Claim, the

Liquidation Trustee on behalf of the SOG Liquidation Trust shall either (in his sole option and discretion):

(a) (a)   pay to each Holder of an Allowed Priority Tax Claim a Pro Rata portion of the Priority Claim Payment Fund, after the establishment of appropriate Plan Reserve Accounts (for, among other things, the Post-Effective Date Trust Expense Reserve, Disputed Priority Tax Claims and Disputed Other Priority Claims), at that time, and thereafter make Cash payments as set forth in the next sentence; or

(b) (b)   satisfy and discharge such Allowed Priority Tax Claim in accordance with such other and less favorable terms as may be agreed upon by and between the Holder thereof and the Liquidation Trustee, subject to the consent of the Oversight Committee.

Subject to the terms of the next paragraph, after the Effective Date and after the establishment or maintenance of appropriate Plan Reserve Accounts (as discussed below), the Liquidation Trustee on behalf of the SOG Liquidation Trust shall make additional Cash distributions to Holders of Allowed Priority Tax Claims from Available Cash on a Pro Rata basis, along with Holders of Allowed Other Priority Claims, from the Priority Claims Payment Fund until the earlier of the date that (i) such Claims are paid in full and (ii) all Estate assets have been exhausted.

If and to the extent Allowed Priority Tax Claims are not paid in full as of the Effective Date, such Claims shall accrue interest from and after the Effective Date at the rate established pursuant to 28 U.S.C. § 1961. lower of (a) the statutory rate that a Holder of an Allowed Priority Tax Claim is entitled to receive on account of such Claim and (b) six percent (6%).

The Liquidation Trustee shall have sole discretion and authority to establish appropriate Plan Reserve Accounts (for the Post-Effective Date Trust Expense Reserve, Disputed Priority Tax Claims and Disputed Other Priority Claims) with the first in accordance with paragraph (a) above) with (a) the first $250,000 of Cash transferred by the Debtor to the SOG Liquidation Trust upon the Effective Date and (b) the next $500,000 of Cash (the "Initial Trust Proceeds")

received by and for the benefit of the SOG Liquidation Trust after the Effective Date (the "Initial Trust Proceeds"). Until the Allowed Priority Tax Claims are paid in full (or appropriate reserves are established therefor), the Initial Trust Proceeds ~~shall~~may be used to fund expenses of the SOG Liquidation Trust in accordance with the ~~budget attached as Exhibit A to the Liquidation Trust Agreement. The~~Reserve Funding Guidelines attached as Exhibit 3 hereto. The Reserve Funding Guidelines provide guidelines regarding the use of Cash by the SOG Liquidation Trust until such time that Allowed Priority Tax Claims are paid in full (or appropriate reserves have been established therefor), and are not intended to serve as a budget for the Liquidation Trust. Any fees or expenses described in a particular line item may accrue at an amount greater than proscribed in the line item. The Reserve Funding Guidelines shall be subject to the following conditions: (a) Cash not allocated to one line item of expenses during a given month may be allocated to a different line item of expenses during the same month; (b) Cash allocated but not used during a given month may be allocated to any line item in another month; (c) nothing in the Reserve Funding Guidelines shall limit the rights of the SOG Liquidation Trust to pay any accrued and unpaid fees or expenses after Priority Tax Claims are paid in full (or appropriate reserves have been established therefor), including any accrued and unpaid fees and expenses that were in excess of the amounts allowable under the Reserve Funding Guidelines.

After receipt by the SOG Liquidation Trust of the Initial Trust Proceeds, the SOG Liquidation Trustee shall apply at least 70% of Cash received by and for the benefit of the SOG Liquidation Trust ~~in addition to the Initial Trust Proceeds~~ to satisfy and discharge Allowed Priority Tax Claims. The SOG Liquidation Trust shall make disbursements on account of Allowed Priority Tax Claims on a quarterly basis and otherwise as pursuant to the terms of the Liquidation Trust Agreement or pursuant to further order of this Court.

Except in the case of the Internal Revenue Service and the New York State Department of Taxation and Finance, the failure to object to confirmation of this Plan by a Holder of a Priority Tax Claim shall be deemed to be such Holder's agreement to receive treatment for such Claim that is different from that set forth in 11 U.S.C. § 1129(a)(9).

### D.     Classification and Treatment of FRB Secured Claim (Class 1)

**Classification:** Class 1 consists of the FRB Secured Claim

**Treatment:** Subject to the terms herein and the establishment of appropriate Plan Reserve Accounts, the Bank will receive on account of its FRB Secured Claim:

(1) a Pro Rata share of the Residual Fund Amount based on the proportion of the Residual Fund Amount attributable to the Bank Residual Fund until such time as the Bank Residual Fund is fully funded, after such time that (a) appropriate Plan Reserve Accounts (for, among other things, the Post-Effective Date Trust Expense Reserve, Disputed Priority Tax Claims, Disputed Other Priority Claims, Disputed Other Secured Claims , Disputed Administrative Expense Claims and Disputed Professional Fee Claims) have been established by the SOG Liquidation Trust (b) Allowed Priority Tax Claims and Allowed Other Priority Claims have been paid in full or appropriate Plan Reserve Accounts therefor have been established by the SOG Liquidation Trust, (c) the Unsecured Creditors Fund has been fully funded and (d) the Administrative Expense Claims Fund has been fully funded; and

(2) 60% of any Available Cash, after such time that (a) appropriate Plan Reserve Accounts (for, among other things, the Post-Effective Date Trust Expense Reserve, Disputed Priority Tax Claims, Disputed Other Priority Claims, Disputed Other Secured Claims , Disputed Administrative Expense Claims and Disputed Professional Fee Claims) have been established by the SOG Liquidation Trust, (b) the Post-Effective Date Trust Expense Reserve is funded, (c) Allowed Priority Tax Claims and Allowed Other Priority Claims have been paid in full or appropriate Plan Reserve Accounts therefor have been established by the SOG Liquidation Trust, (d) the Unsecured Creditors Fund has been fully funded (e) the Administrative Expense Claims Fund has been fully funded, (e) the Unsecured Creditors Residual Fund has been fully funded and (f) the Bank Residual Fund has been fully funded.

The Bank shall also have the right to credit bid at any auction or sale of the Debtor's assets, which successful bid will result in a reduction of the FRB Secured Claim by the amount of the successful bid; provided, however, that any credit bid by the Bank shall be at least in an

23

amount that is low pre-auction estimate for the piece of Artwork subject to the credit bid; provided further, however, that if there is no pre auction estimate for the piece of Artwork subject to the credit bid, then the credit bid shall be in an amount that is the estimated fair market value of the piece of Artwork subject to the credit bid.  After the Effective Date and as often as reasonable in the Liquidation Trustee's discretion (in consultation with the Oversight Committee), after the establishment or maintenance of appropriate Plan Reserve Accounts, the Liquidation Trustee on behalf of the SOG Liquidation Trust shall make periodic Cash distributions to the Bank on account of its FRB Secured Claim from Available Cash until the earlier of the date that (i) the FRB Secured Claim (less any amounts credited towards the purchase of any Asset) is paid in full and (ii) all Estate Assets have been exhausted.  The Plan Proponents estimate that the amount of the Allowed FRB Secured Claim will be $29,680,244. Further, upon the Effective Date, in partial consideration for the distributions it is receiving under the Plan, FRB or FRH, as the case may be, shall be deemed to convey to the Debtor all of its claims, liens and security interests arising under the RAI Indebtedness and the FRH Equity Interest, which in turn shall be conveyed to the SOG Liquidation Trust upon the Effective Date.

E.      **Classification and Treatment of Other Secured Claims (Class 2)**

**Classification:**  Class 2 consists of all Other Secured Claims.

**Treatment:**  Each holder of an Allowed Class 2 Other Secured Claim shall be deemed a separate subclass of Class 2.  On the Effective Date (or as soon as reasonably practicable thereafter), each Person holding an Allowed Class 2 Claim will receive, at the election of the Liquidation Trustee in consultation with the Oversight Committee, one of the following treatments in full satisfaction of its Allowed Class 2 Claim:

(1)      The Liquidation Trustee will convey to the entity holding the Claim the collateral in which that entity has a security interest; or

(2)      The Liquidation Trustee will pay to the entity holding the Claim any net proceeds actually received from the sale or disposition of the collateral in

which that entity has a security interest up to the amount of any such claim; or

(3)     The Liquidation Trustee will pay to the entity holding the Claim cash in the amount of that entity's Allowed Class 2 Claim; or

(4)     Such other distributions or treatment as are necessary to leave the rights of the Holder of an Allowed Class 2 Claim unimpaired or as are necessary to otherwise satisfy the requirements of Chapter 11 of the Bankruptcy Code; or

(5)     Such other and less favorable distributions or treatments as may be agreed upon by and between the entity holding the claim and the Liquidation Trustee, subject to the consent of the Oversight Committee.

If and to the extent a Holder of an Allowed Class 2 Claim is entitled to interest pursuant to section 506(b) of the Bankruptcy Code, such interest shall be payable to such Claimant pursuant to a further order of the Bankruptcy Court. Nothing herein shall limit the rights of a Holder of an Allowed Class 2 Claim under section 1129(b)(2)(A) of the Bankruptcy Code. The Liquidation Trustee may, in his discretion and after consultation with the Oversight Committee, select which of these treatments or any combination thereof each Person holding an Allowed Class 2 Claim will receive. Subject to any agreement between the Liquidation Trustee and the Holder of such Claim or further order of the Court, the Liquidation Trustee shall have one hundred twenty (120) days after a holder of an Allowed Class 2 Claim has its claim Allowed by the Bankruptcy Courtthe Effective Date to (a) elect which treatment to provide to such holder of an Allowed Class 2 Claim and (b) object to allowance of any Class 2 Claim. Nothing herein shall be construed as stripping a valid, enforceable lien from any collateral for a Class 2 Claim. Any valid, enforceable lien of a Class 2 Claimant shall attach to the proceeds, if any, of a sale of the collateral for such Claimant's Class 2 Claim.

F.     **Classification and Treatment of Other Priority Claims (Class 3)**

**Classification:** Class 3 consists of all Priority Claims other than Priority Tax Claims.

**Treatment** On the later to occur of (i) the Effective Date (or as soon as reasonably practicable thereafter), (ii) the date on which such Claim shall become an Allowed Claim, the Liquidation Trustee on behalf of the SOG Liquidation Trust shall either (in his sole option and discretion):

(a) ~~(c)~~ pay to each Holder of an Allowed Other Priority Claim a Pro Rata portion of the Priority Claim Payment Fund, after the establishment of appropriate Plan Reserve Accounts (for, among other things, the Post-Effective Date Trust Expense Reserve , Disputed Priority Tax Claims and Disputed Other Priority Claims), at that time, and thereafter make Cash payments as set forth in the next sentence; or

(b) ~~(d)~~ satisfy and discharge such Allowed Other Priority Claim in accordance with such other and less favorable terms as may be agreed upon by and between the Holder thereof and the Liquidation Trustee, subject to the consent of the Oversight Committee.

