**Hearing Date and Time: January 31, 2017 at 12:00 p.m.**
**Objection Deadline: January 24, 2017 at 4:00p.m.**

PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY 10017-2024
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Robert J. Feinstein
Maria A. Bove
Ilan D Scharf

*Counsel for Alan M. Jacobs, solely in his capacity as Liquidating Trustee of the SOG Liquidating Trust*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 Case |
| SALANDER-O'REILLY GALLERIES, LLC, | : | Case No. 07-30005 (CGM) |
| Debtor. | : | |

**APPLICATION FOR FINAL DECREE CLOSING THE CHAPTER 11 CASE OF SALANDER-O'REILLY GALLERIES, LLC PURSUANT TO SECTION 350(a) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3022, AND LOCAL BANKRUPTCY RULE 3022-1**

Alan M. Jacobs, (the "Trustee"), solely in his capacity as Liquidation Trustee of the SOG Liquidation Trust (the "Trust") in the above-captioned case under Chapter 11 of Title 11 of the United Stated Code (the "Bankruptcy Code") hereby submits this application (this "Application") for entry of a final decree, substantially in the form attached hereto as **Exhibit A**, closing the chapter 11 case (the "Chapter 11 Case") of Salander – O'Reilly Galleries, LLC (the "Debtor"). In support of this Application, the Trustee respectfully states as follows:

**Background**

1. On November 1, 2007 (the "Petition Date"), three creditors of the Debtor commenced an involuntary case against the Debtor under chapter 7 of the Bankruptcy Code. On November 9, 2007, the Debtor's involuntary case was converted to a voluntary case

under chapter 11 of the Bankruptcy Code. After conversion of the case, the Debtor's owner/manager ceded control of the Debtor to a chief restructuring officer.

2. Prior to the Petition Date, the Debtor operated an art gallery in New York City. As of the Petition Date, the Debtor was in possession of in excess of 4,000 works of art. Also as of the Petition Date, numerous parties asserted claims against or interests in thousands of works of art in the Debtor's possession, custody or control.

3. On March 26, 2009, Lawrence Salander (the owner/manager of the Debtor) and the Debtor were indicted on counts of grand larceny, falsifying business records, scheming to defraud investors, forgery, and perjury. On July 14, 2009, Lawrence Salander and the Debtor were charged with additional counts of grand larceny and falsifying business records. On March 17, 2010, Lawrence Salander pled guilty to sixteen counts of Grand Larceny in the First Degree, ten counts of Grand Larceny in the Second Degree, three counts of Grand Larceny in the Third Degree and one count of Scheme to Defraud. Lawrence Salander pled guilty to such crimes based on his various schemes to defraud investors and consignors. Hundreds of creditors owed in excess of $100 million remain in the wake of Lawrence Salander's fraud and are claimants in this Chapter 11 case.

4. At the beginning of the Debtor chapter 11 case, the Debtor (under the management of a chief restructuring officer), its principal lender, First Republic Bank (the "Bank"), and the Official Committee of Unsecured Creditors (the "Committee") were faced with numerous parties asserting ownership and other rights to thousands of works of art in the Debtor's possession, custody or control. Litigating all of those ownership claims without an organized process would virtually guarantee gridlock in the Debtor's Chapter 11 Case. In order to address this issue, on March 11, 2008, the Bankruptcy Court entered an order (the

"Protocol Order") [Docket No. 309] approving a protocol (the "Protocol") [Docket No. 308] for assertion and resolution of claims of ownership against artwork in the possession, custody or control of the Debtor (such claims are "Art Claims" and parties asserting such Art Claims are "Art Claimants"). The Protocol was negotiated between and among the Committee, the Bank, the Debtor and various parties asserting Art Claims. Pursuant to the Protocol, among other things, parties were required to file claims of ownership with supporting documentation on the claims register maintained by the Court this Chapter 11 case. The Protocol required claimants to submit Art Claims in writing. The Art Claims were then reviewed by a "Working Group" comprised of a representative from each of the Committee, the Bank, the Debtor and a representative acting on behalf of Art Claimants. The working group made an initial determination as to whether art was an estate asset or a non-estate asset. The Committee, the Bank and the Debtor then attempted to resolve disputes with claimants informally. Then parties were required to enter into non-binding mediation before seeking judicial relief. Approximately 276 Art Claims were filed against the Debtor asserting claims against approximately 2,000 works of art. *See generally* the claims register maintained by the Court in the Chapter 11 Case. The overwhelming majority of Art Claims were resolved by the Trustee and his professionals, after the Effective Date of the Plan (defined below).