After the Effective Date and as often as reasonable in the Liquidation Trustee's discretion (in consultation with the Oversight Committee), and after the establishment or maintenance of appropriate Plan Reserve Accounts, the Liquidation Trustee on behalf of the SOG Liquidation Trust shall make additional Cash distributions to Holders of Allowed Other Priority Claims from Available Cash on a Pro Rata basis, along with Holders of Allowed Other Priority Claims, from the Priority Claims Payment Fund until the earlier of the date that (i) such Claims are paid in full and (ii) all Estate assets have been exhausted.  The failure to object to confirmation of this Plan by a Holder of an Other Priority Claim shall be deemed to be such Holder's agreement to receive treatment for such Claim that is different from that set forth in 11 U.S.C. § 1129(a)(9).

### G.   Classification of General Unsecured Claims (Class 4)

**Classification:**  Class 4 consists of all General Unsecured Claims.

**Treatment:** Subject to the terms herein and the establishment or maintenance of appropriate Plan Reserve Accounts, each Holder of an Allowed Consenting General Unsecured Claim will receive its Pro Rata share of:

(1) the Unsecured Creditors Fund, after such time that (a) appropriate Plan Reserve Accounts (for, among other things, the Post-Effective Date Trust Expense Reserve, Disputed Priority Tax Claims, Disputed Other Priority Claims, Disputed Other Secured Claims and Disputed General Unsecured Claims) have been established by the SOG Liquidation Trust and (b) Allowed Priority Tax Claims and Allowed Other Priority Claims have been paid in full or appropriate Plan Reserve Accounts therefor have been established by the SOG Liquidation Trust; and

(2) a Pro Rata share of the Residual Fund Amount based on the proportion of the Residual Fund Amount attributable to the Unsecured Creditors Residual Fund until such time as the Unsecured Creditors Residual Fund is fully funded, after such time that (a) appropriate Plan Reserve Accounts (for, among other things, the Post-Effective Date Trust Expense Reserve, Disputed Priority Tax Claims, Disputed Other Priority Claims, Disputed Other Secured Claims , Disputed Administrative Expense Claims, Disputed Professional Fee Claims and Disputed General Unsecured Claims) have been established by the SOG Liquidation Trust, (b) Allowed Priority Tax Claims and Allowed Other Priority Claims have been paid in full or appropriate Plan Reserve Accounts therefor have been established by the SOG Liquidation Trust and (c) the Administrative Expense Claims Fund has been fully funded; and

(3) 40% of any Available Cash, after such time that (a) appropriate Plan Reserve Accounts (for, among other things, the Post-Effective Date Trust Expense Reserve, Disputed Priority Tax Claims, Disputed Other Priority Claims, Disputed Other Secured Claims , Disputed Administrative Expense Claims, Disputed Professional Fee Claims and Disputed General Unsecured Claims) have been established by the SOG Liquidation Trust, (b) Allowed Priority Tax Claims and Allowed Other Priority Claims have been paid in full or appropriate Plan Reserve Accounts therefor have been established by the SOG Liquidation Trust, (c) the

Unsecured Creditors Fund has been fully funded (d) the Administrative Expense Claims Fund has been fully funded, (e) the Unsecured Creditors Residual Fund has been fully funded and (f) the Bank Residual Fund has been fully funded.

After the Effective Date and as often as reasonable in the Liquidation Trustee's discretion (in consultation with the Oversight Committee), the Liquidation Trustee on behalf of the SOG Liquidation Trust shall make periodic Cash distributions to each Holder of an Allowed Consenting General Unsecured Claim on account of its Allowed General Unsecured Claim from Available Cash until the earlier of the date that (i) such Claims are paid in full and (ii) all Estate assets have been exhausted. After the FRB Secured Claim and the Allowed General Unsecured Claims of all Holders of Allowed Consenting General Unsecured Claim have been paid in full, each Holder of an Allowed General Unsecured Claim that is not a Consenting General Unsecured Claim shall be paid a Pro Rata share of Available Cash.

### H. Classification and Treatment of Interests (Class 5)

#### 1. Membership Interests (Class 5)

**Classification:** Class 5 consists of all Membership Interests.

**Treatment:** Class 5 Membership Interests will receive and retain no value under the Plan, and all Class 5 Membership Interests will be vested with the SOG Liquidation Trust.

### I. No Effect on Art Claims

Nothing in this Plan shall affect the rights of an Art Claimant with respect to its Art Claim(s) (each as defined in the Protocol). The rights of Art Claimants on account of their Art Claims shall not be altered by the terms of this Plan, and such Art Claims shall not be satisfied by treatment of Claims held by such Art Claimants under the terms of the Plan.

# VI.

## ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS

### A.      Impaired Classes to Vote

Each Holder of a Claim or Interest in an impaired Class shall be entitled to vote separately to accept or reject the Plan unless such Holder is deemed to accept or reject the Plan.

### B.      Holders of Administrative Expense Claims and Priority Claims

Holders of Administrative Expense Claims and Priority Claims who do not object to confirmation of the Plan shall be deemed to have consented to treatment, as set forth in the Plan, that is different from that set forth in 11 U.S.C. § 1129(a)(9).

### C.      Acceptance by Class of Creditors

An impaired Class of Holders of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.  A Class of Holders of Claims shall be deemed to accept the Plan in the event that no Holder of a Claim within that Class submits a Ballot by the Voting Deadline.

### D.      Cramdown

In the event that any impaired Class of Claims shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Plan Proponents reserve the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code or amend the Plan.

## VII.

## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.     The SOG Liquidation Trust

####          1.     Formation of the SOG Liquidation Trust

On the Effective Date, the Liquidation Trustee and the Plan Proponents shall execute the SOG Liquidation Trust Agreement.  The SOG Liquidation Trust shall then be deemed created and effective without any further action by the Bankruptcy Court or any party.  Upon execution of the SOG Liquidation Trust Agreement by the parties thereto, the SOG Liquidation Trust shall be deemed to have accepted all Assets of the Estate on behalf of the Beneficiaries thereof, and the Liquidation Trustee, on behalf of the SOG Liquidation Trust and its Beneficiaries, shall be authorized to obtain, liquidate, and collect all of the Assets of the Estate not in its possession and pursue all of the Causes of Action.  The SOG Liquidation Trust shall be established for the purpose of (a) administering and monetizing the Assets of the SOG Liquidation Trust, including by the sale of Artwork and pursuit of Causes of Action, (b) resolving all Claims, and (c) making all Distributions provided for under the Plan.  The SOG Liquidation Trust shall not have the objective to continue or engage in the conduct of a trade or business, other than the sale of Trust Assets (including Artwork that the SOG Liquidation Trust is authorized to sell), and the purchase of assets incidental to the sale of Trust Assets and the retention of advisors or other professionals necessary for the disposition of Trust Assets.  The beneficiaries of the SOG Liquidation Trust shall be bound by the SOG Liquidation Trust Agreement.  The SOG Liquidation Trust Agreement shall make distributions to the Beneficiaries in accordance with the Plan and the SOG Liquidation Trust Agreement.  Interests in the SOG Liquidation Trust shall be uncertificated and shall be nontransferable except upon death of the interest holder or by operation of law.  The SOG Liquidation Trust shall have a term of seven (7) years from the Effective Date, without prejudice to the rights of the Liquidation Trustee to extend such terms as applicable law shall allow.  The SOG Liquidation Trust may invest Cash (including any earning thereon or proceeds

therefrom) as permitted by Bankruptcy Code section 345 or in other prudent investments, as authorized by the Oversight Committee; provided, however, that such investments are permitted to be made by a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

The Liquidation Trustee shall be the exclusive trustee of the assets of the SOG Liquidation Trust for purposes of 31 U.S.C. Section 3713(b) and 26 U.S.C. Section 6012(b)(3). The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the SOG Liquidation Trust Agreement and, under the supervision of the Oversight Committee, shall include the authority and responsibility to: (a) receive, manage, invest, supervise, and protect trust assets; (b) pay taxes or other obligations incurred by the SOG Liquidation Trust; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals and consultants to advise and assist in the administration, prosecution and distribution of trust assets; (d) calculate and implement distributions of trust assets; (e) prosecute, compromise, and settle, in accordance with the specific terms of that agreement, all Claims and Causes of Action vested in the SOG Liquidation Trust; (f) resolve issues involving Claims and Interests pursuant to Article VII of the Plan; and (g) undertake all administrative functions of the Chapter 11 Case, including the ultimate closing of the Chapter 11 Case.

All costs and expenses associated with the administration of the SOG Liquidation Trust, including reasonable professional costs related to the prosecution of Causes of Action, objection to Disputed Claims or Interests, and reasonable compensation for the Liquidation Trustee and, as set forth in the SOG Liquidation Trust Agreement, the Oversight Committee, shall be the responsibility of and paid by the SOG Liquidation Trust from Available Cash in accordance with the SOG Liquidation Trust Agreement. The SOG Liquidation Trust is the successor to the Debtor's and the Estate's rights to books and records.

The Liquidation Trustee shall be responsible for filing all federal, state, and local tax returns for the SOG Liquidation Trust. The SOG Liquidation Trust shall comply with all

withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions made by the SOG Liquidation Trust shall be subject to any such withholding and reporting requirements. The SOG Liquidation Trust shall provide reasonably detailed reports to holder of beneficial interests in the SOG Liquidation Trust, as the Oversight Committee deems appropriate, but not less than annually.

2.      **Federal Income Tax Treatment of the SOG Liquidation Trust for the SOG Liquidation Trust Assets**

For federal income tax purposes, it is intended that the SOG Liquidation Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury regulations and that such trust be owned by its Beneficiaries (i.e., holders of Allowed Claims in Class 1, Class 3 and Class 4). Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution from the Estate of an undivided interest in each of the assets of the SOG Liquidation Trust and then contributed such interest to the SOG Liquidation Trust.

3.      **SOG Liquidation Trust Assets Treated as Owned by Holders of Allowed Claims**

For all federal income tax purposes, all parties shall treat the transfer of Assets to the SOG Liquidation Trust for the benefit of the holders of Allowed Administrative Expense and Priority Tax Claims and Allowed Claims in Class 1, Class 3 and Class 4 as (a) a transfer of the assets of the SOG Liquidation Trust directly to the holders of Allowed Administrative Expense and Priority Tax Claims and Allowed Claims in Class 1, Class 3 and Class 4 followed by (b) the transfer by such holders to the SOG Liquidation Trust of the Assets of the SOG Liquidation Trust in exchange for the beneficial interests in the SOG Liquidation Trust. Accordingly, the holders of such Allowed Administrative Expense and Priority Tax Claims and Allowed Claims in Class 1, Class 3 and Class 4 shall be treated for federal income tax purposes as the grantors and owners of their respective share of the Assets of the SOG Liquidation Trust.