5. On January 20, 2010, the Bankruptcy Court entered its *Order (A) Confirming Third Amended Joint Plan of Liquidation Proposed by Salander-O'Reilly Galleries, LLC, the Official Committee of Unsecured Creditors and First Republic Bank and (B) Approving Settlement Between (I) Salander-O'Reilly Galleries, LLC, (II) the Official Committee of Unsecured Creditors, (III) Renaissance Art Investors, LLC, (IV) Old Master Properties, LLC, (V) the Schupak Group, Inc. and (VI) Triple S Management LLC* (the



DOCS_NY:34169.5

"Confirmation Order") [Docket No. 779]. Among other things, the Confirmation Order confirmed the *Third Amended Joint Plan of Liquidation of Salander-O'Reilly Galleries, LLC, the Official Committee of Unsecured Creditors and First Republic Bank* (the "Plan") attached as Exhibit A to the Confirmation Order.

6. The Effective Date of the Plan (as defined in the Plan) was February 8, 2010. Pursuant to the Plan, as of the Effective Date, the Trust was established and the Trustee assumed his duties as trustee of the Trust.

**Jurisdiction**

7. The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

8. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. In addition, pursuant to the Confirmation Order (as defined herein), the Court has retained jurisdiction, among other things, to enter a final decree closing the Chapter 11 Case.

9. The statutory basis for the relief requested herein is section 350(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3022-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules").

**Relief Requested**

10. By this Application, the Trustee respectfully requests that the Court enter a final decree, substantially in the form attached hereto as **Exhibit A**, closing the Chapter 11 Case.

**Basis for Relief**

11. Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. §350(a). Bankruptcy Rule 3022, which implements section 350 of the Bankruptcy Code, further provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." Fed. R. Bankr. P. 3022. Local Bankruptcy Rule 3022-1 provides that the debtor shall file and serve upon the United States Trustee a closing report after the estate is fully administered. *See* L.B.R. 3022-1.

12. The Advisory Committee Note to Bankruptcy Rule 3022 (the "Advisory Committee Note") provides, in relevant part, as follows:

> Factors that the court should consider in determining whether the estate has been fully administered include (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or [its successor] has assumed the business or the management of the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.
>
> The court should not keep the case open only because of the possibility that the court's jurisdiction may be involved in the future. A final decree closing the case . . . does not deprive the court of jurisdiction to enforce or interpret its own orders and does not prevent the court from reopening the case for cause pursuant to § 350(b) of the Code.

13. Courts generally use the six factors listed in the Advisory Committee Note to determine whether a case has been fully administered. *See, e.g., In re Aquatic Development Group, Inc.,* 352 F.3d 671, 676 (2d Cir. 2003); *In re Gould*, 47 B.R. 34, 37 (Bankr. D. Conn. 2010); *In re Kliegl Bros. Universal Elec. Stage Lighting Co., Inc.*, 238 B.R.

531, 542 (Bankr. E.D.N.Y. 1999); *In re Jay Bee Enter., Inc.*, 207 B.R. 536, 538 (Bankr. E.D. Ky. 1997); *In re Mold Makers, Inc.,* 124 B.R. 766, 768 (Bankr. N.D. Ill. 1990). The six factors, however, are merely guidelines that aid a court's determination, and each of the factors need not be present before a court enters a final decree. *See Kliegl Bros.,* 238 B.R. at 542; *Mold Makers,* 124 B.R. at 768-69; see also *Walnut Associates v. Saidel*, 164 B.R. 487 (E.D. Pa. 1994).

14. Here, the Court entered the Confirmation Order on January 20, 2010 and such order is a Final Order. The Plan was substantially consummated on February 8, 2010 upon the occurrence of the Effective Date.

15. All property contemplated to be transferred or distributed pursuant to the Plan has been transferred or disbursed to creditors entitled to such distributions or will be disbursed pursuant to the Final Decree. The Trustee has (among other things):

a. Resolved all claims by taxing authorities.

b. Resolved all Art Claims.

c. Returned approximately 1,561 works of art to Art Claimants.

d. Entered into twenty-eight stipulations resolving Claim and Art Claims.

e. Abandoned approximately 63 works of art that either were not retrieved by Art Claimants or had *de minimis* value.

f. Sold approximately 1,957 works of Art for $5,858,346.20 through both auctions and private sales.

g. Fully administered the assets of the Trust.