32

## 4.      <u>Tax Reporting</u>

The Liquidation Trustee shall file returns for the SOG Liquidation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Section VI.  The SOG Liquidation Trust also shall annually send to each holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and will instruct all such holders to report such items on their federal income tax returns.  The SOG Liquidation Trust's taxable income, gain, loss, deduction or credit will be allocated to holders of Allowed Administrative Expense and Priority Tax Claims and Allowed Claims in Class 1, Class 2, Class 3 and Class 4 in accordance with their relative beneficial interests in the SOG Liquidation Trust.

As soon as possible after the Effective Date, the Liquidation Trustee shall make a good faith valuation of assets of the SOG Liquidation Trust, and such valuation shall be used consistently by all parties, for all federal income tax purposes.  The Liquidation Trustee also shall file (or cause to be filed any other statements, returns, or disclosures relating to the SOG Liquidation Trust that are required by any Governmental Unit for taxing purposes.

Notwithstanding anything else in the Plan, subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, the SOG Liquidation Trust shall (i) treat any assets allocable to, or retained on account of, Disputed Claims as held by one or more discrete trusts for federal income tax purposes (the "Disputed Claims Reserve"), consisting of separate and independent shares to be established in respect of each Disputed Claim, in accordance with the trust provisions of the tax Code (Sections 641 <u>et seq</u>.), (ii) treat as taxable income or loss of the SOG Liquidation Trust that would have been allocated to the holders of Disputed Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved), (iii) treat as a distribution from the Disputed Claims Reserve any increased amounts distributed by the SOG Liquidation Trust as a result of any Disputed Claims resolved earlier in the taxable year, to the extent such distributions relate to taxable income or loss of the Disputed Claims

33

Reserve determined in accordance with the provisions hereof, and (iv) to the extent permitted by applicable law, shall report consistent with the foregoing for state and local income tax purposes. All holders of Allowed Administrative Expense and Priority Tax Claims and Allowed Claims in Class 1, Class 2, Class 3 and Class 4 shall report, for tax purposes, consistent with the foregoing.

The Liquidation Trustee shall be responsible for payments, from Trust Assets, of any taxes imposed on the trust or its Assets, including the Disputed Claims Reserve. In the event, and to the extent, and Cash retained on account of Disputed Claims in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the SOG Liquidation Trust as a result of the resolutions of such Disputed Claims.

The SOG Liquidation Trust may request an expedited determination of Taxes of the Debtor or of the SOG Liquidation Trust, including the Disputed Claims Reserve, under Bankruptcy Code Section 505(b) for all returns filed for, or on behalf of, the Debtor and the SOG Liquidation Trust for all taxable periods through the dissolution of the SOG Liquidation Trust.

## 5. <u>Termination of SOG Liquidation Trust</u>

The duties, responsibilities and powers of the Liquidation Trustee and the Oversight Committee shall terminate after (a) all the Trust Assets, including Causes of Action and interest in Artwork, transferred and assigned to the Liquidation Trust or involving the Liquidation Trustee on behalf of the Liquidation Trust are fully resolved, abandoned or liquidated of SOG Liquidation Trust, (b) all Distributions to be made in accordance with the Plan and this Agreement have been made, and (c) all Disputed claims have been resolved and (d) all Art Claims have been resolved or the SOG Liquidation Trust has abandoned its interest with respect to Artwork subject to Art Claims. The SOG Liquidation Trust shall terminate no later than seven (7) years from the Effective Date. However, if warranted by the facts and circumstances

34

provided for in the Plan, and subject to the approval of the Oversight Committee and the Bankruptcy Court upon a finding that an extension is necessary for the purpose of the SOG Liquidation Trust, the term of the SOG Liquidation Trust maybe extended, one or more times for a finite period, based on the particular circumstances at issue, provided that any such extension must be approved by the Bankruptcy Court within six (6) months prior to the beginning of the extended term with notice thereof to all of the known unpaid beneficiaries of the SOG Liquidation Trust. Upon the occurrence of the termination of the SOG Liquidation Trust, the Liquidation Trustee shall file with the Bankruptcy Court a report thereof, seeking an order discharging the Liquidation Trustee and a final decree closing the Debtor's bankruptcy case. The Liquidation Trustee shall not unduly prolong the duration of the SOG Liquidation Trust and shall at all times endeavor to resolve, settle or otherwise dispose of all claims that constitute Trust Assets and to effect the distribution of the Trust Assets to the holders of the Liquidation Trust Interests in accordance with the terms hereof and the Plan and terminate the Liquidation Trust as soon as practicable. Prior to and upon termination of the SOG Liquidation Trust, the Trust Assets will be distributed to the holders of Liquidation Trust Interests, pursuant to the provisions set forth in Sections 3.7, 5.3, 6.4 and 6.5 of the SOG Liquidation Trust Agreement. If any Trust Assets are not duly claimed, such Trust Assets will be distributed, pro rata, according to holders' Liquidation Trust Interests. Thereafter, if there are still any Trust Assets not duly claimed, such Trust Assets will be disposed of in accordance with applicable law or the Plan.

## 6. Vesting and Transfer of Assets to the SOG Liquidation Trust

Pursuant to Bankruptcy Code Section 1141(b), the Assets of the Estate shall vest in the SOG Liquidation Trust; provided, however, that the SOG Liquidation Trust, with the consent of the Liquidation Trustee, may abandon or otherwise not accept any Assets that the SOG Liquidation Trust believes, in good faith, have no meaningful value to the SOG Liquidation Trust. Any Assets the SOG Liquidation Trust so abandons or otherwise does not accept shall not vest in the SOG Liquidation Trust and shall revest in the Debtor.

On the Effective Date, the SOG Liquidation Trust shall (i) take possession of all books, records, and files of the Debtor and its Estate; and (ii) provide for the retention and storage of such books, records, and files until such time as the Liquidation Trustee determines, in accordance with the SOG Liquidation Trust Agreement, that retention of same is no longer necessary or required.

As of the Effective Date, all Assets vested in the SOG Liquidation Trust and all Assets dealt with in the Plan, shall be free and clear of all Claims, Liens, and interests except as otherwise specifically provided in the Plan or in the Confirmation Order. The Liquidation Trustee shall make distributions in accordance with the Plan and the SOG Liquidation Trust Agreement.

### 7. Appointment of the Liquidation Trustee

The Liquidation Trustee for the SOG Liquidation Trust shall be an independent and disinterested Person. The Liquidation Trustee shall be the successor to all of the privileges of the Estate and the Debtor.

### 8. Powers and Authority of Liquidation Trustee

The Liquidation Trustee shall be the exclusive trustee of the assets of the SOG Liquidation Trust for purposes of 31 U.S.C. Section 3713(b) and 26 U.S.C. Section 6012(b)(3). The powers and authority of the Liquidation Trustee shall include, without limitation other than as provided in the Plan or the SOG Liquidation Trust Agreement, the power to: (i) invest funds of the SOG Liquidation Trust, and withdraw funds of the SOG Liquidation Trust, make distributions, incur obligations for reasonable and necessary expenses in liquidating and converting any remaining assets of the SOG Liquidation Trust to Cash, and pay taxes and other obligations owed by the SOG Liquidation Trust from funds held by the Liquidation Trustee in accordance with the Plan; (ii) perform all of the obligations and agreements of the SOG Liquidation Trust and/or of the Liquidation Trustee provided for in the Plan and in the SOG Liquidation Trust Agreement; (iii) hold legal title to any and all rights of the holders of the

3

Liquidation Trust Interests in or arising from the Trust Assets, including without limitation, the right to vote any claim or interest in a case under the Bankruptcy Code and receive any distribution therein; (iv) protect and enforce the rights to the Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity; (v) perform the duties, exercise the powers, and assert the rights of a trustee under Sections 704 and 1106 of the Bankruptcy Code, including, without limitation, commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting claims, defenses, offsets and privileges; (vi) determine, satisfy, object to and estimate any and all claims or liabilities created, incurred or assumed by the SOG Liquidation Trust; (vii) pay all expenses and make all other payments relating to the SOG Liquidation Trust; (viii) establish, keep and maintain the Disputed Claims Reserve (as defined in Article VII of the Plan) for the benefit of the Disputed Claims; (ix) account separately for a Disputed Claim Reserve for each Disputed Claim until the Claim is an Allowed Claim or Disallowed Claim; (x) except as otherwise provided in the Plan, in the discretion of the Liquidation Trustee, set off against any Claim (and the payments or other distributions to be made pursuant to the Plan with respect to such Claims) any Cause of Action comprising Trust Assets against the holder of such Claim, but neither the failure to so set off any Cause of Action nor the allowance of any Claim shall constitute a waiver or release by the SOG Liquidation Trust or Liquidation Trustee of any Cause of Action constituting Trust Assets; (xi) market, negotiate, enter into and perform agreements for the sale or other disposition of the Trust Assets; (xii) consult with and provide information to the Oversight Committee at such times and with respect to such issues relating to the conduct of the Trust as is appropriate; (xiii) prepare and deliver written statements or notices, quarterly or otherwise, required by law to be delivered to Beneficiaries and the Oversight Committee; (xiv) prepare, or have prepared, and file with the appropriate taxing authority on behalf of the SOG Liquidation Trust any and all tax and information returns with respect to the SOG Liquidation Trust (including, without limitation, United States federal, state, local or foreign tax or information returns required to be filed by the

Liquidation Trust) and pay taxes properly payable by the SOG Liquidation Trust, if any, and cause all taxes payable by the SOG Liquidation Trust, if any, to be paid exclusively out of the Trust Assets; (xv) maintain and preserve the originals of any and all instruments and documents pertaining to the Trust Assets; (xvi) take any of the foregoing actions, and execute any documents relating thereto, in the Liquidation Trustee's own name, on behalf of the SOG Liquidation Trust (including but not limited to all settlement agreements); (xvii) exercise and perform the rights, powers and duties held by the Estate, including without limitation the authority under section 1123(b)(3) of the Bankruptcy Code, to provide for the prosecution, settlement, adjustment, retention and enforcement of claims and interests of the Estate, including but not limited to the sale of Artwork, the prosecution and settlement of the Causes of Action, and the authority to exercise all rights and powers under sections 506(c), 544-551, 1106, 1107 and 1108 of the Bankruptcy Code; (xviii) engage employees and professionals to assist the Liquidation Trustee with respect to his responsibilities, including, but not limited to, any professionals employed by the Committee or the Debtor; (xix) prosecute, compromise and/or settle claims and Causes of Action and objections to Claims on behalf of the SOG Liquidation Trust; (xx) liquidate any remaining Assets of the SOG Liquidation Trust, and provide for the distributions therefrom in accordance with the provisions of the Plan; (xxi) manage the continued liquidation of the SOG Liquidation Trust's assets, and to otherwise administer the SOG Liquidation Trust; (xxii) stand in the shoes of the Debtor or the Committee (solely with causes of action assigned to the Committee pursuant to the Committee Standing Stipulation) and assert or waive attorney client privilege and other privileges between the Debtor and its professionals (whether such professionals represented the Debtor prior to, or after, the Petition Date) or, in the case of Committee Assigned Actions, the Committee and its professionals, (xxiii) interpret the Plan in the Liquidation Trustee's reasonable discretion; and (xxiv) exercise such other powers and authority as may be vested in or assumed by the Liquidation Trustee by any Final Order, at the direction of the Oversight Committee, or as may be necessary and proper to carry out the provisions of the Plan. Subject to any requirement to obtain prior approval of the Oversight

38

Committee before instituting or settling any proceeding, asserting a Cause of Action or objecting to or settling an objection to a Claim, the Liquidation Trustee, on behalf of the SOG Liquidation Trust, shall have discretion to pursue, not pursue and/or settle any and all Causes of Action and objections to Claims as the Liquidation Trustee and, where applicable, the Oversight Committee determine(s) is in the best interests of the SOG Liquidation Trust, and neither the Liquidation Trustee nor any member of the Oversight Committee shall have any liability whatsoever for the outcome of that decision, except in the event that there is a Final Order determining that any such person committed gross negligence or intentional misconduct. In connection with the administration of the SOG Liquidation Trust, the Liquidation Trustee is authorized to perform any and all acts necessary and desirable to accomplish the purposes of the Plan. In the event that the Liquidation Trustee cannot take any action, including without limitation the prosecution of any Causes of Action or the objection to any Claim, by reason of an actual or potential conflict of interest, the Oversight Committee acting by majority shall be authorized to take any such action(s) in his place and stead, including without limitation the retention of professionals (which may include professionals retained by the Liquidation Trustee) for such purpose of taking such actions.