16. Further, as of the date hereof, all motions, contested matters, and adversary proceedings have also been fully and finally resolved.

17. The Trustee also requests that the Court close the Chapter 11 Case in light of section 1930(a)(6) of title 28 of the U.S. Code, which requires that quarterly fees be paid to the United States Trustee after confirmation and consummation of a chapter 11 plan until a debtor's case is closed. As of the date hereof, the Trustee has paid all fees due and payable pursuant to section 1930(a)(6) of title 28 of the United States Code. The Trustee does not owe any money to the Clerk of the Court as of the date hereof. The Trustee previously submitted all monthly and other post-confirmation reports required under the Local Bankruptcy Rules and the Plan. The Trustee will make any final payments due to the United States Trustee in connection with this Application.

18. The Trustee has reserved certain funds necessary to close the Chapter 11 Case, including funds to make a distribution (the "Eligible Claimants"), to satisfy accrued legal and accounting expenses, to pay accrued U.S. Trustee fees and expenses associated with completing tax returns. Eligible Claimants include all claimants with claims that will receive a distribution in excess of $100.00 in accordance with Section VII.F.3 of the Plan.

19. In that regard, the Trustee proposes to distribute $403,585.97 to creditors based on the allowed amounts of claims described on **Exhibit B** hereto. The Trustee proposes to make such distribution pursuant to the terms of the Plan and the following procedures:

a. The Trustee will send via First Class mail a notice of distribution (the "Distribution Notice") to all claimants who may receive a distribution, including an IRS Form, such as a Form W-2, W-8 or W-9 (any such forms, an "IRS Form"), as applicable;

b. Each claimant shall have thirty days after the Trustee sends the Distribution Notice to return a properly executed applicable IRS Form;

c. The Trustee will send the Distribution Notice to the address listed on the applicable proofs of claim filed by each Eligible Claimant or any subsequent updated address filed on the Docket or Claims Register for the Chapter 11 Case;

d. The Trustee shall not be required to investigate current address of any eligible claimant or investigate the address of any eligible claimant who Distribution Notice is returned as undeliverable.

e. Within forty-five (45) days of the Return Deadline, the Trustee will pay distributions via check to all eligible claimants who return a properly executed applicable IRS Form by the Return Deadline.

f. All deliveries of checks shall be in accordance with Section VII.F.5 of the Plan.

g. All deliverable, unclaimed and non-negotiated distributing shall be treats in accordance with VII.F.5 of the Plan.

20. Based on the foregoing, ample justification exists for entry of a final decree closing the Chapter 11 Case.

**Reserve for Potential Damages Claim**

21. On August 14, 2014 the Court entered its *Order Approving Motion of Liquidation Trustee Entry of an Order Approving : (a) Abandonment of (1) the Debtor's Books and Records (2) Artwork with De Minimis Value Owned by the Trust, and (3) Artwork Subject to Art Claims That Has Not Been Retrieved, All of the Foregoing Being Burdensome or of Inconsequential Value to the Trust; and (b) Notice Procedures for the Abandonment of Artwork That Is Subject to Art Claims* [Docket No. 1368] (the "Abandonment Order"). Pursuant to the

Abandonment Order, the Trust abandoned three works of art purportedly claimed by Vincent Gillespie. In addition, the Trust inadvertently sold one work of art purportedly claimed by Mr. Gillespie. Finally, the Trust returned one work of art to Mr. Gillespie.

22. Mr. Gillespie may assert claims against the Trust based on the abandonment and sale of the artwork he claims. As such, the Trustee seeks to establish a reserve (the "Gillespie Reserve") of $25,000 to pay for any damages that may be due to Mr. Gillespie. Such amount is in excess of the appraised value of the three abandoned and one sold work claimed by Mr. Gillespie. The Trustee reserves all rights, claims, counterclaims, defenses and arguments with respect to any claims that Mr. Gillespie may assert against the Trust, the Trustee or their professionals, agents, representatives and/ or assignees.