### B.    Termination of the CRO

As of the Effective Date, the CRO will be removed and relieved of any further responsibilities to the Debtor and the Estate. The CRO shall turn over to the SOG Liquidation Trust any and all property of the Estate, including without limitation business and financial records of the Estate.

### C.    Liquidation Trustee

### 1.    Identity

On the Effective Date, Alan M. Jacobs will be appointed the Liquidation Trustee, as trustee of the SOG Liquidation Trust; provided, however, that the Plan Proponents may appoint

3

another Liquidation Trustee at or prior to confirmation of the Plan if Mr. Jacobs cannot or will not serve as the Liquidation Trustee upon terms agreeable to the Plan Proponents.

## 2. Responsibilities of Liquidation Trustee

The responsibilities of the Liquidation Trustee shall include, but shall not be limited to: (i) conducting sales of the Debtor's Assets (including Artwork); (ii) prosecuting and/or settling the Causes of Action; (iii) facilitating the prosecution and/or settlement of objections to, and estimations of, Claims; (iv) implementing and/or consummating the objectives of the Protocol; (v) liquidating the remaining property of the SOG Liquidation Trust, and providing for the distribution of the net proceeds thereof, in accordance with the provisions of the Plan; (vi) calculating and implementing all distributions required under the Plan; (vii) filing all required tax returns, and paying taxes and all other obligations on behalf of the SOG Liquidation Trust from SOG Liquidation Trust funds; (viii) otherwise administering the SOG Liquidation Trust; (ix) providing periodic reports to the Oversight Committee and various parties-in-interest as necessary, reflecting periodic expenditures, receipts and distributions and aggregate expenditures, receipts and distributions from the Effective Date; (x) providing periodic status reports to the Oversight Committee (on a periodic basis and as may be reasonably requested by any member of the Oversight Committee) and various parties-in-interest as appropriate with respect to the Claims resolution process, distributions on Allowed Claims, and prosecution and resolutions of Causes of Action and objections to Claims; and (xi) such other responsibilities as may be vested in the Liquidation Trustee pursuant to the Confirmation Order or as may be necessary and proper to carry out the provisions of the Plan. The Liquidation Trustee shall succeed to the rights and obligations of the Debtor and the Committee under the Protocol.

## 3. Powers and Authority of Liquidation Trustee

The Liquidation Trustee shall be the exclusive trustee of the assets of the SOG Liquidation Trust for purposes of 31 U.S.C. Section 3713(b) and 26 U.S.C. Section 6012(b)(3). The powers and authority of the Liquidation Trustee shall include, without limitation other than

as provided in the Plan or this Agreement, the power to: (i) invest funds of the SOG Liquidation Trust, and withdraw funds of the SOG Liquidation Trust, make distributions, incur obligations for reasonable and necessary expenses in liquidating and converting any remaining assets of the SOG Liquidation Trust to Cash, and pay taxes and other obligations owed by the SOG Liquidation Trust from funds held by the Liquidation Trustee in accordance with the Plan; (ii) perform all of the obligations and agreements of the SOG Liquidation Trust and/or of the Liquidation Trustee provided for in the Plan and herein; (iii) hold legal title to any and all rights of the holders of the Liquidation Trust Interests in or arising from the Trust Assets, including without limitation, the right to vote any claim or interest in a case under the Bankruptcy Code and receive any distribution therein; (iv) protect and enforce the rights to the Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity; (v) perform the duties, exercise the powers, and assert the rights of a trustee under Sections 704 and 1106 of the Bankruptcy Code, including, without limitation, commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting claims, defenses, offsets and privileges; (vi) determine, satisfy, object to and estimate any and all claims or liabilities created, incurred or assumed by the SOG Liquidation Trust; (vii) pay all expenses and make all other payments relating to the SOG Liquidation Trust; (viii) establish, keep and maintain the Disputed Claims Reserve (as defined in Article VII of the Plan) for the benefit of the Disputed Claims; (ix) account separately for a Disputed Claim Reserve for each Disputed Claim until the Claim is an Allowed Claim or Disallowed Claim; (x) except as otherwise provided in the Plan, in the discretion of the Liquidation Trustee, set off against any Claim (and the payments or other distributions to be made pursuant to the Plan with respect to such Claims) any Cause of Action comprising Trust Assets against the holder of such Claim, but neither the failure to so set off any Cause of Action nor the allowance of any Claim shall constitute a waiver or release by the SOG Liquidation Trust or Liquidation Trustee of any Cause of Action constituting Trust Assets; (xi) market, negotiate, enter into and perform agreements for the sale

3

or other disposition of the Trust Assets; (xii) consult with and provide information to the Oversight Committee at such times and with respect to such issues relating to the conduct of the Trust as is appropriate; (xiii) prepare and deliver written statements or notices, quarterly or otherwise, required by law to be delivered to Beneficiaries and the Oversight Committee; (xiv) prepare, or have prepared, and file with the appropriate taxing authority on behalf of the SOG Liquidation Trust any and all tax and information returns with respect to the SOG Liquidation Trust (including, without limitation, United States federal, state, local or foreign tax or information returns required to be filed by the Liquidation Trust) and pay taxes properly payable by the SOG Liquidation Trust, if any, and cause all taxes payable by the SOG Liquidation Trust, if any, to be paid exclusively out of the Trust Assets; (xv) maintain and preserve the originals of any and all instruments and documents pertaining to the Trust Assets; (xvi) take any of the foregoing actions, and execute any documents relating thereto, in the Liquidation Trustee's own name, on behalf of the SOG Liquidation Trust (including but not limited to all settlement agreements); (xvii) exercise and perform the rights, powers and duties held by the Estate, including without limitation the authority under section 1123(b)(3) of the Bankruptcy Code, to provide for the prosecution, settlement, adjustment, retention and enforcement of claims and interests of the Estate, including but not limited to the sale of Artwork, the prosecution and settlement of the Causes of Action, and the authority to exercise all rights and powers under sections 506(c), 544-551, 1106, 1107 and 1108 of the Bankruptcy Code; (xviii) engage employees and professionals to assist the Liquidation Trustee with respect to his responsibilities, including, but not limited to, any professionals employed by the Committee or the Debtor; (xix) prosecute, compromise and/or settle claims and Causes of Action and objections to Claims on behalf of the SOG Liquidation Trust; (xx) liquidate any remaining Assets of the SOG Liquidation Trust, and provide for the distributions therefrom in accordance with the provisions of the Plan; (xxi) manage the continued liquidation of the SOG Liquidation Trust's assets, and to otherwise administer the SOG Liquidation Trust; (xxii) stand in the shoes of the Debtor or the Committee (solely with causes of action assigned to the Committee pursuant to the Committee

42

Standing Stipulation) and assert or waive attorney client privilege and other privileges between the Debtor and its professionals (whether such professionals represented the Debtor prior to, or after, the Petition Date) or, in the case of Committee Assigned Actions, the Committee and its professionals, (xxiii) interpret the Plan in the Liquidation Trustee's reasonable discretion; and (xxiv) exercise such other powers and authority as may be vested in or assumed by the Liquidation Trustee by any Final Order, at the direction of the Oversight Committee, or as may be necessary and proper to carry out the provisions of the Plan. Subject to any requirement to obtain prior approval of the Oversight Committee before instituting or settling any proceeding, asserting a Cause of Action or objecting to or settling an objection to a Claim, the Liquidation Trustee, on behalf of the SOG Liquidation Trust, shall have discretion to pursue, not pursue and/or settle any and all Causes of Action and objections to Claims as the Liquidation Trustee and, where applicable, the Oversight Committee determine(s) is in the best interests of the SOG Liquidation Trust, and neither the Liquidation Trustee nor any member of the Oversight Committee shall have any liability whatsoever for the outcome of that decision, except in the event that there is a Final Order determining that any such person committed gross negligence or intentional misconduct. In connection with the administration of the SOG Liquidation Trust, the Liquidation Trustee is authorized to perform any and all acts necessary and desirable to accomplish the purposes of the Plan. In the event that the Liquidation Trustee cannot take any action, including without limitation the prosecution of any Causes of Action or the objection to any Claim, by reason of an actual or potential conflict of interest, the Oversight Committee acting by majority shall be authorized to take any such action(s) in his place and stead, including without limitation the retention of professionals (which may include professionals retained by the Liquidation Trustee) for such purpose of taking such actions.

### 4. Retention and Compensation of Professionals

The Liquidation Trustee may, without further order of the Bankruptcy Court, employ various professionals, including, but not limited to, counsel, consultants, and financial advisors, as needed to assist him in fulfilling his obligations under the Plan, and on whatever fee

arrangement the Liquidation Trustee deems appropriate, including, without limitation, contingency fee arrangements, subject to the approval of the Oversight Committee. The Liquidation Trustee may employ professionals that were previously employed by the Committee or the Debtor.

To the extent there are sufficient available funds, the Liquidation Trustee shall include in the reserve created for Post-Effective Date Expenses reasonably sufficient cash to cover the reasonably foreseeable fees and expenses of such professionals incurred, or to be incurred, after the Effective Date.

### 5.    Compensation of Liquidation Trustee

In addition to reimbursement for actual out-of-pocket expenses incurred by the Liquidation Trustee, the Liquidation Trustee shall be entitled to receive reasonable compensation for services rendered on behalf of the SOG Liquidation Trust on terms to be determined by the Oversight Committee which may include reasonable compensation determined on a contingency basis. The Liquidation Trustee shall not be required to file an application for compensation in order to receive the compensation provided for herein.