**Reservation of Rights Regarding Default Judgments**

23. On November 9, 2009, the Committee commenced an adversary proceeding against Glass House Productions, LLC captioned *Official Committee of Unsecured Creditors of Salander O'Reilly Galleries, LLC v. Glass House Productions, LLC*, Adv. Pro. No. 09-9106 (CGM) (the "Glass House Proceeding"). The Trustee succeeded as plaintiff to the Glass House Proceeding upon the Effective Date. On April 28, 2010, the Clerk filed an *Entry of Default Judgment* [Docket No. 5]. On May 6, 2016, the Trustee filed a *Notice of Dismissal* [Docket No. 43], which provides that the Glass House Proceeding was dismissed without prejudice to enforce the default judgment.

24. On November 30, 2009, the Committee commenced an adversary proceeding against Lawrence Salander captioned *Official Committee of Unsecured Creditors of Salander O'Reilly Galleries, LLC v. Lawrence B. Salander*, Adv. Pro. No. 09-9116 (CGM) (the "Lawrence Salander Proceeding"). The Trustee succeeded as plaintiff to the Lawrence



DOCS_NY:34169.5

Salander Proceeding upon the Effective Date. On April 28, 2010, the Clerk filed an *Entry of Default Judgment* [Docket No. 6]. On May 6, 2016, the Trustee filed a *Notice of Dismissal* [Docket No. 43], which provides that the Lawrence Salander Proceeding was dismissed without prejudice to enforce the default judgment.

25. The Trustee has not recovered any funds on account of the judgments in the Glass House and Lawrence Salander Proceedings (collectively, the "Judgments"). To the extent that the Trustee becomes aware of any funds available to satisfy or recover on account of the Judgments (including settlements with the defendants therein), the Trustee reserves all rights to (a) reopen the adversary proceedings and (b) distribute any funds received on account of the Judgments pursuant to the terms of the Plan and the proposed Final Decree attached hereto as **Exhibit A** (such rights, the "Judgment Rights").

**Extension of Liquidation Trust**

26. Pursuant to the terms of the Plan and the Trust Agreement, the Trust is scheduled to terminate as of February 8, 2016, subject to further Order of this Court. The Trustee respectfully requests an extension for the term of the Trust for up to twelve months to allow him to complete the transactions and distribution contemplated hereunder.

**Discharge of Trustee Other than with Respect to Trailing Obligations**

27. Pursuant to the terms of the Trust Agreement, the Trustee is obligated to liquidate and convert to Cash the Trust Assets, make timely distributions as provided for in the Trust Agreement and in the Plan and not unduly prolong the duration of the Trust. *See* Trust Agreement, ¶¶ 1.1 and 7.2.

28. As set forth more fully above, the Trustee has fulfilled these obligations. At present, the Plan has been substantively consummated and all that remains for the Trustee is the completion of a single distribution and certain post-distribution administrative tasks, such

as payment of professional fees, U.S. Trustee fees, preparation of tax returns and potential application of the Judgment Rights (such tasks, the "Trailing Obligations"). As such, the Trustee submits that it is appropriate for the Court to release and discharge the Trustee of his duties and obligations as Trustee of the Trust other than those limited remaining duties and obligations relating to the wind-down of the Trust, which Trailing Obligations should terminate upon the termination of the Trust.

**The Closing Report**

29. In accordance with the requirements of Local Bankruptcy Rule 3022-1, attached hereto as **Exhibit C** is a copy of the Bankruptcy Closing Report, which includes a summary of the fees and expenses awarded to the professionals during the Chapter 11 Case, as well as additional information regarding distributions made pursuant to the Plan.

**Notice**

30. The Liquidating Debtor has provided notice of this Application to (a) the United States Trustee, (b) all Claimants listed on Exhibit B hereto, and (c) those parties that have requested notice pursuant to Bankruptcy Rule 2002. The Trustee respectfully submits that no further notice is necessary.

**No Prior Request**

31. No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein, the Trustee respectfully requests that the Court enter a final decree, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other further relief as the Court deems just and proper.

Dated: New York, New York
January 6, 2017

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Ilan D. Scharf*

Robert J. Feinstein, Esq.
Ilan D. Scharf, Esq.
780 Third Ave, 34th Floor
New York, NY 10017-2024
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

*Counsel for Alan M. Jacobs, solely in his capacity as Liquidation Trustee of the SOG Liquidation Trust*