To the extent there are sufficient available funds, the Liquidation Trustee shall include in the reserve created for Post-Effective Date Expenses reasonably sufficient monies to cover the reasonably foreseeable fees and expenses of the Liquidation Trustee incurred, or to be incurred, after the Effective Date, subject to review of the Oversight Committee.

### 6.    Liquidation Trustee and Professional Compensation Procedures

The Liquidation Trustee and any and all professionals retained after the Effective Date will be paid for their services and reimbursed for their expenses pursuant to the following procedures:  On or before the twenty-fifth (25th) day of each month following the month for which compensation is sought, (a) the Liquidation Trustee and all shall file with the Bankruptcy Court a monthly statement describing the nature, extent and value of the services provided during the period covered by such request and (b) any professional retained after the Effective

44

Date shall file with the Bankruptcy Court a monthly statement describing with reasonable particularity the time expended and the nature, extent and value of the services provided during the period covered by such request. Any party in interest shall have until the fifteenth (15th) day after the submission of the statement to review it. If no objections are filed, the Liquidation Trustee shall promptly pay 100% of the fees and 100% of the disbursements identified in each statement. In the event that any party in interest determines that the compensation or reimbursement sought in a particular statement is inappropriate or unreasonable, or that any number of calculation is incorrect, that party shall, on or before the fifteenth (15th) day after the submission of the statement, serve upon the party whose statement is objected to, a "Notice of Objection to the Monthly Statement" setting forth the precise nature of the objection and the amount in issue. Thereafter, the objecting party and the party whose statement is objected to shall meet or confer to attempt to reach an agreement regarding the correct payment to be made, and if no agreement is reached with regard to such objection, the Liquidation Trustee shall not pay any portion of the fees and disbursements requested that are not the subject of a Notice of Objection, as well as any adjusted fees and disbursements that have been agreed to by the objecting party and the party requesting compensation and reimbursement.

### 7. Removal of Liquidation Trustee

The Liquidation Trustee or any successor Liquidation Trustee appointed pursuant to the Plan may be removed as Liquidation Trustee by the affirmative majority vote of the members of the Oversight Committee.

### 8. Successor Liquidation Trustee

In the event that the Liquidation Trustee is removed, resigns (with 30 days' notice to the Oversight Committee) or otherwise ceases to serve as Liquidation Trustee, the Oversight Committee shall select a successor Liquidation Trustee within twenty (20) Business Days of such resignation, removal, or cessation of service by the incumbent Liquidation Trustee. The Oversight Committee shall file with the Bankruptcy Court a notice of such successor, which

3

shall be served on the U.S. Trustee and all parties that have requested notice in the Chapter 11 Case. Any successor Liquidation Trustee shall be subject to the same qualifications and shall have the same rights, powers, duties and discretion, and otherwise be in the same position, as the originally named Liquidation Trustee. If the Liquidation Trustee ceases to act as Liquidation Trustee for any reason whatsoever, such Liquidation Trustee shall turn over to any successor Liquidation Trustee, upon written request, any and all property of the SOG Liquidation Trust, including without limitation business and financial records of the SOG Liquidation Trust, within 20 days of the receipt of such written request. References herein to the Liquidation Trustee shall be deemed to refer to the successor Liquidation Trustee acting hereunder.

## 9. Termination

The duties, responsibilities and powers of the Liquidation Trustee and the Oversight Committee shall terminate in accordance with the terms of the SOG Liquidation Trust Agreement after all of the SOG Liquidation Trust's Assets have been liquidated and after all reasonably possible distributions have been made to holders of Allowed Claims and the Liquidation Trustee obtains an order for final decree.

## 10. Records

The Liquidation Trustee shall maintain good and sufficient books and records of account relating to the Assets of the SOG Liquidation Trust, the cash, the management thereof, all post-Confirmation transactions undertaken by the Liquidation Trustee, all expenses incurred by or on behalf of the Liquidation Trustee after the Effective Date, and all distributions contemplated or effectuated under the Plan.

## 11. The Oversight Committee

The Oversight Committee is established pursuant to the terms of the Plan. The Oversight Committee will advise the Liquidation Trustee and make certain determinations set forth herein and in the Plan. The Oversight Committee shall consist of (a) two (2) members to be identified by the Committee at the Confirmation Hearing, (b) two (2) members to be identified by the Bank

at the Confirmation Hearing and (c) one (1) member designated jointly and unanimously by the Committee's and the Bank's designees. Nothing herein shall prohibit any member of the Oversight Committee from providing a proxy for such members vote on Oversight Committee matters to any other member of the Oversight Committee. Unless otherwise specified herein or in the SOG Liquidation Trust Agreement, approval of a majority of the members of such Oversight Committee shall be required for the Oversight Committee to act. In the event that a member of the Oversight Committee resigns, the party or parties that designated such resigning member shall select a successor to serve in the place of the resigning member, provided, however, that if the resigning Oversight Committee members was one identified by the Committee, to the extent the Committee is no longer in existence the successor member shall be designated by the other Oversight Committee member designated by the Committee. The identities of the members of the Oversight Committee shall be set forth in a statement filed with the Court within five (5) business days of the Effective Date, and supplemented within five (5) business days after any change in its membership. The Oversight Committee shall have the right to remove and appoint a successor Liquidation Trustee in accordance with the express terms of this Plan. Except for (a) reimbursement of reasonable expenses, (b) the Oversight Committee Members Fees and (c) indemnification, the members of the Oversight Committee shall receive no other compensation or other payment for the performance of their duties hereunder. The Oversight Committee may adopt by-laws with respect to its operation so long as such by-laws are consistent with the terms of the Plan and this Agreement.

### 12. Liability of the Liquidation Trustee

The Liquidation Trustee shall not be personally liable for any claim asserted against the SOG Liquidation Trust or the Liquidation Trustee, except as set forth below. Notwithstanding anything to the contrary set forth herein, no provision of this Agreement shall be construed to relieve the Liquidation Trustee from liability for its own gross negligence, fraud or willful misconduct, except that:

(a) the Liquidation Trustee shall be liable only for the performance of such duties and obligations as are specifically set forth in this Agreement, the Plan or the Confirmation Order; and

(b) the Liquidation Trustee shall not be liable for any error of judgment made in good faith, or with respect to any action taken or omitted to be taken in good faith, unless the Liquidation Trustee was grossly negligent.

13. **Indemnification**

From and after the Effective Date, the Liquidation Trustee and the members of the Oversight Committee, and their respective Related Parties (collectively, the "Indemnified Parties" and each an "Indemnified Party") shall be, and hereby are, indemnified by the SOG Liquidation Trust, to the fullest extent permissible by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of action, bonds, covenants, judgments, damages, attorneys' fees and defense costs and other assertions of liability (collectively, "Liability Claims") arising out of any such Indemnified Parties' good faith exercise of what such Indemnified Party reasonably understands to be its powers or the discharge of what such Indemnified Party reasonably understands to be its duties conferred by the Plan or by any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law, or otherwise (except only for actions or omissions to act to the extent determined by a Final Order of a court of competent jurisdiction to be due to such Indemnified Party's own respective fraud, gross negligence or willful misconduct), including but not limited to, acts or omissions concerning pursuing or not pursuing the Causes of Action or objections to Claims, on and after the Effective Date. The foregoing indemnification shall also extend to matters directly or indirectly, in connection with, arising out of, based on, or in any way related to (i) the Plan; (ii) the services to be rendered pursuant to the Plan; (iii) any document or information, whether verbal or written, referred to herein or supplied to the Liquidation Trustee; or (iv) proceedings by or on behalf of any creditor, except to the extent any member of the Oversight Committee is acting on behalf of itself as a creditor or as agent for any creditor in its individual capacity.

48

Subject to the terms of the Liquidation Trust Agreement, the SOG Liquidation Trust shall, on demand, advance or pay promptly out of Available Cash or a Plan Reserve Account set up specifically for this purpose if such an account is established by the Liquidation Trustee at the direction of the Oversight Committee, on behalf of each Indemnified Party, reasonable attorneys' fees and other expenses and disbursements which such Indemnified Party would be entitled to receive pursuant to the foregoing indemnification obligation; provided, however, that any Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance amounts if a court of competent jurisdiction ultimately determines that such Indemnified Party is not entitled to indemnification hereunder due to the gross negligence or willful misconduct of such Indemnified Party.

The Liquidation Trustee is authorized, but not required, to obtain and purchase (by using cash of the SOG Liquidation Trust) insurance coverage with respect to the responsibilities, liabilities, and obligations of the Indemnified Parties (or any other professionals hired by the Liquidation Trustee) under the Plan. Any person entitled to indemnification shall have the right to employ such person's own separate counsel reasonably acceptable to the Liquidation Trustee and the Oversight Committee in any such action, at the SOG Liquidation Trust's expense, subject to the terms and conditions of the SOG Liquidation Trust.

### D.     The Source of Distributions

The sources of all distributions and payments under this Plan are the Assets (or proceeds of any Assets) of the Debtor, including all Available Cash, Artworks, proceeds of the Causes of Action and any other remaining property of the Debtor. Upon the Effective Date, the Bank in its capacity as the holder of the Allowed DIP Facility Claim and the Allowed FRB Secured Claim releases, and may assign to the SOG Liquidation Trust its lien against any of the Assets in its sole discretion for given purposes and otherwise consents to the use of such collateral in accordance with the terms of this Plan and the SOG Liquidation Trust Agreement.

### E. Provision for Treatment of Disputed Claims

Unless otherwise ordered by the Bankruptcy Court, the Liquidation Trustee shall have the exclusive right (subject to obtaining the prior consent of the Oversight Committee, where required pursuant to the terms of the SOG Liquidation Trust Agreement), except with respect to applications for the allowance of compensation and reimbursement of expenses of professionals under sections 330 and 503 of the Bankruptcy Code, to object to the allowance of Claims filed with the Bankruptcy Court with respect to which the liability is disputed in whole or in part. All objections may be litigated to Final Order; however, the Liquidation Trustee may (subject to obtaining the prior consent of the Oversight Committee) compromise and settle any objection to Claims without the approval of the Bankruptcy Court. At such time as a disputed claim is resolved by Final Order and is Allowed or is settled by the Liquidation Trustee with the consent of the Oversight Committee, the Holder thereof will receive, as soon as practicable thereafter, the distributions to which such Holder is then entitled under the Plan.

### F. Distribution of Property Under the Plan

#### 1. Manner of Cash Payments

Cash payments to domestic entities holding Allowed Claims will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Liquidation Trustee or, at the Liquidation Trustee's option, by wire transfer from a domestic bank. Cash payments to foreign entities holding Allowed Claims may be paid, at the Liquidation Trustee's option, either in the same manner as payments to domestic entities or in any funds and by any means that are necessary or customary in the particular foreign jurisdiction.

#### 2. Setoff and Recoupment

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, THE LIQUIDATION TRUSTEE, ON BEHALF OF THE SOG LIQUIDATION TRUST, MAY SET OFF, RECOUP, OR WITHHOLD AGAINST THE DISTRIBUTIONS TO BE MADE ON ACCOUNT OF ANY ALLOWED CLAIM, INCLUDING ANY DISTRIBUTIONS TO**

**ANY OFFICER OR DIRECTOR ANY CLAIMS THAT THE DEBTOR OR THE ESTATE MAY HAVE AGAINST THE ENTITY HOLDING THE ALLOWED CLAIM. THE SOG LIQUIDATION TRUST AND THE LIQUIDATION TRUSTEE WILL NOT WAIVE OR RELEASE ANY CLAIM AGAINST THOSE ENTITIES BY FAILING TO EFFECT SUCH A SETOFF OR RECOUPMENT; BY ALLOWING ANY CLAIM AGAINST THE DEBTOR OR THE LIQUIDATION TRUST; OR BY MAKING A DISTRIBUTION ON ACCOUNT OF AN ALLOWED CLAIM.**

### 3. No *De Minimis* Distributions

Notwithstanding anything to the contrary in this Plan, no cash payment of less than $100 will be made by the Liquidation Trustee to any entity holding an Allowed Claim. No consideration will be provided in lieu of the *de minimis* distributions that are not made under this Article. Allowed Claims that are entitled to a Pro Rata distribution of less than $100 shall continue to accrue until such time as the Pro Rata distribution on account of such Claim will be $100 or more.

### 4. No Distributions With Respect to Disputed Claims

Notwithstanding any other Plan provision, distributions will be made on account of a Disputed Claim only after, and only to the extent that, the Disputed Claim becomes an Allowed Claim or is deemed to be an Allowed Claim for Distribution purposes.

### 5. Undeliverable, Unclaimed Non-Negotiated Distributions

Distributions to Beneficiaries holding Allowed Claims will initially be made by mail as follows:

(a) Distributions will be sent to the address, if any, set forth on a filed proof of claim as amended by any written notice of address change received by the Liquidation Trustee no later than ten (10) business days prior to the date of any Distribution; or

51

(b)      If no such address is available, distributions will be sent to the address set forth on the Bankruptcy Schedules.

If no address is available either on a proof of claim or on the Bankruptcy Schedules, the Distribution will be deemed to be undeliverable. If a Distribution is returned to the Liquidation Trustee as an undeliverable Distribution or is deemed to be an undeliverable Distribution, the Liquidation Trustee shall make no further Distribution to the entity holding the Claim on which the Distribution is being made unless and until the Liquidation Trustee is timely notified in writing of that entity's current address. Subject to the following paragraph, until they become deliverable, the Liquidation Trustee will create a reserve for undeliverable Distributions for the benefit of the entities entitled to the Distributions. These entities will not be entitled to any interest on account of the undeliverable Distributions.

Any Beneficiary that is otherwise entitled to an undeliverable Distribution and that does not, within thirty (30) days after a Distribution is returned to the Liquidation Trustee as undeliverable, or is deemed to be an undeliverable Distribution, provide the Liquidation Trustee with a written notice asserting its claim to that undeliverable Distribution and setting forth a current, deliverable address will be deemed to waive any claim to that undeliverable Distribution and will be forever barred from receiving that undeliverable Distribution or asserting any Claim against the SOG Liquidation Trust, or its property or the Liquidation Trustee or the Oversight Committee. Any undeliverable Distributions that are not claimed under this Section will become Available Cash. Nothing in the Plan requires the SOG Liquidation Trust, the Liquidation Trustee or the Oversight Committee or any of its members to attempt to locate any entity holding an Allowed Claim and whose Distribution is undeliverable.

If an instrument delivered as a Distribution to a Beneficiary is not negotiated within 120 day after such instrument was sent to the beneficiary, then the instrument shall be null and void and the Beneficiary shall be deemed to have waived such Distribution.

6. **Contemporaneous Distributions**

The Liquidation Trustee shall make contemporaneous distributions, if any, to the Holder of an Allowed FRB Secured Claim on account its rights to distributions pursuant to Article V.D(b) and Holders of Allowed General Unsecured Claims pursuant to Article V.G(b).

# VIII.

# LITIGATION

## A. **Preservation of Causes of Action**

The Liquidation Trustee, on behalf of the SOG Liquidation Trust, shall retain, and, subject to the requirement of obtaining Oversight Committee approval, may exclusively enforce, any and all such claims, rights or Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, a bankruptcy court adversary proceeding filed in this Chapter 11 Case. The Liquidation Trustee, on behalf of the SOG Liquidation Trust, shall have the exclusive right, authority, and discretion (except in cases where the Liquidation Trustee is conflicted, in which case such right, authority and discretion shall be vested in and exercised by the Oversight Committee) to institute, prosecute, abandon, settle, or compromise any and all such claims, rights and Causes of Action, subject to the requirement of obtaining Oversight Committee approval before taking any such action, but shall not be required to seek Bankruptcy Court approval. The Liquidation Trustee (or the Oversight Committee, as the case may be) stands in the shoes of the Debtor, the Estate, the CRO, the Committee and the SOG Liquidation Trust and may take such actions in their name without the need to intervene in, amend any pending actions or obtain any further order of the Bankruptcy Court.

The Liquidation Trustee (or the Oversight Committee, as the case may be) as trustee of the SOG Liquidation Trust is authorized to exercise and perform the rights, powers and duties held by the Debtor's Estate, including without limitation the authority under Bankruptcy Code

section 1123(b)(3) to provide for the settlement, adjustment, retention and enforcement of claims and interests of the Estate, including, but not limited to all Causes of Action, subject to the requirement of obtaining Oversight Committee approval.

Annexed to the Disclosure Statement as **Exhibit C** is a non-exclusive List of Certain Preserved Causes of Action, which are expressly identified and preserved for prosecution on and after the Effective Date. The Debtor, its estate or the SOG Liquidation Trust may assert claims pursuant to sections 542, 5443, 544, 545, 547, 548, 549 and 550 against any person or entity listed on Exhibit C to the Disclosure Statement. In addition, the Debtor, its estate or the SOG Liquidation Trust may assert any and all claims (including counter-claims) or defenses against any Art Claimant or Claimant with respect to their Art Claims or Claims. The failure to list any potential or existing claims or Causes of Action is not intended to and shall not limit the rights of the Liquidation Trustee to pursue any claims or Causes of Action not listed or identified. The Confirmation Order shall not bar the Liquidation Trustee, on behalf of the SOG Liquidation Trust, by res judicata, collateral estoppel, or otherwise from collecting, prosecuting, or defending any matter or Cause(s) of Action.

Unless a claim or Cause of Action against a person is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order, the Liquidation Trustee, on behalf of the SOG Liquidation Trust, expressly reserves such claim or Cause of Action for later adjudication (including without limitation, claims and Causes of Action not specifically identified, or which the Liquidation Trustee or the Plan Proponents may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Liquidation Trustee or the Plan Proponents at this time, or facts or circumstances which may change or be different from those which the Plan Proponents and the Liquidation Trustee now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such claims or Causes of Action upon, or after, the Confirmation or consummation of the Plan based on the Disclosure Statement, the

Plan, or the Confirmation Order, except where such claims or Causes of Action have been released in the Plan or other Final Order.

THE LIQUIDATION TRUSTEE, SUBJECT TO THE APPROVAL OF THE OVERSIGHT COMMITTEE, WILL MAKE THE DECISION OF WHETHER OR NOT TO PURSUE THE CAUSES OF ACTION AND TO SETTLE OR NOT SETTLE CAUSES OF ACTION. THIS DECISION WILL BE BASED UPON THE LIQUIDATION TRUSTEE'S REVIEW OF THE MERITS OF THE VARIOUS CAUSES OF ACTION AS WELL AS THE COSTS REQUIRED TO PROSECUTE SUCH CAUSES OF ACTION IN LIGHT OF THE LIMITED RESOURCES AVAILABLE FOR THE DISTRIBUTION TO CREDITORS. THE LIQUIDATION TRUSTEE MAY SEEK TO RETAIN COUNSEL ON A CONTINGENCY BASIS TO PROSECUTE SOME OR ALL OF SUCH CAUSES OF ACTION, MAY SEEK TO FINANCE ANY COSTS RELATING TO THE PROSECUTION OF SUCH LITIGATION OR MAY DECIDE NOT TO PURSUE SUCH CAUSES OF ACTION AT ALL. THE LIQUIDATION TRUSTEE, THE OVERSIGHT COMMITTEE, AND THEIR RESPECTIVE COMPANIES, FIRMS, PARTNERS, MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, PROFESSIONALS, SUCCESSORS AND ASSIGNS SHALL NOT HAVE ANY LIABILITY ARISING OUT OF THE GOOD FAITH DETERMINATIONS OF THE LIQUIDATION TRUSTEE AND THE OVERSIGHT COMMITTEE OF WHETHER OR NOT TO PURSUE PROSECUTION OF AND/OR SETTLE THE FOREGOING CAUSES OF ACTION.

## IX.

## EXCULPATION AND RELEASE

### A.  Limitation of Liability in Connection with the Chapter 11 Case, the Plan, Disclosure Statement and Related Documents

Pursuant to section 1125(e) of the Bankruptcy Code, the Committee, the members of the Committee (in their capacities as such), the Debtor, the CRO, the Bank, the Liquidation Trustee,

the Oversight Committee, the members of the Oversight Committee (in their capacity as such), and their respective Related Parties (collectively, the "Plan Participants") will neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the Chapter 11 Case, including, but not limited to the formulation, preparation, dissemination, negotiation, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement, pleading or document created or entered into, the pursuit of Causes of Action, or any other act taken or omitted to be taken in connection with the Plan, the Disclosure Statement, or the Confirmation Order, including solicitation of acceptances of the Plan ("Exculpated Conduct"); provided, however, that any Plan Participant could incur liability as a result of any such act or omission to the extent that such act or omission constitutes fraud, gross negligence or willful misconduct or willful violation of federal or state securities laws or the Internal Revenue Code. For the avoidance of doubt, nothing herein shall be deemed or construed to release any Officer or Director's liability to the Estate, except that any party so liable shall be barred from seeking contribution or indemnification from any of the Plan Participants or their respective property; provided further, however, that Related Parties of Committee Members shall only be entitled to the exculpations and releases provided in Article IX of the Plan if and to the extent such Related Parties took any action or omitted to take any action solely in connection with such Committee Member's capacity as such; provided further, however, that Related Parties of Oversight Committee Members shall only be entitled to the exculpations and releases provided in Article IX of the Plan if and to the extent such Related Parties took any action or omitted to take any action solely in connection with such Oversight Committee Member's capacity as such.

All Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against any Plan Participant, whether directly, derivatively, on account of or respecting any claim, debt, right, or cause of action based in whole or in part upon any Exculpated Conduct. Any Plan Participant injured by any willful violation of the injunctions

provided in the Plan shall recover from the willful violator actual damages (including costs and attorneys' fees) and, in appropriate circumstances, punitive damages.

**B.    Release of Debtor's Claims Against the Bank, the Creditors' Committee and Members of the Creditors' Committee**

### 1.    Debtor's Release

On the Effective Date, the Debtor and the Liquidating Trustee on behalf of the SOG Liquidation Trust and the Estate shall release and be permanently enjoined from any prosecution or attempted prosecution of any and all causes of action or potential cause of action which the Debtor or its Estate had or may have against the Bank, the Committee or any member of the Committee (in their capacity as such) and any of their respective Related Parties (collectively, the "Debtor Released Parties") from any and all Claims (including Causes of Action) and Liability Claims known or unknown that the Debtor, the Estate or the Liquidating Trustee may assert against the Debtor Released Parties.

In addition, on the Effective Date, the Debtor and the Liquidation Trustee on behalf of the Liquidating Trust, the Committee and each of its past or current members (in their capacities as such), and the Bank, and their respective Related Parties and property, shall be released from any and all Claims (including Causes of Action), potential Claims and Liability Claims, which the Debtor, the Estate or the SOG Liquidation Trust may be entitled to assert, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, whether known or unknown, foreseen or unforeseen, existing or thereafter arising, based in whole or in part upon any act or omission, transaction, or other occurrence taking place on or before the Confirmation, in any way relating to the Chapter 11 Case or the Plan, including, but no limited to, the negotiation, solicitation, Confirmation and Consummation of the Plan; provided, however, that nothing shall release any person from any claims, obligations, rights, causes of action, or liabilities based upon any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Consummation of the Plan, the administration of the Plan, or the Property to be

3

distributed under the Plan arising out of such person's gross negligence or willful misconduct. No attorney shall seek a release in contravention of N.Y. Comp. Codes R. & Regs. Tit. 22 s 1200.8 Rule 1.8(h)(1) (2009), as amended.

2. **Third Party Release**

Each Person who (i) is entitled to receive a Distribution under the Plan or pursuant to the Plan (whether or not a Distribution has been made) or (ii) is a member of a Class that votes to accept this Plan (or is deemed to accept this Plan), whether or not such member has voted to accept the Plan, shall be deemed a "Releasing Party." By virtue of Bankruptcy Code sections 1126(c) and 1141(a), each Releasing Party shall be deemed to have released for itself and its respective Related Parties, in each case in their capacity as such, any and all Claims and Causes of Action against (A) the Debtor, the CRO, the Liquidation Trustee or the SOG Liquidation Trust, and their respective Related Parties and their respective property (collectively, the "Third Party Released Parties"), (B) FRB, in its capacity as prepetition lender to the Debtor and in its capacity as the lender under the DIP Facility and its respective Related Parties and their respective property, and (C) the members of the Committee (in their capacity as such), and their respective Related Parties and their respective property, arising prior to the Effective Date and related to the Debtor or the Chapter 11 Case. Nothing in the previous sentence shall be deemed to release the Debtor and SOG Liquidation Trust from liability for (i) Claims property and timely filed before the Administrative Claims Bar Date, the Claims Bar Date, the Art Claims Bar Date and the Governmental Bar Date (as the case may be), and (ii) Claims scheduled by the Debtor that are not contingent, disputed or unliquidated; provided, however, that, notwithstanding clause (i) above, the Debtor or Liquidating Trustee, as appropriate, may object to the allowance of any Claim on any ground.

Each party to which this section of the Plan applies shall be deemed to have granted the releases set forth herein notwithstanding that it may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such party expressly waives any and all rights that it may have under any statute or common law principle which would limit the effect of such releases to those Claims or causes of action actually known or suspected to exist at the time of Confirmation. Notwithstanding anything herein, nothing in the Plan shall prevent or prohibit an Art Claimant (as defined in the Art Claims Protocol) or the Sotheby's Entities from asserting, on any basis, that the Bank's liens with respect to any Artwork claimed by such Art Claimant pursuant to the Art Claims Protocol or the Sotheby's Entities are not enforceable, valid or perfected.

### 3. <u>Injunction</u>

In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtor, the SOG Liquidation Trust or the Estate that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtor, the SOG Liquidation Trust, the Estate, the Bank or any of their respective Related Parties or any of their respective property with respect to any such Claim or Interest; (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtor, the SOG Liquidation Trust, the Estate, the Bank or any of their respective Related Parties or any of their respective property with respect to any such Claim or Interest; (c) creating, perfecting or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtor, the SOG Liquidation Trust, the Estate, or the Bank or any of their respective Related Parties or any of their respective

property with respect to any such Claim or Interest; (d) asserting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, the SOG Liquidation Trust, the Estate, or the Bank or any of their respective Related Parties or any of their property with respect to any such Claim or Interest; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in this section shall prohibit the Holder of a timely-filed Proof of Claim from litigating its right to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtor or the SOG Liquidation Trust under this Plan. For the avoidance of doubt, and notwithstanding any other provision contained in the Plan or the Confirmation Order, nothing in the Plan or the Confirmation Order shall release any claims and/or causes of action, or enjoin any person (including without limitation the SOG Liquidation Trust and/or the Liquidation Trustee) from commencing or continuing the prosecution of any claims and/or causes of action against the Debtor's officers, directors, shareholders, employees, professionals, representatives, successors or assigns and/or any other person or entity other than the Plan Participants. Notwithstanding anything to the contrary herein, Art Claimants shall not be enjoined by the Plan from litigating any Art Claims in accordance with the Art Claims Protocol.

The foregoing releases are justified as an integral part of the Debtor's overall restructuring and liquidation efforts. Specifically, the Debtor Released Parties and Third Party Released Parties (the "Released Parties") have all made substantial contributions to the Debtor's estate; indeed, without such contributions the Debtor could not have proposed a confirmable Plan. Put simply, the proposed Plan represents demonstrably unique circumstances. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases, and further, will constitute its finding that the releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of the claims released by the releases; (2) in the best interests of the

Debtor and all Holders of Claims; (3) fair, equitable and reasonable; (4) given and made after due notice and opportunity for hearing; and (5) a bar to any of the Holders of Claims and Interests asserting any claim released by the releases against any of the Released Parties. Nothing in the Confirmation Order or the Plan shall affect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including any claim arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States Government or any of its agencies or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties for any liability whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States Government or any of its agencies or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States Government or any of its agencies or any state and local authority against the Released Parties.

   **C.**    <u>**Releases and Injunction Pursuant to the RAI Settlement Agreement**</u>

    Upon the effective date of the RAI Settlement Agreement, each member of the RAI Group and each of their respective Related Parties shall be deemed to release the Debtor, the bankruptcy estate and the Committee in respect of the RAI Claims and RAI Art Claims and will be deemed to have withdrawn such RAI Art Claims and RAI Claims upon the Notice Date; <u>provided, however</u>, that Donald Schupak shall not be required to withdraw proof of claim number 368 pursuant to this Agreement.

Upon the effective date of the RAI Settlement Agreement, in exchange for the conversion of the RAI Indebtedness (as defined in the RAI Settlement Agreement), the FRH Equity Interest and the Debtor's membership interests in RAI into Class C Membership interests in RAI, the Debtor and the Committee and their respective Related Parties and successors in interest, including the Liquidation Trustee and the SOG Liquidation Trust, shall be deemed to release each member of the RAI Group and its Related Parties from any and all claims or causes of actions, known or unknown including without limitation all claims, liens or interests as assignee under the Plan of the RAI Loan Documents and the FRH Equity Interest; provided, however, that the Committee, the Debtor or the Liquidation Trustee, as the case may be, shall not release any defenses it or they have with respect to the Schupak Claim, and provided further, however, that the Debtor's and Liquidation Trustee's rights under the Operating Agreement, as amended, shall be preserved.

None of the releases granted pursuant to this Article IX.C shall apply to any matter that is not related to (a) Lawrence Salander, Julie Salander, L. Salander, LLC, the Debtor, their Related Parties, or their respective cases under the Bankruptcy Code, (b) the RAI Claimed Art (as defined in the RAI Settlement Agreement), (c) the RAI Group, (d) the OMP Sale(as defined in the RAI Settlement Agreement), (e) the RAI Transaction Documents(as defined in the RAI Settlement Agreement) or (f) the RAI Indebtedness (as defined in the RAI Settlement Agreement).

The Plan Participants will neither have nor incur any liability to any Bucket 1 Competing Claimant for any act taken or omitted to be taken in connection with or related to the release of Bucket 1 Art by the Debtor or the SOG Liquidation Trust to RAI (the "Bucket 1 Exculpated Conduct"). Notwithstanding anything herein, nothing in the Plan shall prevent or prohibit a

62

Bucket 1 Competing Claimant from asserting, on any basis, that the Bank's liens with respect to any Artwork claimed by such Art Claimant pursuant to the Art Claims Protocol are not enforceable, valid or perfected. Notwithstanding anything herein, nothing in the Plan shall prevent or prohibit a Bucket 1 Competing Claimant from asserting, on any basis, any claim or defense against the any member of the RAI Group or their Related Parties with respect to any dispute regarding Bucket 1 Art; provided, however, that Donald Schupak in his capacity as a member of the Committee and his Related Parties, with respect to any actions taken or not taken concerning Donald Schupak in his capacity as a member of the Committee or the Oversight Committee, shall be subject to the provisions of the releases and exculpations described in Articles IX.A and IX.B of the Plan.

All Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against any of the Plan Participants, whether directly, derivatively, on account of or respecting any claim, debt, right, or cause of action based in whole or in part upon any Bucket 1 Exculpated Conduct. Any Plan Participant injured by any willful violation of this injunction shall recover from the willful violator actual damages (including costs and attorneys' fees) and, in appropriate circumstances, punitive damages.

Each Bucket 1 Competing Claimant shall be deemed a "Releasing Party." By virtue of Bankruptcy Code sections 1126(c) and 1141(a), each Releasing Party shall be deemed to have released for itself and its respective Related Parties, in each case in their capacity as such, any and all Claims and Causes of Action against the Plan Participants on account of the release of Bucket 1 Art to RAI.

**X.**

**OTHER PLAN PROVISIONS**

**A.**     **The Effective Date**

The Plan will not be consummated or become binding unless and until the Effective Date occurs.  The Effective Date will be the first Business Day after the following conditions have been satisfied:

(1)     Ten (10) days have passed since the Confirmation Date;

(2)     The Confirmation Order is not stayed;

(3)     The Liquidation Trustee and Plan Proponents shall have signed the SOG Liquidation Trust Agreement.;

(4)     No material adverse effect has occurred in respect of the Assets;

(5)     The RAI Settlement Agreement is executed by the parties thereto;

(6)     The RAI Settlement Agreement is approved pursuant to a Final Order of the Bankruptcy Court; and

(7)     All documents to be executed and delivered pursuant to the terms of the RAI Settlement Agreement have been executed and delivered.

Subject to further order of the Court, in the event that the Effective Date does not occur within ninety (90) days of entry of a Final Order confirming the Plan, the Plan shall become null and void.  A statement shall be filed with the Court within three (3) business days after either the Effective Date or the occurrence of any event that renders the Plan null and void.

**B.**     **Termination of Creditors' Committee**

On the Effective Date, the Creditors' Committee shall cease to exist and its members, designated representatives and/or agents (including, without limitation, attorneys, investment bankers, financial advisors, accountants and other professionals) shall, subject to those matters set forth below, be released and discharged from any further authority, duties, responsibilities and obligations relating to, arising from, or in connection with the Creditors' Committee.  The

3

Creditors' Committee shall continue to exist after such date (i) solely with respect to all the applications filed pursuant to section 330 and 331 of the Bankruptcy Code seeking payment of fees and expenses incurred by any professional, (ii) any post-confirmation modifications to, or motions seeking the enforcement of, the provisions of the Plan or the Confirmation Order, (iii) any matters pending as of the Effective Date in the Case, until such matters are finally resolved, and (iv) providing such information, books and records as may be reasonably requested by the Liquidation Trustee on behalf of the SOG Liquidation Trust.

### C. Executory Contracts and Unexpired Leases

#### 1. Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, any and all agreements executed by the Debtor before the Effective Date, other than agreements that were previously either assumed and assigned or rejected either by a Final Order or under Bankruptcy Code section 365, to the extent that these agreements constitute executory contracts or unexpired leases under Bankruptcy Code section 365, shall be rejected. The Confirmation Order shall constitute a Final Order approving this rejection.

#### 2. Bar Date for Rejection Damage Claims

Any Rejection Damage Claims arising from rejection under the Plan of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served on the Liquidation Trustee and his counsel within thirty (30) days after the Effective Date. Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable against the Debtor, the Estate, the SOG Liquidation Trust and the Liquidation Trustee, and their property, and the entities holding these Claims will be barred from receiving any distributions under the Plan on account of their Rejection Damage Claims. The Liquidation Trustee shall have the right to object to any such Rejection Damage Claims; provided, however, that the any such objections must be served and filed not later than 120 days after the Effective Date.

D.    **Entry of a Final Decree**

Promptly following the completion of all distributions contemplated by this Plan, the Liquidation Trustee will file a motion with the Bankruptcy Court to obtain the entry of a final decree.

E.    **United States Trustee Fees and Reports**

Pursuant to section 1129(a)(12) of the Bankruptcy Code, any outstanding quarterly fees due and owing to the U.S. Trustee under 28 U.S.C. §1930(a)(6) shall be paid from Cash on hand in the Estate.  After the Effective Date, the Liquidation Trustee shall file post-confirmation quarterly disbursement reports and pay from cash on hand or a designated Plan Reserve Account all quarterly fees to the U.S. Trustee which are required by applicable law.  The Liquidation Trustee shall include in the reserve created for Post-Effective Date Expenses reasonably sufficient monies to cover the quarterly fees of the U.S. Trustee incurred, or to be incurred, after the Effective Date.

F.    **Post-Effective Date Effect of Evidences of Claims**

Commencing on the Effective Date, notes and other evidences of Claims will represent only the right to receive the Distributions contemplated under the Plan.

G.    **Cancellation of Interests**

On the Effective Date, all Interests will be cancelled, annulled, and extinguished, and any issued and outstanding shares of common stock, preferred stock, stock options, warrants, membership interests, or other evidence of Interests in securities of the Debtor will be deemed to be cancelled and of no further force or effect without any further action by the Debtor or any other entity.  Persons holding Interests will retain no rights and receive no consideration on account of these Interests, and entities holding any evidence of Interests in securities of the Debtor will have no rights arising from or relating to such evidence of their Interests or their cancellation.

### H.    Nondischarge of the Debtor

In accordance with Bankruptcy Code section 1141(d)(3), the Confirmation Order will not discharge Claims.  However, no Person holding a Claim may receive any payment from, or seek recourse against, any Assets that are to be distributed under this Plan other than assets required to be distributed to that Person under the Plan.  As of the Confirmation Date, all Persons are precluded from asserting against any property that is to be distributed under this Plan any Claims, rights, causes of action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Confirmation Date except as expressly provided in this Plan or the Confirmation Order.

### I.    No Recourse

No Person entitled to receive a payment or distribution under the Plan will have any recourse against the SOG Liquidation Trust, the Debtor, the CRO, the Creditors' Committee, the members of the Creditors' Committee (in their capacity as such), the Liquidation Trustee, the Oversight Committee or the members of the Oversight Committee, and their respective Related Parties other than the right to receive distributions in accordance with the terms of the Plan.

### J.    No Admissions

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed, is revoked or otherwise the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan or the Disclosure Statement will: (a) be deemed to be an admission by the Plan Proponents with respect to any matter discussed in the Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement, or release of any Claims, Interests, or any claims held by the Plan Proponents; or (c) prejudice in any manner the rights of the Plan Proponents or any other Party in any further proceedings.

### K.    Revocation of the Plan

The Plan Proponents reserve the right to withdraw the Plan before the Confirmation Date.

3

L.      **Severability of Plan Provisions**

If, before confirmation, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision.  That term or provision will then be applicable as altered or interpreted, except if such term or provision is inconsistent with the intent of any of the Plan Proponents, in which case the Plan may be unilaterally withdrawn by such Plan Proponent. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated.  The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Article, is valid and enforceable under its terms.

M.      **Governing Law**

The rights and obligations arising under the Plan and any agreements, contracts, documents, or instruments executed in connection with the Plan will be governed by, and construed and enforced in accordance with, New York law without giving effect to New York law's conflicts of law principles, unless a rule of law or procedure is supplied by: (a) federal law (including the Bankruptcy Code and the Bankruptcy Rules); or (b) an enforceable, express choice-of-law provision in any document provided for, or executed under or in connection with, the Plan terms.

N.      **Retention of Jurisdiction**

The Bankruptcy Court will retain and have exclusive jurisdiction:

(1) to hear and determine objections to Claims;

(2) to hear and determine any dispute arising under the Plan, its implementation and execution of any necessary documents thereunder, and any requests to amend, modify, or correct

68

the Plan, provided such matters are brought before the Bankruptcy Court prior to the point of substantial consummation;

(3) to grant extensions of any deadlines set forth in the Confirmation Order as may be appropriate;

(4) to enforce all discharge, release and injunction provisions under the Plan;

(5) to consider and rule upon requests for final compensation;

(6) to hear and determine all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Liquidation Trustee, the Oversight Committee or the SOG Liquidation Trust after the Effective Date, including without limitation all Causes of Action;

(7) to hear and determine applications for the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date, and the allowance of Claims resulting therefrom; (8) to determine any other applications, adversary proceedings, and contested matters pending on the Effective Date;

(9) to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(10) to resolve disputes as to the ownership of any Claim;

(11) to hear and determine timely objections to Administrative Claims and Claims;

(12) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(13) to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(14) to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order;

(15) to hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

(16) to hear and determine any issue for which the Plan requires a Final Order of the Court;

(17) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(18) to hear and determine any Causes of Action preserved under the Plan under sections 544, 547, 548, 549, 550, 551, 553, and 1123(b)(3) of the Bankruptcy Code;

(19) to hear and determine any matter regarding the existence, nature and scope of the Debtors' discharge;

(20) to hear and determine any matter regarding the existence, nature, and scope of the releases and exculpation provided in Article IX of this Plan;

(21) to adjudicate any disputes arising under the RAI Settlement Agreement; and

(22) to enter a final decree closing the Chapter 11 Case.

If the Bankruptcy Court abstains from exercising jurisdiction, or is without jurisdiction, over any matter, this Article shall not effect, control, prohibit, or limit the exercise of jurisdiction by any other court that has jurisdiction over that matter.

**O.**     **Successors and Assigns**

Unless otherwise specified in the Plan, the rights, benefits, and obligations of any entity referred to in this Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of that entity.

**P.**     **Saturday, Sunday, or Legal Holiday**

If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

# XI.

## CONFIRMATION

### A.    **Plan Modification**

Subject to the restrictions set forth in Bankruptcy Code section 1127, the Plan Proponents reserve the right to alter, amend, or modify the Plan before it is substantially consummated.

### B.    **Nonconsensual Confirmation**

If any impaired Class of Claims fails to accept this Plan, and the Plan Proponents therefore cannot confirm the Plan in accordance with Bankruptcy Code section 1129(a)(8), the Plan Proponents reserve the right to: (a) request that the Bankruptcy Court confirm this Plan under Bankruptcy Code section 1129(b); or (b) modify this Plan in accordance with Bankruptcy Code section 1127(a).

3

# XII.

## RECOMMENDATIONS AND CONCLUSION

The Plan Proponents strongly believe that Plan confirmation and implementation are preferable to any feasible alternative because the Plan will provide Creditors holding Claims with significantly greater recoveries than any available alternatives.

Dated:  January ~~11,~~13, 2010

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF SALANDER-O'REILLY GALLERIES, LLC

By: */s/ Sarah Lerchs*
    Sarah Lerchs, Chairperson

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Robert J. Feinstein*
    Robert J. Feinstein, Esquire
    Ilan D. Scharf, Esquire
    780 Third Avenue, 36th Floor
    New York, New York 10017
    Telephone:   (212) 561-7700
    Facsimile:   (212) 561-7777

    Counsel for Official Committee
    of Unsecured Creditors

FIRST REPUBLIC BANK, a division of Bank of America, N.A.

By: */s/ Katherine Auguste de Wilde*
Its: President

WHITE & CASE LLP


By: */s/ Avi Goldenberg*
    Alan Gover, Esquire
    J. Christopher Shore, Esquire
    Avi Goldenberg, Esquire
    1155 Avenue of the Americas
    New York, New York 10036-2787
    Telephone:  (212) 819-8200

    Counsel for First Republic Bank, a
division of Bank of America, N.A.


SALANDER-O'REILLY GALLERIES, LLC


By: */s/ Joseph E. Sarachek*
    Joseph Sarachek
    Its Chief Restructuring Officer



HALPERIN BATTAGLIA RAICHT, LLP


By: */s/ Robert D. Raicht*
    Alan Halperin, Esquire
    Robert D. Raicht, Esquire
    Walter Benzija, Esquire
    555 Madison Avenue, 9th Floor
    New York, New York 10022
    Telephone:  (212) 765-9100

    Counsel for Salander-O'Reilly Galleries,
    LLC

Document comparison by Workshare Professional on Wednesday, January 13, 2010
4:35:10 PM

| Input: | |
|---|---|
| Document 1 ID | pcdocs://docs_ny/19813/2 |
| Description | #19813 v2 - SOG-Modified Third Amended Plan |
| Document 2 ID | pcdocs://docs_ny/19813/3 |
| Description | #19813 v3 - SOG-Modified Third Amended Plan |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 14 |
| Deletions | 15 |
| Moved from | 2 |
| Moved to | 2 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 33 |